United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

DELPHINE ALLEN, et al.,

Plaintiffs,

v.

CITY OF OAKLAND, et al.,

Defendants.

MASTER CASE FILE
NO. C00-4599 TEH

ORDER EXTENDING SETTLEMENT AGREEMENT

This case is nearing an important cross-roads. The Negotiated Settlement Agreement ("NSA"), filed on January 22, 2003, provides that, "[w]ithout further action, the Agreement shall terminate five (5) years from the effective date, unless the Monitor reports to the Court that an extension of time, not to exceed two (2) years, is reasonably necessary to serve the purposes of the Agreement." NSA § XV.B.3. Thus, without further action from the Court, the NSA is currently scheduled to expire on January 21, 2008.

Although this date remains several months away, it is the Court's understanding that the parties, with input from the Independent Monitoring Team ("IMT"), have been discussing the potential extension of the NSA for several months. Indeed, on October 11, 2006, the Court ordered the parties to meet and confer on this issue, and the Court repeated that order at the January 25, 2007 status conference. The Court made these orders because it has become clear that, despite Defendants' good-faith efforts and hard work over the past two years, Defendants' late start at tackling any meaningful attempt at reform has made an extension of the agreement inevitable. Defendants themselves appear to recognize this and dispute only the terms and length of the extension.

At the January status conference, the Court also ordered the parties to submit a joint statement on three issues: the extension of the NSA, the criteria used for monitoring, and the discipline matrix. The parties timely filed their joint statement on February 26, 2007,

providing helpful information to the Court regarding the parties' positions on these issues. In addition, the Court has continued its regular consultation with the IMT and has, with the consent of all parties, recently met separately with attorneys for Plaintiffs and attorneys for Defendants.

Upon full consideration of the views expressed by the parties during these *ex parte* meetings and in the February 26 joint status statement, as well as a careful reading of the provisions of the NSA itself, the Court now issues this order to resolve several of the parties' disputes. The Court acknowledges that, in a letter dated March 12, 2007, Defendants requested that the Court schedule a settlement conference prior to "issuing any formal Order that addresses the extension of the NSA." However, for the reasons discussed below, the Court does not find a settlement conference to be necessary or appropriate at this time.

**Extension of the NSA**

While the parties may and should continue to meet and confer on certain issues, the primary issue in dispute – the extension of the NSA – is simply not a matter on which the parties must reach consensus. Although the Court has given the parties over six months to attempt to reach agreement on how to proceed with the extension of the NSA, meeting and conferring on that issue was not required by either the NSA or due process. Nor does the extension require the approval of the Oakland City Council.

It has become increasingly clear to the Court that meeting and conferring on the extension and related issues is serving only to divert time, energy, and resources away from Defendants' compliance efforts. Moreover, pursuant to the terms of the NSA, the decision to extend the agreement lies soundly within this Court's authority, based on the recommendations of the IMT. As noted at the outset of this order, the NSA provides that, "[w]ithout further action, the Agreement shall terminate five (5) years from the effective date, *unless the Monitor reports to the Court that an extension of time, not to exceed two (2) years, is reasonably necessary to serve the purposes of the Agreement*." NSA § XV.B.3 (emphasis added). Similarly, a different section of the NSA provides that, "[t]he extension of

United States District Court
For the Northern District of California

the Monitor beyond five years shall be allowed only *if the Court determines* that it is reasonably necessary in order for the Monitor to fulfill his/her duties pursuant to this Agreement." *Id.* § XIII.B (emphasis added). Notably, nowhere does the agreement provide that the parties must agree to an extension before the NSA can be extended.

Defendants may challenge the extension by motion practice but, in doing so, would have "the burden to establish substantial compliance with the Agreement during the five-year period. 'Substantial compliance' is defined, for the purposes of this Agreement, as meaning that OPD [the Oakland Police Department] has complied with the material provisions of the Agreement." *Id.* § XV.B.3. Thus, a showing of "substantial compliance" is the only basis by which Defendants may object to the NSA's extension, provided that the IMT has reported to the Court – as it has on numerous occasions – that an extension is reasonably necessary to serve the purposes of the NSA. As the Court has explained at past status conferences, and as Defendants do not appear to dispute, there can be no question that Defendants have failed to achieve "substantial compliance" with the material provisions of the NSA.[1]

This does not mean that Defendants have made no progress; to the contrary, the Court has repeatedly recognized that Defendants have, in fact, made a tremendous amount of progress over the past two to three years. The problem, as Defendants have acknowledged, is that virtually no progress was made during the majority of the first two years of the agreement. Indeed, had Defendants contributed the same level of commitment to reform throughout the scope of the agreement that they have shown in the past two years, this case may have been at a very different stage than it is today, and the IMT may well have informed the Court that no extension was necessary. However, the reality is that Defendants do not yet find themselves at that point.

Consequently, based on the Court's independent review of Defendants' progress to date, the Court agrees with the IMT that a full extension of the NSA for the full two-year period contemplated by the agreement is warranted because it is reasonably necessary to

[1]Of course, if Defendants feel that they have achieved such compliance, they remain free to file a motion to set aside the NSA's extension pursuant to section XV.B.3 of the agreement.

achieve the purposes of the agreement. Accordingly, the NSA, in its entirety, shall not expire until January 21, 2010. The Court remains optimistic that Defendants will be in substantial compliance by the end of this extension period. Because Defendants delayed implementation of the reforms for approximately two years, achieving compliance during the two-year extension period would fulfill the parties' original expectation that the reforms set forth in the NSA would be achieved within five years.

**Monitoring Criteria and Related Issues**

The parties have also been discussing other issues in the context of the NSA extension – for example, the criteria used to monitor compliance and whether the Office of the Inspector General ("OIG") should play an expanded role during any extension period. However, these are properly treated as separate and secondary issues that are not tied to the length and scope of the extension. Who should do the monitoring and how such monitoring should be done have no bearing on the question the Court has already answered – namely, whether monitoring must be continued to achieve the purposes of the NSA.

Significantly, the NSA does not provide that the parties may now select a new monitor to replace the IMT. Nothing in the agreement contemplates such a change, and it would appear unwise to change monitors at this stage of the case, given the need for continuity, the limited time remaining before the NSA expires, and the IMT's thorough knowledge of the facts, background, community, and relevant players. The Court recognizes that the NSA provides for removal of the Monitor with good cause: "Should any of the parties to this Agreement determine that the Monitor, and/or his/her agents, employees, [and/or] independent contractors, has exceeded his/her authority or failed to satisfactorily perform or fulfill his/her duties under this Agreement, the party may petition the Court for such relief as the Court deems appropriate, including replacement of the Monitor and/or his/her agents, employees and/or independent contractors." NSA § XIII.D. However, as this Court has stated, it is unaware of anything the IMT has or has not done that would constitute good cause for replacing the IMT as the Monitor for this case.

United States District Court
For the Northern District of California

Defendants have expressed some concern over whether the IMT has complied with section XIII.G of the NSA, which provides that, "[t]he Monitor shall offer the City and OPD technical assistance regarding compliance with and implementing the Agreement." However, while some ambiguity over the meaning of "technical assistance" remains, this provision clearly does not require the IMT to become a liaison between Defendants and the Court, or for the IMT to act as Defendants' consultant, in the sense that the IMT's suggestions may be accepted or rejected at Defendants' will. The IMT, or Independent Monitoring Team, is just that: independent. As this Court has explained on numerous occasions, the IMT is an extension of the Court whose primary role, as the NSA spells out, is "to assess and evaluate compliance with the provisions of the Agreement." NSA § XIII.G. That said, as the Court has also explained, it expects the IMT to provide "technical assistance" by working with Defendants to help them achieve compliance with the NSA. The Court's review of the IMT's activities to date reveals that the IMT has done so, and that they have not limited their conduct simply to assessing and reporting compliance. Indeed, Defendants have pointed to no specific "technical assistance" that they have requested from the IMT and that the IMT has failed to provide.

Although Defendants remain free to make the petition contemplated by section XIII.D if they believe that the IMT has failed to provide "technical assistance" as required by the NSA, or that the IMT has otherwise exceeded its authority or failed to comply with its duties under the NSA, Defendants bear the burden of making such a showing to the Court. Before Defendants bring any such petition, the Court urges Defendants to discuss their concerns with the IMT in hopes of reaching an informal resolution. Unless any such petition is brought before this Court and the Court finds good cause to replace the Monitor, the IMT shall continue to be the Monitor for the full length of the NSA's extension.

The Court acknowledges the NSA's provision that, "[s]hould monitoring be extended for an additional period of time, the compensation will be renegotiated subject to the approval of the City Council." NSA § XIII.A.2. In addition, the Court shares the parties' recognition of "the importance of ensuring that the fees and costs borne by the City are

United States District Court
For the Northern District of California

reasonable." *Id.* § XIII.A.1. However, the Court fully expects Defendants to enter into new compensation negotiations with the IMT in good faith; Defendants shall not view the need for renegotiation as an opportunity to make the contract terms so unpalatable that the IMT chooses not to continue as the Monitor. Defendants and the IMT shall attempt to reach prompt agreement on compensation for the two-year extension of the NSA so that this issue does not become a prolonged diversion from the substantive compliance issues that form the core of this case. To that end, on or before **April 30, 2007,** Defendants shall file a statement with the Court verifying that they have reached agreement on the IMT's compensation for the two-year extension period. If no agreement has been reached by that date, then Defendants and the IMT shall inform the Court in writing of their respective positions, and the Court will then evaluate whether Defendants have engaged in bad-faith negotiations or, by contrast, whether the IMT's expectations are unreasonable.

During the full length of the extension, the Monitor – presumably the IMT, unless Defendants demonstrate good cause why the IMT should be removed – shall retain the same duties and scope of authority provided for by the NSA. The Court understands that the IMT has proposed delegating some of its authority to OIG so that OIG will be given the opportunity to audit certain NSA tasks, subject to the oversight of the IMT. The Court approves of the IMT's proposal.[2] Delegating certain audits to OIG will allow Defendants to continue to build their capacity, with the hope that OIG will be able to competently review Defendants' efforts after the IMT is no longer in place. Such delegation would thus satisfy the City's goals of "provid[ing] for the critical work of both the OIG and the independent monitors in such a way that their work is complimentary, facilitat[ing] the transition of the oversight work to the OIG, and enhanc[ing] the achievement of the reforms and their sustainability." Feb. 26, 2007 Joint Statement at 14.

Critically, however, the ultimate monitoring authority shall continue to rest with the IMT, who shall review any audits delegated to OIG before such audits may be used as a basis

[2]Defendants have similarly proposed that OIG take on an increased auditing role during the extension period, but it is unclear to what extent Defendants have proposed that the IMT retain oversight authority over any audits performed by OIG.

United States District Court
For the Northern District of California

for demonstrating compliance. While it is the Court's hope that the IMT will need to make minimal changes, if any, to any audits performed by OIG, the Court also recognizes the importance of having an independent check on OIG to ensure that compliance is objectively monitored during the scope of the NSA. As Plaintiffs observed in the parties' most recent status statement, "[t]he establishment of an **independent** monitor was a cornerstone of the Negotiated Settlement Agreement," and "[t]o have Oakland City Employees measure NSA compliance would constitute a wholesale abandonment of the NSA." *Id.* at 5.

The parties shall continue to meet and confer regarding the criteria to be used to monitor compliance, and the Court is hopeful that the parties' optimism that they will be able to reach agreement on these criteria is not misplaced. The parties' discussions with the IMT regarding appropriate monitoring criteria shall not continue indefinitely, however, since it would be inefficient for the IMT to conduct audits based on a moving target of monitoring criteria, and the limited time frame of the NSA mandates that audits continue to occur without further delay. If all parties and the IMT are unable to reach agreement on the monitoring criteria by **March 30, 2007,** then they shall promptly inform the Court and request a referral to a magistrate judge for a settlement conference to resolve any remaining disputes regarding monitoring criteria.[3] Unless the parties agree on a different magistrate judge, this matter will be referred back to Magistrate Judge James Larson.

**Discipline Matrix**

The parties shall follow the same procedure with respect to the discipline matrix. As with the monitoring criteria, the Court remains hopeful that the parties will be able to agree on revisions to the discipline matrix that meet the approval of the IMT, especially since the parties all initially and agreed to the current matrix. In addition, Defendants shall, if they

[3]The parties have requested a settlement conference conducted by this Court rather than a magistrate judge. However, as counsel should all be well aware, during a settlement conference, parties may express concerns about the weaknesses of their positions or share other confidential information that they do not want revealed to the decision-maker charged with resolving all issues on which the parties cannot reach agreement. It is therefore this Court's practice – and the practice of most, if not all, other judges – not to conduct settlement conferences in cases in which the Court is also the presiding judge.

have not done so already, include Intervenor Oakland Police Officers' Association ("OPOA") in the meet-and-confer process regarding Defendants' proposed changes to the discipline matrix. If the parties are unable to reach agreement by **March 30, 2007,** then they shall promptly inform the Court and request a referral to a magistrate judge for a settlement conference on any outstanding disputes regarding the discipline matrix. As with the monitoring criteria, this matter will be referred back to Magistrate Judge Larson unless the parties agree on a different magistrate judge.

**Concluding Remarks**

As the Court noted at the conclusion of the last status conference in this case, Defendants are now succeeding and not failing in their attempts to comply with the NSA and improve the quality of policing in the City of Oakland. Under the leadership of Chief Wayne Tucker and City Administrator Deborah Edgerly, Defendants have made significant progress during the past two years and continue to work in good faith to achieve full compliance with the NSA. Based on reports the Court has received from the IMT, it also appears that the administration of Mayor Ronald Dellums is fully committed to the NSA and its reforms. However, despite Defendants' solid efforts, they have not been able to achieve in two years what they were expected to achieve in four, nor would it have been realistic to expect them to have been able to do so. It is primarily because of Defendants' late start to the reform process that the Court has concluded that a full two-year extension of the NSA is necessary.

Now that this order has resolved several of the major disputes between the parties, the Court hopes that the parties and the IMT can re-focus their efforts on the primary task at hand: achieving and sustaining meaningful reform in the Oakland Police Department. Such institutional change is rarely, if ever, an easy process, but it is the Court's hope that Defendants' and Intervenor OPOA's representations to the Court have been genuine, and that all parties are truly committed to ensuring that reforms occur. The NSA will only have a lasting impact if the reforms become so much a part of the Oakland Police Department that Defendants are able – and willing – to maintain them even after the NSA expires and

United States District Court
For the Northern District of California

independent monitoring is no longer required. There have been indications that Defendants are building their capacity in such a way that this goal is on its way to becoming a reality. It is the Court's hope that Defendants' continued good-faith and hard-working efforts to build their own capacity and achieve meaningful institutional reform – not for reform's sake or for the sake of the NSA but, instead, for the benefit of the citizens of Oakland and helping the Oakland Police Department become an example of good practices to be followed around the nation – will become a hallmark of the next three years. Only then will the true value of the NSA have been realized.

**IT IS SO ORDERED.**

Dated: 03/19/07

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT