Gregory M. Fox, State Bar No. 070876
BERTRAND, FOX & ELLIOT
The Waterfront Building - 2749 Hyde Street
San Francisco, California 94109
Email: gfox@bfesf.com
Telephone:   415.353.0999
Facsimile:   415.353.0990

John A. Russo, City Attorney, SBN 129729
Randolph W. Hall, Chief Asst. City Attorney, SBN 080142
Rocio V. Fierro, Supervising Deputy City Attorney, SBN 139565
OFFICE OF THE CITY ATTORNEY
CITY OF OAKLAND
One Frank H. Ogawa Plaza, Sixth Floor
Oakland, California 94612
Telephone:   510.238.3601
Facsimile:   510.238.6500
rvf/594025

Attorneys for Defendant CITY OF OAKLAND

*November 13 revised, 2009*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELPHINE ALLEN, et al.,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>CITY OF OAKLAND, et al.,<br><br>　　　　Defendants. | MASTER FILE: No. C-00-4599-TEH<br><br>MEMORANDUM OF UNDERSTANDING RE: POST NSA TERMS AND CONDITIONS ALLOWING FOR THE RESOLUTION OF PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF AND FOR DISMISSAL OF THE ACTION |

## A. Introduction

1.  The City of Oakland ("City") and the Plaintiffs (hereafter "The Parties") share a mutual interest in promoting effective and respectful policing. The Parties therefore executed the document entitled "Settlement Agreement Re: Pattern and Practice Claims "in the above-captioned matter, which was executed by Order of the Court on January 23, 2003. That agreement between the

Parties is commonly known as the Negotiated Settlement Agreement ("NSA"). Over the years the NSA has been amended and revised by the Parties through stipulations approved by the Court.

2. The NSA was comprised of Fifteen (15) detailed Articles, divided into 51 tasks, that formed the basis for an agreed upon reform program for the Oakland Police Department ("Department or OPD"). The NSA's reform program included three principal objectives. First, OPD was to create new policies reflecting the contemporary practices nationwide for law enforcement management and operations. Second, OPD was to train all personnel on the new policies. Third, OPD was to demonstrate that its police officers' actual performance of duties was continuously consistent with the new policies and training.

3. The NSA states that the "overall objective of this document is to provide for the expeditious implementation, initially with the oversight of an outside monitoring body (hereinafter the "Monitor"), of the best available practices and procedures for police management in the areas of supervision, training and accountability mechanisms, and to enhance the ability of the Oakland Police Department (hereinafter the "Department" or "OPD") to protect the lives, rights, dignity and property of the community it serves." (*NSA. Article I.*)

4. The Monitor hired under the NSA has been commonly referred to as the Independent Monitoring Team ("IMT"). During the existence of the NSA, the Department's ongoing daily operations have been monitored by the IMT to assure that in actual practice the Department's operational activities are in "substantial compliance" with the requirements of the NSA, and as reflected in the Department's new and approved policies and training programs.

5. The NSA mandates that "This Agreement shall, under no circumstances, exceed seven (7) years." (*NSA. Article XV. B. 3.*) The NSA also mandates that the IMT's term of office "shall expire after a maximum of seven (7) years." (*NSA. Article XIII. B.*) Thus, in accordance with the NSA, the existing IMT's authority as external monitors of OPD's compliance with the NSA will terminate on January 22, 2010.

6. The Parties agree that the City has accomplished the NSA's two goals of enacting the required policies and completing training of OPD personnel on these policies. The Parties further agree that OPD has made significant progress in achieving practice compliance with the reforms.

MEMORANDUM OF UNDERSTANDING RE: POST NSA
TERMS AND CONDITIONS ALLOWING FOR THE RESOLUTION
OF PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF AND FOR
DISMISSAL OF THE ACTION

- 2 -

C—00-4599-TEH

Nevertheless, the Parties agree that additional time is necessary for OPD to complete the reform work it started under the NSA.

7. The Parties agree to this Memorandum of Understanding (MOU). The MOU provides for the Court to continue to exercise jurisdiction of this action for all purposes, consistent with the goal of achieving institutional reform. The MOU further provides for the City to remain compliant with the reforms already achieved prior to the expiration of the NSA. Finally, the MOU requires the City to continue its work in achieving full and sustained compliance with the Reform Tasks not completed under the NSA.

It is therefore agreed as follows:

8. The NSA entered into on January 23, 2003, as ordered by the Court, expires and shall terminate by the agreed-upon date of January 22, 2010. Except for those NSA provisions expressly referenced and incorporated in this MOU, this MOU shall supersede the NSA and, if complied with, shall resolve the complaint for injunctive relief filed by Plaintiffs in the above captioned matter alleging a pattern or practice of unconstitutional or otherwise unlawful policing in violation of 42 U.S.C. Section 1983.

**B. Reform Tasks**

9. The Parties agree that the City needs more time to meet the substantive requirements on certain reform tasks and to demonstrate a one year compliance period on others (hereinafter, "Remaining Reform Tasks"). Accordingly, pursuant to this MOU the City agrees to continue the work not completed under the NSA on the Remaining Reform Tasks.

10. All Remaining Reform Tasks will be actively monitored by an Independent Monitor pursuant to the terms and conditions of this MOU. Active monitoring means that the Monitor will conduct the required audits, reviews or studies to assess whether OPD is complying with the substantive task requirements. All Remaining Reform Tasks subject to active monitoring are included in the Active Monitoring Chart, which is attached hereto as Exhibit 1 and incorporated by this reference.

11. The City agrees to remain in substantial compliance with the reform tasks already accomplished under the NSA (hereinafter, "Accomplished Reform Tasks"). The Accomplished

Reform Tasks will not be subject to active monitoring. However, if the Monitor observes material non-compliance with an Accomplished Reform Task, the Monitor may conduct reviews as necessary to determine whether the City has fallen out of substantial compliance and the extent and nature of the alleged deficiency. The Monitor will have access to information and documents related to all reform tasks, including those not listed in Exhibit 1. The Monitor will report its observations and findings to the Parties. The Parties will meet and confer and will consult with the Monitor regarding the actions the City must take to cure any alleged compliance deficiency. If the Parties do not reach consensus, or the Monitor disagrees with the City's remedial measures, either the Parties or the Monitor will advise the Court. The City will have the opportunity to present its case to the Court and, thereafter, the Court will issue a finding at the Court's discretion, or an order regarding the appropriate measures the City should take to cure the alleged compliance deficiency.

12. The City agrees to meet its reform compliance obligations based on the substantive requirements for each task contained in the NSA and subsequent Stipulations filed with the Court. The City will be deemed compliant with the reforms based on the agreed-upon standard of substantial compliance as defined in the NSA. Substantial compliance is defined as meaning that "OPD has complied with the material provisions of the Agreement. Materiality is determined by reference to the overall objectives of the NSA Agreement. Non-compliance with technicalities, or, otherwise, minor failures to comply while generally complying with the NSA Agreement, shall not be deemed failure to substantially comply with the NSA Agreement." (*NSA, Article XV. Section B.3.*)

13. The City agrees to use the compliance criteria and protocols already developed to determine whether the City is in substantial compliance, except that the Monitor, in cooperation with the City and Plaintiffs' counsel, may modify the agreed-upon criteria and protocols as necessary.

14. The City agrees to comply with the provisions respecting the adoption of new or modified policies related to the reform tasks as provided under the NSA, Article XV, Section C.8. Prior to implementing any new policies or any material changes to existing policies related to the Remaining or Accomplished Reform Tasks, the City agrees to continue to provide drafts to the Monitor for review and approval. The Monitor shall continue to review and approve any such policies to ensure that they are consistent with the substantive provisions of the MOU and the

substantive requirements of the NSA provisions incorporated herein. The City will provide these same policies to Plaintiffs for their review and comment.

## C. Independent Monitor

15. The City agrees to hire an Independent Monitor. The Monitor will have responsibilities and authority as provided in the NSA, Article XIII, Sections G and H. The Monitor will be retained by the City in full consultation with the Plaintiffs' attorneys. If the Parties are unable to agree on the selection of the Monitor, the Parties may submit their respective nominees to the federal court for final selection. The costs of the Monitor will be borne by the City and shall be calculated to fairly and reasonably compensate the Monitor for accomplishing the tasks and responsibilities set out in this MOU. In the event that any dispute arises regarding the payment of the Monitor's fees and costs, the City, Plaintiffs' counsel and the Monitor will attempt to resolve the dispute cooperatively prior to seeking the Court's assistance. The Court retains the authority to resolve any disputes that may arise regarding the reasonableness of fees and costs charged by the Monitor.

16. The Monitor will be the agent of the Court and shall be subject to the supervision and orders of the Court. The Monitor will have only the duties, responsibilities and authority conferred by this MOU. The role of the Monitor will be to assess compliance with the reform tasks as set out in this MOU. The Monitor will not and is not intended to replace or take over the role or duties of the Chief of Police or other police or city officials. The Monitor shall offer the City and OPD technical assistance regarding the implementation of the Reform Tasks and overall compliance with the requirements of the MOU.

17. The Monitor may testify in this case regarding any matter relating to the implementation, enforcement or dissolution of this MOU. The Monitor shall not testify and/or respond to subpoenas or documents in other matters relating to the City and OPD, except as authorized by the Court. The Monitor shall not be retained by any current or future litigant or claimant in a claim or suit against the City and its employees.

18. The Monitor will report directly to the federal court. The Monitor will provide regular public status reports to the Parties and the Court about the progress of OPD in achieving substantial

and sustained practice compliance with the Remaining Reform Tasks; with the Accomplished Reform Tasks if necessary to report about OPD's material non-compliance; and as otherwise requested by the Court.

19. The City and OPD agree to cooperate fully with the Monitor and to provide access to information and personnel in a timely fashion. The provisions respecting access and limitations to OPD Documentation and Staff, and the treatment by the Monitor of confidential information contained in the NSA are incorporated herein by reference. (*NSA. Article XIII. Sections K, L, M, N, O and Q.*)

**D.  One Year Compliance Period**

20. The City must demonstrate that it can maintain substantial compliance with the Remaining Reform Tasks for one year. The Monitor will review each of the Remaining Reform Tasks to determine whether each has met the substantial compliance standards and has demonstrated compliance for one year. Upon a finding by the Monitor that a Remaining Reform Task has demonstrated substantial compliance for one year - counting the period of compliance already achieved under the NSA - said Task shall be removed from the Active Monitoring Tasks Chart and shall no longer be subject to active monitoring.

**E.  Compliance Unit**

21. The City agrees to continue the work of the Office of Inspector General. The City agrees to remain compliant with the substantive requirements of Tasks 50 and 51, as previously agreed, except that OPD will prepare an annual report describing the steps taken during the preceding year to comply with this MOU.

**F.  Court Hearings, Motions, Meetings and Meet and Confer Obligations**

22. The Parties agree, unless subsequently agreed otherwise, to have a minimum of two status conferences before the Court during each year of the MOU. Additional status conferences will be held as ordered by the Court, including a petition by the Monitor. The Parties agree to continue to meet and confer on a monthly basis to try to resolve any issue of concern. If a Party believes a status conference is necessary after a meet and confer process fails to resolve an issue, that Party may request the scheduling of an additional status conference with the Court. The Parties agree to meet

MEMORANDUM OF UNDERSTANDING RE: POST NSA  
TERMS AND CONDITIONS ALLOWING FOR THE RESOLUTION  
OF PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF AND FOR  
DISMISSAL OF THE ACTION

- 6 -

C--00-4599-TEH

monthly with the City's attorneys, the Plaintiffs' attorneys, OPD members, OPOA representatives and relevant City officials to ensure effective and timely communication among all the stakeholders and the Monitor regarding MOU compliance issues. The Parties agree to work together in scheduling these meetings only when necessary, and to provide for participation by telephone when appropriate.

23. If the Monitor determines that the duties and the responsibilities of the Monitor under the MOU cannot be carried out because of lack of cooperation, failure to provide information or documents, unwarranted delays by OPD, or that OPD is not proceeding in good faith in complying with the reform requirements under the MOU, the Monitor may seek relief from the Court.

24. If the Plaintiffs conclude that OPD is not proceeding in good faith in complying with the reform requirements under the MOU, and after meeting and conferring between the Parties and the Monitor, Plaintiffs' counsel may file an appropriate motion with the Court for relief and reasonable attorneys fees and costs. The Court has ordered that Plaintiffs' counsel be compensated for their regular work under this MOU, and the Parties have agreed to execute a separate agreement for the payment of reasonable fees to Plaintiffs' counsel.

25. At any time during the pendency of this action, the City may petition the Court for relief from any provision of this MOU, any NSA requirement or provision incorporated herein by reference, or any compliance requirement imposed by the Parties or the Monitor. The City must demonstrate that (a) all good faith efforts have been taken to comply with the subject provision or requirement, (b) that implementation of the provision or requirement is operationally and/or fiscally onerous or impracticable, (c) that the provision or requirement is inconsistent with the overall purposes of the MOU, or (d) that the provision or requirement is no longer an accepted or contemporary practice in law enforcement.

26. The City will not be deemed in violation of any provision of the MOU for the failure to perform any of its obligations if such failure is due to unforeseen circumstances. "Unforeseen circumstances" include conditions not reasonably foreseeable by the City at the time the MOU was executed: acts of God, catastrophic weather conditions, riots, insurrection, war, acts of a court of competent jurisdiction or any similar circumstance for which the City is not responsible or which is not within the City's control. Delays caused by unforeseen circumstances shall reasonably extend the

time of compliance.

G. **Miscellaneous Provisions**

27. This MOU constitutes the entire agreement between the Parties relating to the above captioned matter, and no other statement, promise or agreement, either written or oral, made by either party or an agent of either party, that is not contained in the MOU shall be enforceable. The Parties agree, however, that the overall provisions and intent of the NSA, and those specific provisions incorporated into the MOU, inform the meaning and the purpose of the MOU.

28. This MOU may be modified or amended only in writing by the Parties.

29. This MOU is enforceable only by the Parties to this action. No other person or entity is intended to be a third party beneficiary of the provisions of the MOU.

30. If the Court determines that a provision of the MOU is unenforceable, such provision will be severed and all other provisions will remain valid and enforceable provided, however, that if the severance of any provision materially alters the rights or obligations of the Parties they will, through reasonable, good faith negotiations, agree upon such other amendments as may be necessary to restore the Parties as closely as possible to the relative rights and obligations initially intended.

31. Nothing in the MOU is intended to alter the existing collective bargaining agreement between the City and the Oakland Police Officer Association (OPOA), impair the collective bargaining rights of the members of the OPOA, or alter the rights of the OPOA as intervenor in the above captioned matter. The OPOA retains any and all rights under this MOU which existed under the NSA, including the right to appear in Court and participate in court proceedings.

32. Nothing in the MOU shall limit the power of the Oakland City Council, the Mayor, the City Administrator, the City Attorney and the OPD from exercising their authority and satisfying their duties as set forth in the Charter and other applicable law.

33. Nothing in the MOU shall be construed as the City's admission of liability, evidence of liability, or proof of any violation of the mandates of the NSA, or of any local, state or federal law.

34. The MOU will remain in place for no longer than two (2) years following its entry by the Court, except that the City, the Parties or the Monitor may recommend that it be terminated sooner based on the OPD's progress in meeting its substantial compliance obligations. Without

///.

further action, the MOU shall terminate two (2) years from the effective date of the MOU. If the City is not in substantial compliance by the time this MOU expires, the Parties agree to meet and discuss the narrowing and/or continuation of this MOU.

35. The Parties agree that compliance with the MOU will complete the full settlement of any and all claims the Plaintiffs may have against the Defendant City and its officials, officers, employees or agents, regarding the above-captioned matter. The Court shall dismiss this entire action with prejudice based upon the following considerations: (a) the recommendation by the Monitor, the City, and/or Plaintiffs' counsel that the City has met its substantial compliance obligations under the MOU, and the approval of this recommendation by the Court; (b) the stipulation of the Parties; or (c) the City's prevailing motion showing that it has met its substantial compliance obligations under the MOU.

36. The Court retains jurisdiction over this action for all purposes. Accordingly, the Court retains the power to enforce the terms of the MOU and to resolve all material disputes that may arise between the Parties, including those involving disputes concerning claims for attorneys' fees and costs by Plaintiffs' counsel.

37. The Parties consent and seek entry of this MOU as an Order of the Court. This Order of the Court shall supersede the previous Court order which gave effect to the NSA. The effective date of the MOU shall be January 23, 2010. The MOU may be executed by the representative of the Parties in separate documents, and the Parties' electronic signatures have the same force and effect as original signatures.

///
///
///
///
///
///
///
///

MEMORANDUM OF UNDERSTANDING RE: POST NSA - 9 - C—00-4599-TEH
TERMS AND CONDITIONS ALLOWING FOR THE RESOLUTION
OF PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF AND FOR
DISMISSAL OF THE ACTION

Respectfully submitted,

Bertrand, Fox & Elliot

Dated: Nov 24 2009   By: /s/ _____
                         Gregory M. Fox, Attorney for
                         Defendant City of Oakland

City of Oakland

Dated: Nov 24, 2009   By: /s/ _____
                          Rocio V. Fierro, Attorney for
                          Defendant City of Oakland

Dated: 11/24/09   By: /s/ _____
                      Dan Lindheim, City Administrator
                      City of Oakland

Dated: 11/24/09   By: /s/ _____
                      Chief Anthony Batts
                      Oakland Police Department

Law Offices of John L. Burris

Dated: 11/24/09   By: /s/ _____
                      John L. Burris, Attorney for Plaintiffs

Law Offices of James B Chanin

Dated: 11/24/09   By: _____
                      James Chanin, Attorney for Plaintiffs

Rains, Lucia & Stern, PC

Dated: 11/24/09   By: /s/ _____
                      Rockne A. Lucia, Attorneys for the OPOA

ATTORNEY ATTESTATION: I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this E-filed document.

Dated: 11/24/08

/s/ _____
GREGORY M. FOX

## ORDER

GOOD CAUSE APPEARING, the Court hereby approves the Memorandum of Understanding ("MOU") Re: Post NSA Terms and Conditions Allowing for the Resolution of Plaintiffs' Claims for Injunctive Relief and for Dismissal of the Action.

IT IS SO ORDERED.

Dated: 11/24/09

_____
THELTON E. HENDERSON
United States District Court Judge

# MOU Chart of Active Monitoring Tasks

| Task | Description | Active Monitoring |
|---|---|---|
| 2 | Timelines for IA Investigations | Entire task |
| 3 | Integrity Tests | Entire task |
| 4 | ICR and Complaint Control System | **Only 4.7** – Complaints received by supervisor or commander are reported to IAD on the day of receipt, or start of next business day, if IAD is unavailable. |
| | | **Only 4.10** – Establishing and complying with criteria for resolving complaints via ICR, Administrative Closure or Summary Finding. |
| 5 | Complaint Procedures | Entire task |
| 6 | Refusal to Accept Complaints | Entire task |
| 7 | Methods for Receiving Complaints | **Only 7.3** – OPD accepts anonymous complaints and investigates them to the extent reasonably possible. |
| 16 | Supporting the IAD Process | Entire task |
| 18 | Arrest Approval | **Only 18.2.2** – Supervisors review arrests to ensure that all available witnesses are identified |

| Task | Description | Active Monitoring |
|---|---|---|
| 20 | Span of Control | Entire task |
| 24 | Use of Force Reporting | Entire task |
| 25 | Use of Force Investigation and Reporting | Entire task |
| 26 | Force Review Boards | Entire task |
| 30 | Executive Force Review Boards | Entire task |
| 33 | Reporting Misconduct | Entire task |
| 34 | Stop Data | Entire task |
| 35 | Use of Force Witness Identification | Entire task |
| 37 | Retaliation | Entire task |
| 40 | IPAS | Entire Task |
| 41 | Use of IPAS | Entire Task |
| 42 | Field Training | Entire Task |
| 43 | Academy and In-Service Training | **Only 43.1.1** – OPD ensures personnel are adequately trained for their positions. |
| 45 | Consistency of Discipline | **Only 45.1** – OPD maintains a centralized system for documenting and tracking discipline and corrective action.<br>**Only 45.4** – Discipline is imposed in manner that is fair and consistent. |