IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DELPHINE ALLEN, et al.,

               Plaintiffs,

v.

CITY OF OAKLAND, et al.,

               Defendants.

MASTER CASE FILE
NO. C00-4599 TEH

ORDER VACATING
DECEMBER 9, 2010 CASE
MANAGEMENT CONFERENCE

The Court has carefully reviewed the parties' December 2, 2010 joint case management conference statement, as well as Defendants' supplemental statement filed on December 7, 2010, and finds that having a case management conference at this time would be an inefficient use of resources. The parties' positions are clear, and there appears to be nothing to be gained by having oral presentations at this time.

As this Court has heard so many times before, Defendants believe that they will soon be in full compliance with the reforms to which they long ago agreed and this Court long ago ordered. Defendants assert that, "the City believes that OPD will have achieved or will be close to achieving substantial compliance by December 31, 2010." Dec. 2, 2010 Joint CMC Statement at 8. Such rhetoric echoes that which has been repeatedly presented to the Court, including the exact same statement – that compliance will be achieved by December 31 – *five years* ago.

The Court acknowledges that Defendants have made some progress in the past five years, but it is difficult to imagine that Defendants' promises of substantial compliance in a few short weeks are grounded in reality. For example, the Court's review of a use-of-force incident brought to the Court's attention by the Monitor – who uncovered a videorecording made by an officer's lapel camera during a random audit of internal affairs investigations – highlights potential problems not only with compliance with particular tasks but also with the

culture of the Department, up to and including the Chief of Police, who concurred with the investigative finding that the force was not excessive and minor discipline was appropriate only for the use of profanity. Defendants' response to this incident is also troublesome, as it appears that their primary concern has been to attempt to justify their actions, rather than striving for improvement. This defensive, unproductive posture is evident throughout Defendants' recent court submissions. As another illustration, it appears to the Court that while the data contained in the Department's iPAS system appears to be more reliable and complete than ever before, the use of such data in identifying the need for interventions remains in need of significant improvement.

This Court is not interested in hearing Defendants' predictions about what they think the Monitor will find in future reports, nor is a case management conference the appropriate forum for Defendants to raise disputes over compliance findings or requirements. The parties agreed to have an independent monitor assess compliance with court-ordered reforms, and the Monitor's reports shall serve as the Court's guides to Defendant's progress, including whether Defendants are in compliance with any particular task and in substantial compliance with the MOU. Defendants can rest assured that, as they request in the joint case management statement, this Court will hold a public evidentiary hearing if Plaintiffs or the Monitor ultimately disagree with Defendants' belief that they have achieved substantial compliance, but any challengers to the Monitor's findings or procedures will bear the burden of convincing the Court that the Monitor is incorrect. *See, e.g.,* MOU ¶ 35 (providing that one means by which this case can be dismissed is upon "the City's prevailing motion showing that it has met its substantial compliance obligations under the MOU"); *see also* MOU ¶¶ 24-25 (providing circumstances in which the parties may seek relief from this Court).

In both the joint and supplemental statements, Defendants request that certain tasks be removed from active monitoring based on the MOU's provision that active monitoring shall cease "*[u]pon a finding by the Monitor* that a Remaining Reform Task has demonstrated substantial compliance for one year." MOU ¶ 20 (emphasis added). However, the Monitor

has not yet made any such findings, and the Court therefore will not remove any tasks from active monitoring at this time. If the Monitor makes such findings in the future, the parties shall file a stipulation and proposed order moving the respective task from the list of "Remaining Reform Tasks" to the list of "Accomplished Reform Tasks." Such a move, while perhaps symbolic, would not obviate Defendants' need to remain in compliance with the accomplished tasks, nor would it diminish the Monitor's ability to assess compliance. *See* MOU ¶ 11 ("[I]f the Monitor observes material non-compliance with an Accomplished Reform Task, the Monitor may conduct reviews as necessary to determine whether the City has fallen out of substantial compliance and the extent and nature of the alleged deficiency.").

Further litigation will divert much-needed attention and resources from reform efforts, and a spirit of cooperation must prevail over avoidable confrontation. The Court expects the parties to work effectively together and with the Monitor, who continues to enjoy the Court's full confidence in the execution of his duties. Indeed, Defendants selected the Monitor, with the concurrence of Plaintiffs' counsel, based on the Monitor and his team's real-world policing experience and proven ability to turn police departments around through monitoring work.

If the parties insist on litigating issues in this case, the Court reiterates that it stands prepared to use its powers to their fullest extent to ensure that the required reforms are implemented without further delay. This case began a decade ago, and the monitoring that was originally scheduled to last five years is now on the verge of entering year nine. The time for rhetoric, if ever there was one, has long passed. To borrow from Defendants' counsel, it is now about "delivering." Sept. 16, 2010 Rep. Tr. at 22:10.

The Court believes the parties will be in a better position to evaluate their positions concerning the status of this case after the Monitor issues his next report, or at least the draft thereof. Accordingly, with good cause appearing, the December 9, 2010 case management conference is hereby VACATED. The parties shall meet and confer with the Monitor to select a date in February or March 2011 to hold the next case management conference, and

the Monitor shall confer with the Court on his and the parties' preferences on or before **January 10, 2011.** The Court will issue a Clerk's notice setting the case management conference, with a joint case management conference statement due at least seven calendar days prior.

**IT IS SO ORDERED.**

Dated:   12/08/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT