Gregory M. Fox, State Bar No. 070876
BERTRAND, FOX & ELLIOT
The Waterfront Building - 2749 Hyde Street
San Francisco, California 94109
Email: gfox@bfesf.com
Telephone:    415.353.0999
Facsimile:    415.353.0990

Barbara J. Parker Acting City Attorney, SBN 069722
Randolph W. Hall, Chief Asst. City Attorney, SBN 080142
Rocio V. Fierro, Supervising Deputy City Attorney, SBN 139565
OFFICE OF THE CITY ATTORNEY
CITY OF OAKLAND
One Frank H. Ogawa Plaza, Sixth Floor
Oakland, California 94612
Telephone:    510.238.3601
Facsimile:    510.238.6500
rvf/594025

Attorneys for Defendant CITY OF OAKLAND

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELPHINE ALLEN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF OAKLAND, et al., <br><br> Defendants. | MASTER FILE: No. C-00-4599-TEH <br><br> AMENDED MEMORANDUM OF UNDERSTANDING <br> RE: POST NSA TERMS AND CONDITIONS ALLOWING FOR THE RESOLUTION OF PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF AND FOR DISMISSAL OF THE ACTION |

A.  **Introduction**

1.  The City of Oakland ("City") and the Plaintiffs (hereafter "The Parties") share a mutual interest in promoting effective and respectful policing. The Parties therefore executed the document entitled "Settlement Agreement Re: Pattern and Practice Claims "in the above-captioned matter, which was executed by Order of the Court on January 23, 2003. That agreement between the Parties is commonly known as the Negotiated Settlement Agreement ("NSA"). Over the years the NSA has been

amended and revised by the Parties through stipulations approved by the Court.

2. The NSA was comprised of Fifteen (15) detailed Articles, divided into 51 tasks, that formed the basis for an agreed upon reform program for the Oakland Police Department ("Department" or "OPD"). The NSA's reform program included three principal objectives. First, OPD was to create new policies reflecting the contemporary practices nationwide for law enforcement management and operations. Second, OPD was to train all personnel on the new policies. Third, OPD was to demonstrate that its police officers' actual performance of duties was continuously consistent with the new policies and training.

3. The NSA states that the "overall objective of this document is to provide for the expeditious implementation, initially with the oversight of an outside monitoring body (hereinafter the "Monitor"), of the best available practices and procedures for police management in the areas of supervision, training and accountability mechanisms, and to enhance the ability of the Oakland Police Department (hereinafter the "Department" or "OPD") to protect the lives, rights, dignity and property of the community it serves." (*NSA. Article I.*)

4. The Monitor hired under the NSA has been commonly referred to as the Independent Monitoring Team ("IMT"). During the existence of the NSA, the Department's ongoing daily operations have been monitored by the IMT to assure that in actual practice the Department's operational activities are in "substantial compliance" with the requirements of the NSA, and as reflected in the Department's new and approved policies and training programs.

5. The NSA mandates that "This Agreement shall, under no circumstances, exceed seven (7) years." (*NSA. Article XV. B. 3.*) The NSA also mandates that the IMT's term of office "shall expire after a maximum of seven (7) years." (*NSA. Article XIII. B.*) By Court Order the NSA was replaced and superseded based on the parties entering into a Memorandum of Understanding ("MOU") which expires January 22, 2012.

6. The Parties agree that the City has accomplished the NSA's two goals of enacting the required policies and completing training of OPD personnel on these policies. The Parties further agree that OPD has made significant progress in achieving practice compliance with the reforms. Nevertheless, the Parties agree that additional time is necessary for OPD to complete the reform work it

started under the NSA.

7. The parties agreed on a Memorandum of Understanding ("MOU") governing the compliance efforts by OPD and the auditing by the Monitor which was effective January 2010 and expires January of 2012. The parties have agreed that additional time is necessary for OPD to complete the reform work started under the NSA and MOU.

8. The Parties agree to this Amended Memorandum of Understanding (AMOU). The AMOU provides for the Court to continue to exercise jurisdiction of this action for all purposes, consistent with the goal of achieving institutional reform. The AMOU further provides for the City to remain compliant with the reforms already achieved prior to the expiration of the NSA and original MOU. Finally, the AMOU requires the City to continue its work in achieving full and sustained compliance with the Reform Tasks not completed under the NSA and the original MOU.

It is therefore agreed as follows:

9. The NSA entered into on January 23, 2003, as ordered by the Court, expired and terminated on January 22, 2010. The material terms of the NSA were incorporated by reference into the MOU and said material terms are again incorporated by reference into this AMOU. However this AMOU shall continue to supersede the NSA and, if complied with, shall resolve the complaint for injunctive relief filed by Plaintiffs in the above captioned matter alleging a pattern or practice of unconstitutional or otherwise unlawful policing in violation of 42 U.S.C. Section 1983.

**B.     Reform Tasks**

10. The Parties agree that the City needs more time to meet the substantive requirements on certain reform tasks and to demonstrate a one year compliance period on others (hereinafter, "Remaining Reform Tasks"). Accordingly, pursuant to this AMOU the City agrees to continue the work not completed under the NSA on the Remaining Reform Tasks.

11. All Remaining Reform Tasks will be actively monitored by the Independent Monitor, Police Performance Solutions LLC, pursuant to the terms and conditions of this AMOU. Active monitoring means that the Monitor will conduct the required audits, reviews, or studies to assess whether OPD is complying with the substantive task requirements. All Remaining Reform Tasks subject to active monitoring are included in the Revised Active Monitoring Chart, which is attached

hereto as Exhibit 1 and incorporated by this reference.

12. The City agrees to remain in substantial compliance with the reform tasks already accomplished under the NSA (hereinafter, "Accomplished Reform Tasks"). The Accomplished Reform Tasks will not be subject to active monitoring. The Monitor may conduct random reviews of Accomplished Reform Tasks as necessary to determine whether the City has fallen out of substantial compliance and the extent and nature of the alleged deficiency. The Monitor will have access to information and documents related to all reform tasks, including those not listed in Exhibit 1. If the Monitor observes material non-compliance with an Accomplished Reform Task, the Monitor will report its observations and findings to the Parties. The Parties will meet and confer and will consult with the Monitor regarding the actions the City must take to cure any alleged compliance deficiency. If the Parties do not reach consensus, or the Monitor disagrees with the City's remedial measures, either the Parties or the Monitor will advise the Court. The City will have the opportunity to present its case to the Court and, thereafter, the Court will issue a finding at the Court's discretion, or an order regarding the appropriate measures the City should take to cure the alleged compliance deficiency.

13. The City agrees to meet its reform compliance obligations based on the substantive requirements for each task contained in the NSA and subsequent Stipulations filed with the Court. The City will be deemed compliant with the reforms based on the agreed-upon standard of substantial compliance as defined in the NSA. Substantial compliance is defined as meaning that "OPD has complied with the material provisions of the Agreement. Materiality is determined by reference to the overall objectives of the NSA Agreement. Non-compliance with technicalities, or, otherwise, minor failures to comply while generally complying with the NSA Agreement, shall not be deemed failure to substantially comply with the NSA Agreement." (*NSA, Article XV. Section B.3.*)

14. The City agrees to use the compliance criteria and protocols already developed to determine whether the City is in substantial compliance, except that the Monitor, in cooperation with the City and Plaintiffs' counsel, may modify the agreed-upon criteria and protocols as necessary.

15. The City agrees to comply with the provisions respecting the adoption of new or modified policies related to the reform tasks as provided under the NSA, Article XV, Section C.8. Prior to implementing any new policies or any material changes to existing policies related to the Remaining

or Accomplished Reform Tasks, the City agrees to continue to provide drafts to the Monitor for review and approval. The Monitor shall continue to review and approve any such policies to ensure that they are consistent with the substantive provisions of the AMOU and the substantive requirements of the NSA provisions incorporated herein. The City will provide these same policies to Plaintiffs for their review and comment.

C.  **Independent Monitor**

16.  The City agrees to hire an Independent Monitor which is Police Performance Solutions LLC. The Monitor will have the responsibilities and authority as provided in the original NSA, the MOU and this AMOU, and by such Orders as the Court may deem appropriate pursuant to this Agreement and the powers of the court. The Monitor has been retained by the City in full consultation with the Plaintiffs' attorneys. If Police Performance Solutions LLC stops its monitoring work and needs to be replaced the parties will meet and confer on a new Monitor. If the Parties are unable to agree on the selection of a new Monitor the Parties may submit their respective nominees to the federal court for a final selection by the Court. The costs of the Monitor will be borne by the City and shall be calculated to fairly and reasonably compensate the Monitor for accomplishing the tasks and responsibilities set out in this AMOU. In the event that any dispute arises regarding the payment of the Monitor's fees and costs, the City, Plaintiffs' counsel, and the Monitor will attempt to resolve the dispute cooperatively prior to seeking the Court's assistance. The Court retains the authority to resolve any disputes that may arise regarding the reasonableness of fees and costs charged by the Monitor.

17.  The Monitor will be the agent of the Court and shall be subject to the supervision and orders of the Court. The Monitor will have only the duties, responsibilities and authority conferred by this AMOU. The role of the Monitor will be to assess compliance with the reform tasks as set out in this AMOU. The Monitor will not and is not intended to replace or take over the role or duties of the Chief of Police or other police or city officials. The Monitor shall offer the City and OPD technical assistance regarding the implementation of the Reform Tasks and overall compliance with the requirements of the AMOU.

18.  The Monitor may testify in this case regarding any matter relating to the implementation, enforcement or dissolution of this AMOU. The Monitor shall not testify and/or respond to subpoenas or

documents in other matters relating to the City and OPD, except as authorized by the Court. The Monitor shall not be retained by any current or future litigant or claimant in a claim or suit against the City and its employees.

19.   The Monitor will report directly to the federal court. The Monitor will provide regular public status reports to the Parties and the Court about the progress of OPD in achieving substantial and sustained practice compliance with the Remaining Reform Tasks; with the Accomplished Reform Tasks if necessary to report about OPD's material non-compliance; and as otherwise requested by the Court.

20.   The City and OPD agree to cooperate fully with the Monitor and to provide access to information and personnel in a timely fashion. The provisions respecting access and limitations to OPD Documentation and Staff, and the treatment by the Monitor of confidential information contained in the NSA are incorporated herein by reference. (*NSA. Article XIII. Sections K, L, M, N, O and Q.*)

D.   **One Year Compliance Period**

21.   The City must demonstrate that it can maintain substantial compliance with the Remaining Reform Tasks for one year. The Monitor will review each of the Remaining Reform Tasks to determine whether each has met the substantial compliance standards and has demonstrated compliance for one year. Upon a finding by the Monitor that a Remaining Reform Task has demonstrated substantial compliance for one year - counting the period of compliance already achieved under the NSA and original MOU - said Task shall be removed from the Active Monitoring Tasks Chart and shall no longer be subject to active monitoring.

E.   **Compliance Unit**

22.   The City agrees to continue the work of the Office of Inspector General. The City agrees to remain compliant with the substantive requirements of Tasks 50 and 51, as previously agreed, except that OPD will prepare an annual report describing the steps taken during the preceding year to comply with this AMOU.

F.   **Court Hearings, Motions, Meetings, and Meet and Confer Obligations**

23.   The Parties agree, unless subsequently agreed otherwise, to have a minimum of two status conferences before the Court during each year of the AMOU or as the Court Orders. Additional status conferences will be held as ordered by the Court, including a petition by the Monitor. The Parties

1  agree to continue to meet and confer on a monthly basis to try to resolve any issue of concern. If a Party
2  believes a status conference is necessary after a meet and confer process fails to resolve an issue, that
3  Party may request the scheduling of an additional status conference with the Court. The Parties agree to
4  meet monthly with the City's attorneys, the Plaintiffs' attorneys, OPD members, OPOA representatives,
5  and relevant City officials to ensure effective and timely communication among all the stakeholders and
6  the Monitor regarding AMOU compliance issues. The Parties agree to work together in scheduling
7  these meetings only when necessary, and to provide for participation by telephone when appropriate.

8  24.  If the Monitor determines that the duties and the responsibilities of the Monitor under the
9  AMOU cannot be carried out because of lack of cooperation, failure to provide information or
10 documents, unwarranted delays by OPD, or that OPD is not proceeding in good faith in complying with
11 the reform requirements under the AMOU, the Monitor may seek relief from the Court.

12 25.  Plaintiffs' counsel may bring motions based on their belief that the City or OPD is failing
13 to comply with the provisions of this agreement after meeting and conferring between the Parties and the
14 Monitor. Plaintiffs' counsel may receive reasonable attorneys' fees and costs for bringing such motion
15 at the discretion of the court.

16 26.  The Court has ordered that Plaintiffs' counsel be compensated for their regular work
17 under this AMOU, and the Parties have agreed to execute a separate agreement for the payment of
18 reasonable fees to Plaintiffs' counsel. If the parties are unable to agree on a separate fees agreement for
19 compensation for Plaintiffs' counsel either party may motion the Court for resolution of the matter.

20 27.  At any time during the pendency of this action, the City may petition the Court for relief
21 from any provision of this AMOU, any NSA requirement or provision incorporated herein by reference,
22 or any compliance requirement imposed by the Parties or the Monitor. The City must demonstrate that
23 (a) all good faith efforts have been taken to comply with the subject provision or requirement, (b) that
24 implementation of the provision or requirement is operationally and/or fiscally onerous or impracticable,
25 (c) that the provision or requirement is inconsistent with the overall purposes of the AMOU, or (d) that
26 the provision or requirement is no longer an accepted or contemporary practice in law enforcement.

27 28.  The City will not be deemed in violation of any provision of the AMOU for the failure to
28 perform any of its obligations if such failure is due to unforeseen circumstances. "Unforeseen

circumstances" include conditions not reasonably foreseeable by the City at the time the AMOU was executed: acts of God, catastrophic weather conditions, riots, insurrection, war, acts of a court of competent jurisdiction or any similar circumstance for which the City is not responsible or which is not within the City's control. Delays caused by unforeseen circumstances shall reasonably extend the time of compliance.

G. **Miscellaneous Provisions**

29. This AMOU constitutes the entire agreement between the Parties relating to the above captioned matter, and no other statement, promise or agreement, either written or oral, made by either party or an agent of either party, that is not contained in the AMOU shall be enforceable. The Parties agree, however, that the overall provisions and intent of the NSA, and those specific provisions incorporated into the AMOU, inform the meaning and the purpose of the AMOU.

30. This AMOU is enforceable only by the Parties to this action. No other person or entity is intended to be a third party beneficiary of the provisions of the MOU. This AMOU may be modified or amended only in writing by the Parties.

31. If the Court determines that a provision of the AMOU is unenforceable, such provision will be severed and all other provisions will remain valid and enforceable provided, however, that if the severance of any provision materially alters the rights or obligations of the Parties they will, through reasonable, good faith negotiations, agree upon such other amendments as may be necessary to restore the Parties as closely as possible to the relative rights and obligations initially intended.

32. Nothing in the AMOU is intended to alter the existing collective bargaining agreement between the City and the Oakland Police Officer Association (OPOA), impair the collective bargaining rights of the members of the OPOA, or alter the rights of the OPOA as intervenor in the above captioned matter. The OPOA retains any and all rights under this AMOU which existed under the NSA, including the right to appear in Court and participate in court proceedings.

33. Nothing in the AMOU shall limit the power of the Oakland City Council, the Mayor, the City Administrator, the City Attorney and the OPD from exercising their authority and satisfying their duties as set forth in the Charter and other applicable law.

34. Nothing in the AMOU shall be construed as the City's admission of liability, evidence of

liability, or proof of any violation of the mandates of the NSA, or of any local, state or federal law.

35. The AMOU will remain in place for no longer than January 22, 2014, except that the City, the Parties or the Monitor may recommend that it be terminated sooner based on the OPD's progress in meeting its substantial compliance obligations. Without further action, the AMOU shall terminate two (2) years from the effective date of the AMOU and that date is January 22, 2014. If the City is not in substantial compliance by the time this AMOU expires, the Parties agree to meet and discuss the narrowing and/or continuation of this AMOU.

36. The Parties agree that compliance with the AMOU will complete the full settlement of any and all claims the Plaintiffs may have against the Defendant City and its officials, officers, employees or agents, regarding the above-captioned matter. The Court shall dismiss this entire action with prejudice based upon the following considerations: (a) the recommendation by the Monitor, the City, and/or Plaintiffs' counsel that the City has met its substantial compliance obligations under the AMOU, and the approval of this recommendation by the Court; (b) the stipulation of the Parties; or (c) the City's prevailing motion showing that it has met its substantial compliance obligations under the AMOU.

37. The Court retains jurisdiction over this action for all purposes. Accordingly, the Court retains the power to enforce the terms of the AMOU and to resolve all material disputes that may arise between the Parties, including those involving disputes concerning claims for attorneys' fees and costs by Plaintiffs' counsel.

38. The Parties consent and seek entry of this AMOU as an Order of the Court. This Order of the Court shall supersede the previous Court order which gave effect to the NSA and the original MOU. The effective date of the original MOU was January 23, 2010. The effective date of the expiration of the original MOU is January 22, 2012. The effective start date of the AMOU shall be January 23, 2012. The termination date of the AMOU is January 22, 2014 or sooner as provided herein.

///

///

///

///

1  The AMOU may be executed by the representative of the Parties in separate documents, and the Parties'
2  electronic signatures have the same force and effect as original signatures.

Respectfully submitted,

Bertrand, Fox & Elliot

Dated: June 23, 2011                    By: _____/s/_____
                                        Gregory M. Fox, Attorney for
                                        Defendant City of Oakland

                                        City of Oakland

Dated: June 23, 2011                    By: _____/s/_____
                                        Rocio V. Fierro, Attorney for
                                        Defendant City of Oakland

Dated: June 23, 2011                    By: _____/s/_____
                                        P. Lamont Ewell, City Administrator
                                        City of Oakland

Dated: June 23, 2011                    By: _____/s/_____
                                        Chief Anthony Batts
                                        Oakland Police Department

                                        Law Offices of John L. Burris

Dated: June 23, 2011                    By: _____/s/_____
                                        John L. Burris, Attorney for Plaintiffs

                                        Law Offices of James B Chanin

Dated: June 23, 2011                    By: _____/s/_____
                                        James Chanin, Attorney for Plaintiffs

Rains, Lucia & Stern, PC

Dated: June 23, 2011          By: _____/s/_____
                                  Rockne A. Lucia, Attorneys for the OPOA

ATTORNEY ATTESTATION: I hereby attest that I have on file all holograph signatures for any signatures indicated by a "conformed" signature (/s/) within this E-filed document.

Dated: June 23, 2011                   _____/s/_____
                                       Gregory M. Fox

## ORDER

GOOD CAUSE APPEARING, the Court hereby approves the Amended Memorandum of Understanding ("AMOU") Re: Post NSA Terms and Conditions Allowing for the Resolution of Plaintiffs' Claims for Injunctive Relief and for Dismissal of the Action.

IT IS SO ORDERED.

Dated: 06/27/2011

[Seal: UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA — Signature of Judge Thelton E. Henderson]

THE
United
Judge Thelton E. Henderson

AMENDED MEMORANDUM OF UNDERSTANDING Re: POST NSA TERMS AND CONDITIONS

# EXHIBIT 1

# AMOU Chart of Active Monitoring Tasks
## June 22, 2011

| Task | Description | Active Monitoring |
|---|---|---|
| 3 | Integrity Tests | Entire task |
| 5 | Complaint Procedures for IAD | Entire task |
| 20 | Span of Control | Entire task |
| 24 | Use of Force Reporting | Entire task |
| 25 | Use of Force Investigation and Reporting | Entire task |
| 26 | Force Review Boards | Entire task |
| 30 | Executive Force Review Boards | Entire task |
| 33 | Reporting Misconduct | Entire task |
| 34 | Stop Data | Entire task |
| 40 | PAS | Entire task |
| 41 | Use of PAS | Entire task |
| 42 | Field Training | Entire task |
| 45 | Consistency of Discipline | Only 45.1 – OPD maintains a centralized system for documenting and tracking discipline and corrective action. Only 45.4 - Discipline is imposed in a manner that is fair and consistent |