JOHN L. BURRIS, STATE BAR NO. 69888
Law Offices of John L. Burris
Airport Corporate Centre
7677 Oakport Road, Suite 1120
Oakland, California 94621
Telephone:    510.839.5200
Facsimile:    510.839.3882

JAMES B. CHANIN, STATE BAR NO. 76043
JULIE M. HOUK, STATE BAR NO. 114968
Law Offices of James B. Chanin
3050 Shattuck Avenue
Berkeley, California 94705
Telephone:    510.848.4752, Ex. 2
Facsimile:    510.848.5819

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| DELPHINE ALLEN, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF OAKLAND, et al.,<br><br>Defendants. | Case No.: C00-4599 TEH<br><br>**NOTICE OF, AND MOTION FOR, SANCTIONS AGAINST CITY OF OAKLAND POLICE OFFICER, J. HARGRAVES AND/OR CITY OF OAKLAND POLICE LIEUTENANT, C. WONG; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing Date: January 9, 2012**<br>**Time: 10:00 a.m.**<br>**Courtroom: No. 2, 17th Floor**<br>**The Honorable Thelton E. Henderson** |

Plaintiffs' Notice of and Mot. for Sanctions; Memo. Of Pts. And Auth.
Delphine Allen v. City of Oakland, et al., Case No. C00-4599 TEH

# TABLE OF CONTENTS

I.  Notice of and Motion                                    1

II.  Memorandum of Points and Authorities                   2

A.  Introduction                                            2

B.  Statement of the Facts                                  4

C.  Argument                                                10

D.  Conclusion                                              13

i.

# TABLE OF AUTHORITIES

*Chambers v. NASCO*, Inc., 501 U.S. 32 (1991)    11

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001)    11

*Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001),
*cert. denied sub nom*, *Beauclair v. Gomez*, 534 U.S. 1066 (2001)    11

*Hutto* v. *Finney*, 437 U.S. 678 (1978)    11

*Link* v. *Wabash R. Co.*, 370 U.S. 626 (1962)    11

*Roadway Express, Inc.* v. *Piper*, 447 U.S. 752 (1980)    11

*United States* v. *Hudson*, 11 U.S. 32 (1812)    11

ii.

# I.  NOTICE OF AND MOTION

TO THE COURT, ALL PARTIES, CITY OF OAKLAND POLICE OFFICER, J. HARGRAVES; CITY OF OAKLAND POLICE LIEUTENANT, C. WONG, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on Monday, January 9, 2012, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom No. 2,  17th Floor of the United States District Court for the Northern District of California, which is located at 450 Golden Gate Avenue, San Francisco, California  94102, Plaintiffs will move the Court for an Order imposing monetary sanctions against City of Oakland Police Officer, J. Hargraves, and/or City of Oakland Police Lieutenant, C. Wong,  for their acts and/or omissions which undermine the orderly and expeditious disposition of this litigation and/or which interfere with and/or undermine this Court's Orders, including, but not limited to, the Court Ordered Non-Monetary Settlement Agreement entered January 22, 2003 (NSA); the Order Re: Accountability entered on April 21, 2011; the Second Order  Re: Accountability entered on May 18, 2011; and, the Amended Memorandum of Understanding and Order Thereon (AMOU) entered on June 27, 2011.

This motion shall be based upon the Court's inherent powers, including the power to ensure the expeditious and orderly disposition of this litigation and to ensure compliance with its orders (See, *e.g., Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991)) and other applicable authority, this notice of and motion, the memorandum of points and authorities set forth below, the declaration of Plaintiffs' counsel and evidence attached thereto, the Court file herein and any additional evidence and/or argument which may be presented at the time of the hearing.

## II.  MEMORANDUM OF POINTS AND AUTHORITIES

### A.  INTRODUCTION

Over the past eight years since the Court entered its Order approving the parties' stipulated Non-Monetary Settlement Agreement (NSA) in this case, two independent monitoring teams have repeatedly determined that the City of Oakland has failed to reach substantial compliance with many provisions of that agreement despite receiving repeated extensions on the time for their compliance.

Plaintiffs believe that one of the main reasons why the City of Oakland has been unable to achieve substantial compliance with the NSA and subsequent  Memoranda of Understanding is due to the fact that certain officers and supervisors within the City of Oakland Police Department do not support the Court Ordered reforms under the NSA and, worse, engage in conduct which undermines and interferes with the City of Oakland's substantial compliance with those reforms.

One flagrant example of acts and omissions which undermine and interfere with the Court Ordered reforms under the NSA occurred during one of the recent "Occupy Oakland" demonstrations.  During that event, City of Oakland Police Officer, J. Hargraves, blatantly covered the name tag on his uniform with black tape to conceal his identity from civilians and from other law enforcement officers.  This conduct took place in plain view and in close proximity to other officers, including Oakland Police Lieutenant, C. Wong.

None of these other officers did anything to intervene to stop Officer Hargraves' concealment of his identity in this fashion.  Despite the fact that Officer Hargraves' concealment of his identity was videotaped by a civilian who confronted him about his conduct, none of the other officers in close proximity sought to intervene.  It was only after the civilian specifically

engaged Lt. Wong that he finally approached Officer Hargraves, whispered something to him and removed the tape from his name tag. The civilian's video recording of this incident can be currently viewed on You Tube at http://www.youtube.com/user/BLKPXLS.

Despite the fact that some of the most significant reforms under the Court Ordered NSA involve the mandatory duties of officers and supervisors alike to report misconduct by other officers to their supervisors and/or to Internal Affairs, Plaintiffs' counsel were informed during "meet and confer" conversations with counsel for the City of Oakland that Lt. Wong merely made a notation about the incident in iPass.  If this is true, Lt. Wong's failure to report the incident to his supervisor and/or to Internal Affairs clearly violated his mandatory reporting duties under the NSA.

The fact that Officer Hargraves apparently felt comfortable enough to conceal his identity in order to prevent him from being identified as a subject officer in a misconduct complaint or as a witness to the misconduct of other officers in plain view of other officers during this incident, and that a Lieutenant appears to have failed to carry out his mandatory duty to report this outrageous conduct, is indicative of the kind of lawless attitude among certain members of the City of Oakland Police Department  which gave rise to this litigation eleven years ago.

Worse, the fact that this conduct could go unchallenged by other officers, including a Lieutenant, in plain view supports the reasonable conclusion that certain members of the City of Oakland Police Department  have either not been sufficiently trained about the Court Ordered reforms under the NSA and/or are not supportive of the City of Oakland's efforts to reach substantial compliance with the reforms mandated by that Agreement.

Plaintiffs strongly believe that unless and until individual members of the City of Oakland Police Department are held accountable for their conduct which interferes and/or

undermines the Court Ordered reforms under the NSA, the chances of the City of Oakland ever achieving substantial compliance with these reforms appears unlikely.  Therefore, Plaintiffs respectfully move this Court for an Order imposing monetary sanctions in the amount of $5,100.00, plus any additional attorneys' fees incurred by Plaintiffs in this matter prior to and at the hearing of this motion, against Officer Hargraves and/or Lt. Wong for their acts and/or omissions which interfere with and/or undermine this Court's Orders, including the Court Ordered reforms mandated by the NSA and subsequent Memorandums of Understanding. (Chanin decl.).

## B.  STATEMENT OF THE FACTS

On January 22, 2003, the parties stipulated to a non-monetary settlement agreement (NSA), which was entered as an Order of this Court.  (Chanin decl., Ex. 1, NSA).  The NSA required the City of Oakland to enact and enforce institutional reforms within the City of Oakland Police Department to prevent a continuing course of civil rights violations by its officers and to require that supervisors and command staff be held accountable for their failure to prevent recurring misconduct by their subordinates.(Chanin decl., Ex. 1, NSA).

Some of the most significant reforms mandated under the Court Ordered NSA involved the reporting of misconduct by members of the Oakland Police Department by fellow officers and supervisors; the identification of witnesses to acts of misconduct by members of the Oakland Police Department; and mandates that supervisory members of the Oakland Police Department take appropriate action in the wake of acts of misconduct by their subordinates.  (Chanin decl., Ex. 1, NSA  at Sections V-VI).

In particular, Section VI(A) of the NSA, mandates that OPD personnel report misconduct by any other member or employee of the Department to their supervisor and/or IAD and that

Plaintiffs' Notice of and Mot. for Sanctions; Memo. Of Pts. And Auth.
Delphine Allen v. City of Oakland, et al., Case No. C00-4599 TEH          4

their failure to do so would subject them to corrective action and/or discipline for any failure to report misconduct. *Id*. Section V(E) of the NSA also mandates that members of the OPD are required to report acts by OPD officers involving criminal misconduct. Section VI(C), also requires officers to identify both civilian and police witnesses to incidents involving the use of force in Use of Force reports. *Id*.

In the eight years that have passed since the parties entered into the Court Ordered Non-monetary Settlement Agreement (NSA), two separate independent monitoring teams have repeatedly found that the City of Oakland has failed to substantially comply with many provisions of the NSA, despite being given repeated extensions of time for the City come into substantial compliance with the Agreement. (Chanin decl.).

Plaintiffs believe that one of the main reasons why the City of Oakland has been unable to substantially comply with reforms mandated by the NSA is due to the fact that certain members of the Oakland Police Department are not committed to making sure that the City reaches substantial compliance with the NSA and, worse, are actively engaged in acts and/or omissions which interfere with and/or undermine the Court Ordered reforms under the NSA and with the efficient and orderly final disposition of this litigation. (Chanin decl.).

Due to the continuing failure of the City of Oakland to meet its obligations under the NSA, the Court entered an "Order Re: Accountability" on April 13, 2011 which made it clear that this Court would hold individual members of the City of Oakland Police Department responsible for their acts and/or omissions which undermined and/or interfered with this Court's Orders, in addition to specific supervisors who were identified as having responsibility for certain tasks under the NSA. (Chanin decl., Ex. 2, April 13, 2011, "Order Re: Accountability").

In this Order, the Court stated:

Plaintiffs' Notice of and Mot. for Sanctions; Memo. Of Pts. And Auth.
Delphine Allen v. City of Oakland, et al., Case No. C00-4599 TEH          5

"Finally, as the Court has explained repeatedly, including at the most recent status conference, ***all employees of the Department, and not just the Department's senior command staff and their superiors within the City, are subject to Court sanctions if they interfere with or undermine implementation of this Court's orders***. The Court shares the hope that such sanctions, including possible contempt proceedings, will not become necessary. However, as the Court has indicated, it stands prepared to take all necessary action to ensure that the reforms it ordered – and to which the parties agreed – are finally implemented. It is well beyond time to move past good intentions and into good practices."

*Id.* (Emphasis added).

The Court also stated in said Order that if any of the parties or the Intervenor, Oakland Police Officers Association, disputed whether the Court had a sufficient legal basis on which to enter sanctions, including contempt findings, against any of the individual members of the OPD, they were required to file a brief explaining the deficiencies and proposing language to correct any such deficiencies by May 16, 2011. *Id.*

On May 16, 2011, the City of Oakland filed a response to the Court's April 13, 2011, "Order Re: Accountability." (Chanin decl., Ex. 3).  In said response, the City of Oakland noted that then Assistant Chief, Howard Jordan, issued a Memorandum to all personnel of the Oakland Police Department advising them of their duty to abide by the department's policy and reform efforts and notifying them that their failure to do so could expose them to the imposition of sanctions by the Federal Court.  *Id.*  The Intervenor, Oakland Police Officers Association, and Plaintiffs did not file a brief in response to the Court's April 13, 2011, Order.

Thereafter, on May 18, 2011, the Court entered its "Second Order Re: Accountability." (Chanin decl., Ex. 4).  In that Order, the Court noted that neither Plaintiffs, nor the Intervenor, Oakland Police Officers Association, filed a brief in response to the Court's previous "Order Re Accountability" and, thus, acknowledged that the Court had a sufficient legal basis upon which to sanction persons who undermined or interfered with the Court's Orders in this case.

The Court also noted that while the City of Oakland did file a response to the April 13, 2011 Order, the City did not dispute that the Court had sufficient authority upon which to sanction individual members of the Oakland Police Department who interfered with or undermined the Court's Orders.  Instead, the City sought and received clarification from the Court that a hearing would be held before the imposition of any such sanctions. *Id.*

Despite the aforementioned Orders of this Court and the Memorandum issued by then Assistant Chief, Howard Jordan, to all members of the OPD reminding them of their obligation to support the OPD's reform efforts under penalty of possible sanctions by this Court, the video recording shows that Officer Hargraves blatantly, and in plain view, concealed his name tag with black tape during his deployment at an Occupy Oakland event on or about November 2, 2011. (Chanin decl.).

A reasonable inference from this evidence is that Officer Hargraves intentionally and in bad faith covered his name tag with black tape to make it difficult, if not impossible, to identify him as a subject officer in the event he engaged in misconduct during this assignment and/or to prevent him from being identified as a witness officer in the event any other officer engaged in misconduct in his presence. (Chanin decl.).  There does not appear to be any reasonable or innocent explanation why an on-duty Oakland Police Officer would cover up the name tag on his uniform in this fashion.  This outrageous conduct clearly undermines and interferes with the witness identification and reporting requirements of the NSA under Sections V and VI.  *Id.*

Despite the fact that Officer Hargraves' conduct took place in plain view and in the immediate proximity of other officers depicted in the video recording, including Lt. C. Wong, none of them intervened to stop Officer Hargraves' concealment of his identity before the civilian specifically spoke to Lt. Wong about this misconduct.  The failure to intervene to stop

this misconduct in their presence and/or to report misconduct occurring in plain view also interferes with and undermines the mandates contained it he NSA, Sections V and VI. (Chanin decl.).

As shown on the video recording, when the videographer attempted to engage Officer Hargraves about the concealment of his identity, he refused to respond to the videographer's inquiries. Despite the fact that the videographer's discussion with Officer Hargraves was taking place in the immediate presence of other officers and Lt. Wong, none of them intervened. (Chanin decl.).

It was only after the videographer specifically engaged Lt. Wong by name that Lt. Wong finally approached Officer Hargraves, whispered something to him and removed the black tape covering his badge. Thereafter, Officer Hargraves was apparently allowed to remain on duty, notwithstanding his outrageous attempt to conceal his identity. In addition, there is no indication on the video recording that Lt. Wong ever verbally responded to the citizen's concerns about Officer Hargraves' misconduct or that he gave the civilian any information about how he could go about filing a complaint concerning Officer Hargraves' conduct, even though it was obvious that the citizen was complaining about this misconduct. (Chanin decl.).

During subsequent "meet and confer" discussions with counsel for Defendants City of Oakland, Plaintiffs' counsel were informed that the City is conducting an investigation of this incident. During these meet and confer discussions, counsel for the City of Oakland also related that Lt. Wong made an entry about the incident in iPass. (Chanin decl.).

Even assuming that Lt. Wong made a notation in iPass, however, that would not have fulfilled his mandatory duty to report Officer Hargraves' blatant misconduct to his supervisor and/or to Internal Affairs as required under Section VI(A) of the NSA. This apparent failure to

report Officer Hargraves' misconduct by Lt. Wong to Internal Affairs and/or to his supervisor, if true, violated his mandatory reporting duties under the NSA.  The failure to report such misconduct by Lt. Wong strongly indicates that he was either never properly trained by his OPD commanders about the reporting requirements under the NSA or intentionally chose to ignore his reporting obligations under the NSA in bad faith.  (Chanin decl.).

While counsel for the City of Oakland informed Plaintiff's counsel that the City has now commenced an investigation into this incident, this fact does not preclude this Court from enforcing its own Orders or from sanctioning the acts and/or omissions by Officer Hargraves and Lt. Wong which undermine and/or interfere with the Court Ordered reforms under the NSA. (Chanin decl.).   Furthermore, in light of the substantial notice period for this motion, the City of Oakland will have more than sufficient time to determine whether this misconduct occurred prior to the hearing, particularly since this incident was captured on a video recording.  In the event that the City of Oakland fails to investigate this incident by the time of the hearing on this matter, this may raise additional issues concerning whether certain members of the OPD holding investigatory assignments in Internal Affairs are committed to the Court Ordered investigation and disciplinary reforms under the NSA. (Chanin decl).

Plaintiffs strongly believe that the City of Oakland's substantial compliance with the NSA will be virtually unattainable unless and until OPD officers and/or supervisors who are actively engaging in conduct which interferes with and/or undermines the Court Ordered reforms are held personally accountable for their conduct by this Court. (Chanin decl.)

## C. ARGUMENT

### 1.  Monetary Sanctions Should Be Imposed against OPD Officer J. Hargraves and OPD Lt. C. Wong for their Conduct Which Interferes with and Undermines the Court Ordered NSA Based on the Court's Inherent Power to Achieve the Orderly and Expeditious Disposition of this Case and to Ensure Submission to its Lawful Mandates

It has long been held that Federal Courts have certain inherent powers, including the inherent power to manage their own affairs and to ensure submission to their lawful mandates. *Chambers v. NASCO*, Inc., 501 U.S. 32, 46-47 (1991) (*citing*, *United States* v. *Hudson*, 11 U.S. 32, (1812);  *Roadway Express, Inc.* v. *Piper*, 447 U.S. 752, 764 (1980)); *Gomez v. Vernon*, 255 F.3d 1118, 1133 (9th Cir. 2001), *cert. denied sub nom*, *Beauclair v. Gomez*, 534 U.S. 1066 (2001).   The Court's inherent power includes the power to impose sanctions for acts constituting a willful disobedience of a court order, where a party acts in bad faith vexatiously, wantonly or for oppressive reasons, and for willful abuses of the judicial processes. *Gomez v. Vernon*, 255 F.3d at 1134; *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001).  The inherent power to impose sanctions is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link* v. *Wabash R. Co.*, 370 U.S. 626, 630-631 (1962).

Because of their very potency, it has been held that the Court's inherent powers must be exercised with restraint and discretion.  *Roadway Express, supra*, at 764.  A primary aspect of that discretion is the ability of the Court to fashion an appropriate sanction for conduct which abuses the judicial process.  As the Supreme Court has previously recognized, an assessment of attorney's fees against a party and/or their counsel is clearly within the Federal Court's inherent powers to sanction such abuses. *See, e.g., Roadway Express, supra*, at 765; *Hutto* v. *Finney*, 437 U.S. 678, 689, fn. 14 (1978)(The award vindicates judicial authority without resort to the more

drastic sanctions available for contempt of court and makes the prevailing party whole for expenses caused by his opponent's obstinacy.").

In this case, monetary sanctions should be imposed pursuant to the Court's inherent powers to control the orderly and expeditious disposition of this litigation and to ensure compliance with its Orders against Officer Hargraves and Lt. Wong for their acts and omissions which interfere with and undermine the Court Ordered reforms under the NSA.

Officer Hargraves' blatant concealment of his identity during the "Occupy Oakland" demonstration clearly has no innocent explanation. Instead, it was purposeful conduct intended to prevent him from being identified as a subject officer in the event he engaged in other acts of misconduct while he was on duty at this event and/or to prevent him from being identified as a witness to acts of misconduct by other officers. This conduct was clearly in bad faith and undermines and interferes with the mandatory reporting duties under the Court Ordered NSA. The fact that Officer Hargraves felt comfortable enough to conceal his name tag in this fashion in plain view of other officers and a Lieutenant also indicates that he knew it was unlikely that he would face any ramifications for this misconduct by his superiors.

In fact, as shown in the video recording, Lt. Wong did nothing to intervene to stop Officer Hargraves' outrageous conduct until the civilian videotaping the incident specifically engaged him by name. Only then did Lt. Wong approach Officer Hargraves, whisper something to him and removed the tape from his name tag. If the representation by counsel for the City of Oakland is correct and that Lt. Wong only mentioned the incident in an iPass entry, he also failed to fulfill his mandatory reporting duties under the NSA, which required him to report Officer Hargraves' misconduct to his supervisor and/or to Internal Affairs. This conduct, if true, also undermines and interferes with the Court Ordered reforms under the NSA.

Plaintiffs' Notice of and Mot. for Sanctions; Memo. Of Pts. And Auth.
Delphine Allen v. City of Oakland, et al., Case No. C00-4599 TEH          11

Therefore, Plaintiffs respectfully move the Court for an imposition of monetary sanctions in the amount of $5,100.00 against Officer Hargraves and/or Lt. Wong,  for the Plaintiffs' attorneys' fees incurred to date with respect to the issues discussed in this Motion, plus any additional attorneys' fees incurred prior to and/or at the hearing in this matter. (Chanin decl.).

## D.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully move the Court for an Order imposing monetary sanctions in the amount of $5,100.00 against City of Oakland Police Officer, J. Hargraves and/or and Lt. C. Wong, plus any additional attorney's fees incurred by Plaintiffs prior to and/or at the hearing on this Motion, for their acts and omissions which undermine and interfere with the Court Ordered reforms under the NSA and which also interfere with and undermine the expeditious disposition of this litigation.


Dated: November 14, 2011                     _/S/_____
                                             James B. Chanin
                                             Attorney for Plaintiffs


                                             _/S/_____
Dated: November 14, 2011                     John L. Burris
                                             Attorney for Plaintiffs


Plaintiffs' Notice of and Mot. for Sanctions; Memo. Of Pts. And Auth.
Delphine Allen v. City of Oakland, et al., Case No. C00-4599 TEH               12