IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELPHINE ALLEN, et al.,<br><br>                Plaintiffs,<br><br>    v.<br><br>CITY OF OAKLAND, et al.,<br><br>                Defendants. | MASTER CASE FILE<br>NO. C00-4599 TEH<br><br><u>ORDER VACATING JANUARY 26, 2012 STATUS CONFERENCE AND CONFERRING ADDITIONAL AUTHORITY ON THE MONITOR</u> |

      This matter is scheduled for a further status conference on January 26, 2012. After carefully reviewing both the Monitor's most recent quarterly report and the parties' joint status conference statement, the Court finds a status conference at this time to be unnecessary. The positions of the parties and Intervenor Oakland Police Officers' Association ("OPOA") are clear. In brief, Plaintiffs believe a receivership is necessary to bring the Department into full compliance and request a briefing schedule on a motion for receivership, although they remain open to meeting and conferring with Defendants as long as such discussions are meaningful and not simply an excuse for further delay. Defendants ask the Court to recognize the progress that has been made, underscore that they have begun to work more collaboratively with the Monitor, and again tell the Court that new leaders are bringing renewed energy and commitment to the reform efforts. OPOA contends that the Monitor's most recent report does not reflect the current state of the Department, echoes Defendants' statements that new leaders are making a difference, and requests the Court's direction concerning the public disclosure of discipline imposed against two officers. There is no necessity for the Court to hear these positions stated again orally. Accordingly, the January 26, 2012 status conference is hereby VACATED.

      As to OPOA's request concerning the confidentiality of discipline proceedings, OPOA has presented no reason to believe that the breach of such confidentiality resulted

1 from the Court's *in camera* session on January 9, 2012. Without deciding the issue, the
2 Court finds it far more likely that the level of discipline was revealed by others who, for
3 example, may have noticed that Sergeant Wong is no longer a lieutenant.[1] In the absence of
4 any evidence that the Court's order to keep the information confidential was violated, the
5 Court will not pursue any further proceedings.

6 Turning to more substantive matters, the Oakland Police Department is, without a
7 doubt, better off now than when these cases were filed in 2000 and 2001. Also without a
8 doubt, however, much significant work remains if the Department is ever to achieve the
9 promises of the Negotiated Settlement Agreement ("NSA") reached by the parties in 2003.
10 The Court remains in disbelief that Defendants have yet – nine years later – to achieve what
11 they themselves agreed was doable in no more than five years. Moreover, this is not a case
12 where the end goals were originally out of reach or in any way extraordinary. To the
13 contrary, as two different independent monitoring teams, both of whom were selected by
14 Defendants, have explained, the NSA represents a collection of standard good police
15 practices, and this Department finds itself woefully behind its peers around the state and
16 nation.

17 The City makes much of its changed leadership – the Mayor, City Administrator,
18 Chief of Police, and City Attorney – and the Court does not doubt the earnestness of the
19 letters submitted by these individuals. However, as the Court has explained time and time
20 again, words and promises are not enough. Indeed, each time a previous new Mayor or City
21 Administrator or Chief of Police has come on board, the Court was reassured that the
22 individual was strongly committed to reforming the Oakland Police Department, and that a
23 change in administration and leadership was all that was necessary to push the City into full
24 compliance. To their credit, at least the current City leaders do not argue that Defendants'
25 compliance levels are higher than the Monitor has found, that the compliance standards are
26 too strict, or that the Department will be in compliance by a certain date in the near future.

---

[1] The Court finds that this is no longer confidential information, as OPOA itself has noted in a public filing that Wong is now a sergeant.

2

Nonetheless, if history is any indication, the leadership's expressed desire to achieve compliance – not only for compliance's sake, but for the sake of improving the Department so that it can more effectively serve the community it exists to protect – will simply not, after nine years, be enough.

As both Plaintiffs and Defendants recognize, something must change if full compliance is to be achieved. Given the stagnant and – worse yet – decreasing, in some cases, levels of compliance found by the Monitor, the Court is not encouraged that Defendants will, without more, be able to fulfill their promises from nine years ago. As Plaintiffs correctly observe in the joint status conference statement, one of the factors to be considered before appointing a receiver is whether less extreme measures have been exhausted or proven futile. Accordingly, rather than begin receivership proceedings immediately, the Court now confers additional authority on the Monitor as follows:

IT IS HEREBY ORDERED that, effective immediately, the Chief must regularly consult with the Monitor on all major decisions that may impact compliance with the NSA, including but not limited to:

- changes to policies, the manual of rules, or standard operating procedures;
- personnel decisions, including promotions, engagement of consultants, and disciplinary actions in Class I misconduct cases;
- tactical initiatives that may have a direct or indirect impact on the NSA; and
- procurement of equipment, including software, that is intended for the purpose of NSA compliance.

If, after consultation with the Monitor, the Chief intends to take action against the Monitor's recommendation, then the Monitor shall discuss the intended action with the City Administrator and Mayor, whom the Court expects will make themselves available to the Monitor reasonably promptly. As provided in the NSA, "[Department] personnel shall be required to cooperate fully with the Monitor to provide access to information and personnel in a timely fashion." NSA § III.K.1. To the extent that this has not already been clear, the same rule shall apply to all City personnel, including contractors.

3

1  If the City ultimately implements a decision against the Monitor's recommendation,
2 then the Court may schedule a hearing to determine whether it should order that the
3 Monitor's recommendation be implemented.  At any such hearing, the City will bear the
4 burden of persuading the Court that its failure to follow the Monitor's recommendation will
5 not have a negative impact on the City's compliance efforts.  Because this new requirement
6 will add to the Monitor's responsibilities and, most likely, number of site visits in a manner
7 unforeseen at the time the Monitor's last contract was signed, Defendants shall immediately
8 meet and confer with the Monitor to reach an appropriate agreement to modify the Monitor's
9 contract with the City.

10  The Court hopes that these intermediate measures will be sufficient to move
11 Defendants into full compliance, but it also shares Plaintiffs' concerns that Defendants are
12 taking far too long to achieve what they should have achieved at least four years ago.  The
13 Court extended the NSA by the two-year term contemplated in the agreement, and
14 Defendants still failed to achieve full compliance with nearly half of the 51 monitored tasks.
15 Another two years later, during which time Defendants were focused on only 22 active
16 monitoring tasks, Defendants have achieved full compliance with just over half of those
17 tasks and, worse yet, have fallen in and out of compliance on some tasks, thus indicating a
18 lack of sustainability.  The outstanding tasks are not minor formalities; instead, they are
19 significant areas that go to the heart of any police department, including how internal affairs
20 investigations are completed, how officers are supervised, and the use and reporting of force.
21 The time for delay has long passed, and the Court does not intend the procedures it has
22 ordered above to be an excuse for any additional delay.

23  Consequently, IT IS FURTHER ORDERED that the parties shall meet and confer on
24 a briefing and hearing schedule for receivership proceedings should the above process not
25 prove effective.  The Monitor has informed the Court that his report evaluating Defendants'
26 compliance from January to March 2012 should be completed no later than July.  That report
27 will reveal whether the increased involvement by the Monitor has moved Defendants any
28 further along the road to compliance.  The parties' proposed briefing schedule shall therefore

4

1  contain a filing date for Plaintiffs' motion no earlier than August 1, 2012.  The parties shall
2  file a stipulation concerning the schedule for receivership proceedings on or before
3  **February 27, 2012.**  The Court will enter a scheduling order after considering the parties'
4  proposed dates and its own calendar.

6  **IT IS SO ORDERED.**

8  Dated:   01/24/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT