IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELPHINE ALLEN, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>CITY OF OAKLAND, et al.,<br><br>   Defendants. | MASTER CASE FILE<br>NO. C00-4599 TEH<br><br><u>ORDER RE: PLAINTIFFS'<br>MOTION FOR SANCTIONS<br>AGAINST OFFICER HARGRAVES<br>AND LIEUTENANT WONG</u> |

  This matter came before the Court on January 9, 2012, on Plaintiffs' motion for sanctions, under the Court's inherent powers, against Officer John Hargraves and Lieutenant Clifford Wong. In addition to hearing oral argument in a public forum, the Court also conducted an *in camera* session with all counsel and Deputy Chief Anthony Toribio to discuss confidential personnel matters. Although the Court has not yet decided whether to sanction Hargraves and Wong, it now issues this order to clarify the procedure to be followed if Plaintiffs seek to bring any future motions for sanctions.

**BACKGROUND**

  On November 2, 2011, Officer John Hargraves covered the name badge on his uniform with black tape, such that his name was not visible. In an incident captured on video, a civilian asked Hargraves why he had covered his name. Hargraves did not respond. Several officers, including Lieutenant Clifford Wong, were in the immediate vicinity. The civilian approached Wong and asked whether covering a name badge was against policy. Wong did not respond directly to these inquiries but did walk over to Hargraves and remove the black tape that was covering Hargraves's name. These events occurred while the officers were monitoring nearby Occupy Oakland protests.

1  In a declaration filed in opposition to this motion, Hargraves stated that:

> The day or two before the incident on November 2, 2011, I was briefed during line up by the Watch Commander that a law enforcement officer with another agency was videotaped by protestors who were part of the "Occupy" movement and that the officer's name, home address, and names of his family were posted on the internet. The video involving that other officer also called for violence against the officer, including burning down his home.

Hargraves Decl. ¶ 2. He explained that this caused "great concern for the safety of [his] family," *id.*, and "[o]ut of a desire to protect [his] family, [he] covered the nametag portion of [his] uniform with tape as a large group of protestors was passing through and just before a civilian approached [him] with a video camera." *id.* ¶ 3. He further explained that he "had no intent or desire to interfere with or undermine the Negotiated Settlement Agreement (NSA) or the Memorandum of Understanding (MOU)" in this case. *Id.* ¶ 4.

Wong stated in a declaration that he "had a conversation with Officer Hargraves a few minutes before the civilian with the video camera approached [them] and there was no tape covering Officer Hargraves' nametag at that time." Wong Decl. ¶ 4. He "believed this uniform infraction was a Class II violation of the Negotiated Settlement Agreement (NSA)" and "made a notation of the incident on IPAS." *Id.* ¶ 5. He also explained that he "had no intent or desire to interfere with or undermine" the NSA or MOU. *Id.* ¶ 6.

Pursuant to Department policy, the Internal Affairs Division ("IAD") opened investigations after learning of the above incident on November 4, 2011. Chief Howard Jordan ordered the investigations to be expedited because he "believed that the complaints against the officer and lieutenant, if substantiated, could constitute a serious breach of Oakland Police Department policy." Jordan Decl. ¶ 9. IAD concluded its investigation, and Jordan approved the investigation's findings on December 1, 2011. *Id.* ¶ 12. Jordan imposed discipline, which the Court discussed with the parties *in camera*. During the public portion of the hearing, Toribio explained that discipline against one officer remained subject to appeal, but that the discipline imposed against the second officer was final and non-appealable. Neither officer has a history of misconduct.

**LEGAL STANDARD**

Courts have inherent powers "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). Under these powers, a court may "impose sanctions for bad faith, which includes a broad range of willful improper conduct," or "conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 992, 994 (9th Cir. 2001). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.* at 994. The "very potency" of a court's inherent powers dictates that they be "exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

**DISCUSSION**

As this Court has previously explained, "all employees of the Department, and not just the Department's senior command staff and their superiors within the City, are subject to Court sanctions if they interfere with or undermine implementation of this Court's orders." April 13, 2011 Order at 2. Defendants and Intervenor Oakland Police Officers' Association ("OPOA") agree "that this Court has the legal authority to enter sanctions against any member or employee of the Oakland Police Department who interferes with compliance efforts in this case." May 18, 2011 Order at 2. Indeed, the Department itself put all employees on notice, in a memorandum to all personnel from then-Assistant Chief Jordan, that anyone who failed "to abide by our policies and reform efforts . . . will be held accountable and also face possible sanctions from the Federal Court. . . . These sanctions include contempt proceedings." May 9, 2011 Mem. to All OPD Personnel from Jordan (Ex. A to Ex. 3 to Chanin Decl.). The question before the Court on this motion is therefore not whether the Court has the authority to impose sanctions, but whether the Court can and should exercise its authority in these instances.

It is clear to the Court that both Hargraves and Wong violated a departmental policy developed to comply with the NSA in this case.[1] Departmental General Order ("DGO") M-3, "Complaints Against Departmental Personnel or Procedures," adopted pursuant to NSA Tasks 2, 4, 5-9, 11, 12, 14-16, 28, 29, and 45, categorizes complaints against Department personnel as either Class I or Class II offenses. DGO M-3 (Ex. 1 to Chanin Reply Decl.). "Class I offenses are the most serious allegations of misconduct and, if sustained, shall result in disciplinary action up to and including dismissal and may serve as the basis for criminal prosecution." *Id.* at 4. They "shall be investigated by the IAD." *Id.* at 19. "Class II offenses shall include all minor misconduct offenses" and "shall be investigated or resolved at the division-level unless otherwise directed by the [Chief of Police], Assistant Chief of Police, Acting Chief of Police, or Deputy Chief." *Id.* at 4, 19. The "deliberate concealment of a badge or name plate" and the "[f]ailure to report others who commit any Class I offense" are explicitly identified as Class I offenses. *Id.* at 4. Thus, Hargraves and Wong unquestionably committed Class I offenses, as did any other officers who were aware that Hargraves concealed his name and failed to report that offense.

With respect to Hargraves's asserted reason for covering his name badge, the Court recognizes the inherent safety concerns faced by police officers but cannot condone misconduct founded on such concerns. Officers face dangers and challenges on a daily basis and could likely assert safety as a concern in almost any encounter between a police officer and a member of the public. Thus, if safety were considered a legitimate basis for violating laws and policies, there would, in essence, be no laws or policies governing police conduct. This cannot be and is not the case; it should go without saying that those tasked with enforcing the law must themselves follow the law.

---

[1] Hargraves also violated California Penal Code section 830.10, which provides that "[a]ny uniformed peace officer shall wear a badge, nameplate, or other device which bears clearly on its face the identification number or name of the officer," and the crowd control policy adopted as part of the settlement of the *Coles/Local 10* cases, which provides that an officer's "number or name shall be clearly visible at all times," OPD Crowd Control & Crowd Management Policy at 5 (Ex. 2 to Chanin Reply Decl.).

4

The Court was prepared to take sworn testimony from Hargraves and Wong at the hearing, but the officers did not attend. The Court did not order their attendance because it assumed – mistakenly, it now realizes – that officers facing sanctions from the Court would voluntarily appear at any hearing where such sanctions would be discussed. The next step, if this Court opts to pursue sanctions against Hargraves and Wong, would be an evidentiary hearing – an option that remains under consideration by the Court. In the interim, if the Monitor finds any further misconduct by these officers, he shall immediately notify the Court. Additionally, Plaintiffs indicated at oral argument that their position on this motion might be affected if the officers demonstrated that they accepted responsibility for their actions, including accepting the discipline that was imposed on them by the Department. Plaintiffs shall file a notice of full or partial withdrawal of their motion if these or other changed circumstances cause them to no longer request sanctions against either officer.

The Court expects that its separate order requiring the Chief of Police to consult regularly with the Monitor on major decisions that may impact compliance with the NSA, including disciplinary action in Class I misconduct cases, will minimize the potential for future requests for sanctions by Plaintiffs. However, in case this situation arises again, no party objected to the Court's suggestion at the hearing that it would increase the Monitor's involvement in matters of misconduct, and the Court now orders the following procedure to take effect immediately:

1. If Plaintiffs' counsel believe that an officer should be sanctioned by the Court for interfering with the reform efforts in this case, then they shall discuss the matter with the Monitor before filing any motion with this Court. The Monitor shall have the authority to conduct any investigation he deems appropriate in response to any such request, as well as upon request by this Court or upon his own initiative if he uncovers serious misconduct that he believes warrants sanctions by the Court. The Monitor shall immediately contact the Court if he encounters interference with any such investigation, which shall, in itself, be subject to sanctions.

5

2. After the Monitor has determined whether he believes sanctions are warranted, he shall meet and confer with the parties.

    a. If the Monitor and the parties agree that no sanctions are appropriate, then the matter shall be deemed resolved.

    b. If the Monitor recommends no sanctions but Plaintiffs' counsel believes that sanctions are warranted, then Plaintiffs' counsel may file a motion with the Court that includes a statement that the Monitor has conducted an investigation and concluded that no sanctions are warranted.

    c. If the Monitor recommends sanctions, then the Monitor shall file a report and recommendation with this Court, including a statement as to whether the parties are in agreement with the recommended sanctions. Defendants shall ensure that any individual against whom sanctions are recommended receives a copy of the Monitor's report and recommendation within one business day. The parties and any individual against whom sanctions are recommended shall have fourteen days from the date of the Monitor's filing to file a response with the Court. The matter will then be deemed submitted on the papers unless the Court orders further proceedings. No sanctions will be imposed without a hearing unless the person against whom sanctions are recommended waives a hearing in writing.

At oral argument, Plaintiffs' counsel explained that they did not expect that bringing a request for sanctions would become a regular occurrence. The Court anticipates that this will remain true even though such requests are now to be brought before the Monitor in the first instance. If these requests become overly burdensome, the Court may reconsider the procedure set forth in this order.

**CONCLUSION**

In a policy adopted pursuant to the NSA, the Department itself recognizes that an officer who conceals his or her identity commits a Class I offense – the most serious level of misconduct – as does an officer who fails to report others who have committed Class I offenses. It is apparent in this case that Hargraves and Wong both committed such offenses

6

in violation of both departmental policy and the reforms mandated by this Court. As the Court hopes all employees of the Department are aware, individual acts of serious misconduct are of the utmost concern and will not be taken lightly. Court sanctions will be considered whenever appropriate, including in these two instances, and Plaintiffs' motion remains under submission. The Court will order an evidentiary hearing if it decides to pursue sanctions against Hargraves, Wong, or both.

**IT IS SO ORDERED.**

Dated: 01/27/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT