IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DELPHINE ALLEN, et al.,

                Plaintiffs,

v.

CITY OF OAKLAND, et al.,

                Defendants.

MASTER CASE FILE
NO. C00-4599 TEH

ORDER RE: COMPLIANCE DIRECTOR

Nearly ten years after the parties agreed to a consent decree that was to have been completed in five years but that remains incomplete, the Court was scheduled to hear Plaintiffs' motion to appoint a receiver. After reviewing Defendants' opposition to Plaintiffs' motion, it became clear that Defendants did not dispute many of the issues raised by Plaintiffs, including Plaintiffs' conclusion that Defendants would be unable to achieve compliance without further intervention by this Court. The Court ordered the parties to meet and confer to attempt to reach agreement on how this case should proceed and, following the parties' request, referred this case to a magistrate judge for settlement.

Magistrate Judge Nathanael Cousins held a series of in-person and telephonic settlement conferences that culminated in the filing of a jointly proposed order on December 5, 2012. The parties were able to reach an agreement for additional oversight by a Court appointee who will have directive authority over Defendants relevant to the Negotiated Settlement Agreement ("NSA") and Amended Memorandum of Understanding ("AMOU").[1] The Court now approves the parties' agreement as modified below and therefore VACATES the hearing scheduled for December 13, 2012.

---

[1] The NSA and AMOU were entered as orders of this Court on January 22, 2003, and June 27, 2011, respectively.

IT IS HEREBY ORDERED that:

**A.     Appointment of a Compliance Director**

1.     The Court will appoint a Compliance Director whose mission will be to bring Defendants into sustainable compliance with the NSA and AMOU. As the Court's agent, the Compliance Director will report directly to the Court and will not act as the agent of any party to this action or any other entity or individual.

2.     The Compliance Director will have the same rights and privileges as have already been agreed to and/or ordered with respect to the Monitor, including those relating to testifying in this or other matters, confidentiality, and access to information and personnel. Likewise, the Compliance Director shall not be retained by any current or future litigant or claimant in a claim or suit against the City and its employees.

3.     The parties will meet and confer and attempt to make a joint recommendation to the Court regarding the selection of the Compliance Director. If they are not able to agree, the parties will each recommend candidate(s) to the Court for consideration. The parties' recommendations, including descriptions of the candidates' qualifications for the position, shall be filed under seal on or before **December 21, 2012**. The selection of the Compliance Director rests solely within the Court's discretion, and the Court will not be limited to the parties' recommendations, whether separate or joint.

4.     The Compliance Director will be a full-time position based in Oakland for a minimum of one year and at least until Defendants have achieved full compliance with the NSA and AMOU. The Compliance Director will serve until this case is terminated or until otherwise ordered by the Court. Any party may petition the Court to remove the Compliance Director for good cause.

5.     The City will pay the costs of the Compliance Director and all costs related to the Compliance Director's work, including the cost of providing commensurate support services and office space. The Compliance Director's salary will be established by the Court upon appointment, and the Compliance Director will receive benefits commensurate with

comparable City officials, such as the City Administrator and Chief of Police.  The Court expects the City to reach a prompt compensation agreement with the Compliance Director upon appointment.  If an agreement or any payment is unduly delayed, the Court will order the City to pay the Compliance Director, as well as the Monitor, through the Court's registry.

6. The AMOU will remain in effect except to the extent it conflicts with this order.  This includes the requirement that a task will not be removed from active monitoring until Defendants have demonstrated substantial compliance for at least one year.

**B.**     **Role of the Monitor Upon Appointment of the Compliance Director**

1. The requirement in the January 24, 2012 order for consultation with the Monitor will terminate upon appointment of the Compliance Director.  However, Defendants will not implement any of the types of changes or actions identified in the January 24, 2012 order without the Compliance Director's direction or approval.

2. Unless otherwise ordered, the Monitor's duties and responsibilities will otherwise remain unchanged and will stay in effect until this case is terminated.  These duties include the continuation of the Monitor's quarterly reports, drafts of which will be provided simultaneously to the Compliance Director and the parties.

3. The Monitor and the City shall meet and confer concerning compensation to be paid to the Monitor for work performed after the current AMOU termination date of January 22, 2014.  If they cannot reach agreement, the matter will be resolved by the Court.  If any payment is unduly delayed, the Court will order the City to pay the Monitor, as well as the Compliance Director, through the Court's registry.

4. The Compliance Director and the Monitor will be independent positions that report only to the Court and not to each other.  However, the Court expects the Compliance Director and the Monitor to work closely and in consultation with each other.  Thus, for example, any technical assistance or informal advice provided by the Monitor to Defendants should include the Compliance Director whenever possible, and the Compliance Director should consult with the Monitor on all major decisions.

3

## C. Duties of the Compliance Director

1. Within 30 days of his or her appointment, the Compliance Director will file a remedial action plan ("Plan") that both addresses deficiencies that led to noncompliance and explains how the Plan will facilitate sustainable compliance with all outstanding tasks by December 2013 or as soon thereafter as possible. In developing the plan, the Compliance Director will consult with the Monitor, Plaintiffs, the Mayor, the City Administrator, the Chief of Police, and the Oakland Police Officers' Association ("OPOA"). The Compliance Director will work closely and communicate regularly with the Chief of Police, the Chief's staff, and other relevant City personnel to implement the Plan. The Plan will include:

   a. A proposed budget, to be included as part of the Oakland Police Department ("OPD") budget, that is mutually agreed to by the Compliance Director, the Mayor, the City Administrator, and the Chief of Police for the fiscal year based on proposed expenditures for task compliance.

   b. A plan for the oversight, acquisition, and implementation of a personnel assessment system ("IPAS") that provides a sustainable early-warning system that will mitigate risk by identifying problems and trends at an early stage. The Compliance Director will ensure that all parties are fully informed about both the procurement of new technology and how that technology will be used to identify problems and trends to ensure that officers are provided the requisite assistance at the earliest possible stage.

   c. Strategies to ensure that allegations made by citizens against the OPD are thoroughly and fairly investigated.

   d. Strategies to decrease the number of police misconduct complaints, claims, and lawsuits.

   e. Strategies to reduce the number of internal affairs investigations where improper findings are made. This includes strategies to ensure that investigators apply the correct burden of proof, as well as strategies to ensure that complaints are not disposed of as "unfounded" or "not sustained" when sufficient evidence exists to support that the alleged conduct did occur.

    f. A list of persons responsible for each outstanding task or specific action item. This requirement shall supersede the requirement for Defendants to file updated lists of persons responsible with the Court.

  The above list of requirements is not exhaustive. Likewise, the parties have agreed that tasks related to the following areas are key to driving the sustained cultural change envisioned by the parties when agreeing to the NSA and AMOU: collection of stop data, use of force, IPAS, sound management practices, and the quality of investigations by the Internal Affairs Division. These areas are covered by Tasks 5, 20, 24, 25, 26, 30, 34, 40, and 41. The Court agrees that the identified tasks are of utmost importance but, unless otherwise ordered, expects full and sustainable compliance with all NSA tasks.

  2. Within 60 days of his or her appointment, the Compliance Director will file a list of benchmarks for the OPD to address, resolve, and reduce: (1) incidents involving the unjustified use of force, including those involving the drawing and pointing of a firearm at a person or an officer-involved shooting; (2) incidents of racial profiling and bias-based policing; (3) citizen complaints; and (4) high-speed pursuits. In developing these benchmarks, the Compliance Director will consult with the Monitor, Plaintiffs, the Mayor, the City Administrator, the Chief of Police, the OPOA, and, as necessary, subject-matter experts to ensure that the benchmarks are consistent with generally accepted police practices and national law enforcement standards.

  3. Beginning on May 15, 2013, and by the 15th of each month thereafter, the Compliance Director will file a monthly status report that will include any substantive changes to the Plan, including changes to persons responsible for specific tasks or action items, and the reasons for those changes. The monthly status reports will also discuss progress toward achieving the benchmarks, reasons for any delayed progress, any corrective action taken by the Compliance Director to address inadequate progress, and any other matters deemed relevant by the Compliance Director. These monthly reports will take the place of Defendants' biweekly reports, which shall be discontinued after May 15, 2013.

4. Prior to filing any documents with the Court, the Compliance Director will give the parties an opportunity to determine whether any portions of the documents should be filed under seal. Requests to file documents under seal must be narrowly tailored and made in accordance with Civil Local Rule 79-5.

5. The Compliance Director may, at his or her sole discretion, develop a corrective action plan for any task for which the Monitor finds Defendants to be out of compliance. As part of any such plan, the Compliance Director will determine the nature and frequency of future internal compliance testing for that task.

6. The Compliance Director will have the power to review, investigate, and take corrective action regarding OPD policies, procedures, and practices that are related to the objectives of the NSA and AMOU, even if such policies, procedures, or practices do not fall squarely within any specific NSA task.

7. The Compliance Director will have the authority to direct specific actions by the City or OPD to attain or improve compliance levels, or remedy compliance errors, regarding all portions of the NSA and AMOU, including but not limited to: (1) changes to policies, the manual of rules, or standard operating procedures or practices; (2) personnel decisions, including but not limited to promotions; engagement of consultants; assignments; findings and disciplinary actions in misconduct cases and use-of-force reviews; the discipline or demotion of OPD officers holding the rank of Deputy Chief and Assistant Chief; and the discipline, demotion, or removal of the Chief of Police; (3) tactical initiatives that may have a direct or indirect impact on the NSA or AMOU; (4) procurement of equipment, including software, or other resources intended for the purpose of NSA and AMOU compliance; and (5) OPD programs or initiatives related to NSA tasks or objectives. The Compliance Director will have the authority to direct the City Administrator as it pertains to outstanding tasks and other issues related to compliance and the overall NSA and AMOU objectives. Unless otherwise ordered, the Compliance Director's exercise of authority will be limited by the following:

a. The Compliance Director will have expenditure authority up to and including $250,000 for expenditures included in the Plan. This is not a cumulative limit. For individual expenditures greater than $250,000, the Compliance Director must comply with public expenditure rules and regulations, including Oakland Municipal Code article I, chapter 2.04. The City Administrator will seek authorization of these expenditures under expedited public procurement processes. The Compliance Director may seek an order from this Court if he or she experiences unreasonable funding delays.

b. Members of OPD up to and including the rank of Captain will continue to be covered by the Meyers-Milias-Brown Act, the collective bargaining agreement, and OPOA members' rights to arbitrate and appeal disciplinary action. The Compliance Director will have no authority to abridge, modify, or rescind any portion of those rights for these members.

c. The Compliance Director will have no authority to rescind or otherwise modify working conditions referenced in the labor agreements between the City and the OPOA as those contracts relate to any member up to and including the rank of Captain. "Working conditions" include the rights identified in the above subparagraph, as well as salary, hours, fringe benefits, holidays, days off, etc.

d. Prior to removing the Chief of Police or disciplining or demoting the Chief of Police, an Assistant Chief, or a Deputy Chief, the Compliance Director will first provide written notice, including reasons for the intended action, to the parties and the affected individual and an opportunity for appeal to this Court. Where practicable, the Compliance Director will consult with the Mayor, the City Administrator, and the Chief of Police prior to providing such notice.[2] Within seven calendar days of the Compliance Director's written notice, the City, Plaintiffs, and the affected Chief, Assistant Chief, or Deputy Chief may oppose or support any such action, under applicable federal and state law, by filing a notice with the Court seeking an expedited briefing schedule and hearing. The affected Chief,

---

[2] Prior consultation may not always be practicable. For example, the Compliance Director will not be expected to consult with the Chief of Police on a decision to discipline, demote, or remove the Chief of Police.

7

Assistant Chief, or Deputy Chief will retain his or her employment and other rights pending the Court's decision.

    e. In all disputes between the City and the Compliance Director relating to this order, except for the demotion, discipline, and removal decisions covered in the preceding subparagraph, the Compliance Director will consult with the Mayor, the City Administrator, the Chief of Police, and Plaintiffs in hopes of reaching consensus. If, after such consultation, the City and the Compliance Director remain in disagreement, the Compliance Director will provide written notice to the parties of the dispute and the Compliance Director's proposed direction. Within seven calendar days of the Compliance Director's written notice, the City may file a notice with the Court seeking an expedited hearing to determine whether the City should be excused from complying with the Compliance Director's direction. The City will comply with any direction that is not timely brought before the Court. The City's right to seek relief from the Court must not be abused and should generally be limited to matters related to employee discipline or expenditures in excess of $250,000. At any hearing on a disputed issue, the City will bear the burden of persuading the Court that the City's failure to follow the Compliance Director's direction will not harm the City's compliance with the NSA or AMOU. Plaintiffs will be a party to any such hearing, and their counsel will be entitled to recover reasonable attorneys' fees and costs from Defendants, as set forth below in paragraph D.

### D.  Attorneys' Fees and Costs

  The parties shall meet and confer regarding reasonable attorneys' fees and costs relating to Plaintiffs' motion to appoint a receiver, any motion that may be filed pursuant to paragraphs A.4, B.7.d, or B.7.e of this order, and any work performed after January 22, 2014. Any disputes over attorneys' fees and costs that the parties cannot resolve independently will be submitted to Magistrate Judge Cousins. Nothing in this order alters the right of Plaintiffs' counsel to receive previously agreed upon or previously earned fees and costs under the AMOU.

8

### E.  Role of the OPOA

Unless otherwise ordered, the OPOA will retain its limited status in intervention until this case is terminated. The Compliance Director will meet no less than once per quarter with the president of the OPOA to discuss the perspective of rank-and-file police officers on compliance efforts.

### F.  Further Proceedings

The parties shall appear for a status conference on **June 6, 2013, at 10:00 AM**, to discuss Defendants' progress toward compliance. The parties and Intervenor OPOA shall file a joint status conference statement on or before **May 24, 2013**.

The Court is hopeful that the appointment of an independent Compliance Director with significant control over the OPD will succeed – where City and OPD leaders have failed – in helping OPD finally achieve compliance with the NSA and, in the process, become more reflective of contemporary standards for professional policing. If the remedy set forth in this order proves unsuccessful, and Defendants fail to make acceptable progress even under the direction of the person appointed pursuant to this order, the Court will institute proceedings to consider appropriate further remedies. Such remedies may include, but are not limited to, contempt, monetary sanctions, expansion of the Compliance Director's powers, or a full receivership.

**IT IS SO ORDERED.**

Dated:  12/12/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT