IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DELPHINE ALLEN, et al.,

              Plaintiffs,

v.

CITY OF OAKLAND, et al.,

              Defendants.

MASTER CASE FILE
NO. C00-4599 TEH

ORDER OF CLARIFICATION RE:
SCOPE OF COMPLIANCE
DIRECTOR'S AUTHORITY

     It has become apparent from the Compliance Director's early conversations with officials from Defendant City of Oakland that the City is attempting to limit unilaterally the scope of the Compliance Director's authority. The Court issues this order – which should be unnecessary – to clarify that its orders mean what they say.

     As was made clear in the Court's December 12, 2012 order establishing the Compliance Director position, the Compliance Director's authority is not limited to the tasks in the Negotiated Settlement Agreement ("NSA") that are not in compliance, nor even to all tasks in the NSA. As but one example, the City agreed, and the Court ordered, that the Compliance Director has the authority to address "[s]trategies to decrease the number of police misconduct complaints, claims, and lawsuits," although doing so is not required by any task in the NSA. Dec. 12, 2012 Order re: Compliance Director at 4; Dec. 5, 2012 Parties' Proposed Order at 7. Likewise, the City agreed, and the Court ordered, that the Compliance Director has authority over "tactical initiatives that may have a direct or indirect impact on the NSA and AMOU [Amended Memorandum of Understanding]." Dec. 12, 2012 Order at 6; Dec. 5, 2012 Proposed Order at 8. Most broadly, the City agreed that, "*[i]n addition to the specific tasks in the NSA and AMOU,* the Compliance Director will be empowered to review, investigate and/or take corrective action with regard to OPD [Oakland Police Department] policies, procedures and practices that are related to the objectives of the

NSA and the AMOU." Dec. 5, 2012 Proposed Order at 6 (emphasis added). Pursuant to that agreement, the Court ordered that: "The Compliance Director will have the power to review, investigate, and take corrective action regarding OPD policies, procedures, and practices that are related to the objectives of the NSA and AMOU, *even if such policies, procedures, or practices do not fall squarely within any specific NSA task*." Dec. 12, 2012 Order at 6 (emphasis added). The Compliance Director's powers are broad, and the City shall immediately cease its misguided efforts to constrict the Court's orders. Any City officials or personnel, without exception, who fail to do so will be subject to show cause hearings before this Court as to why sanctions should not be imposed against them.

In addition, the City appears to have increased its reliance on legal or contractual[1] arguments when dealing with the Compliance Director and Monitor, both of whom have expertise in the substantive issues in this case but neither of whom has been trained in the law. If the City continues to pursue this strategy, the Court may appoint legal counsel to assist the Compliance Director and/or Monitor in their discussions with the City. The fees of any counsel so appointed will be paid by the City.

**IT IS SO ORDERED.**

Dated: 04/10/13

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

---

[1] To avoid any ambiguity, the Court makes explicit that which should have been clear from the outset: The scope of the Monitor's work is governed by this Court and not by the Monitor's contract with the City. If the City contends that it cannot pay the Monitor for any work ordered or directed by this Court that may go beyond the contract, then the City shall immediately notify the Court so that the Court can arrange for payment of the Monitor's reasonable fees and expenses through the Court's registry.

2