UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELPHINE ALLEN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CITY OF OAKLAND, et al.,<br><br>　　　　Defendants. | Case No. 00-cv-04599-TEH<br><br>**ORDER RE: INVESTIGATOR'S REPORT ON ARBITRATIONS** |

On August 14, 2014, this Court ordered the Compliance Director to investigate issues relating to the manner in which the Oakland Police Department ("OPD") and the City of Oakland prepare discipline cases for arbitration. The Court subsequently appointed a Court Investigator to assist the Compliance Director with this investigation, and the Investigator filed his report on April 16, 2015.

The Court's order emanated from high-profile reversals at arbitration of the City's decisions to terminate two OPD officers. First, the City terminated the employment of Hector Jimenez after he shot and killed an unarmed civilian in July 2008. An arbitrator overturned that termination in 2011. Second, the City terminated the employment of Robert Roche after he threw a tear-gas grenade into a crowd of civilians attending to an injured Occupy Oakland protester in October 2011. An arbitrator overturned that termination last year. Although these are not the only two cases the City has lost at arbitration – in fact, the Investigator notes that the City's recommended discipline was modified or reversed in nine straight arbitrations prior to the Court's August 14, 2014 order, Report at 11 – they are the most high-profile ones in recent memory.

These incidents also go to the very heart of this case, filed fifteen years ago. As the January 2003 Negotiated Settlement Agreement ("NSA") makes clear, the goal in this litigation has always been to protect the public against police misconduct – including the

racial bias, excessive force, planting of evidence, and falsifying of reports alleged by Plaintiffs – and to ensure accountability whenever misconduct occurs:

> The parties join in entering into this Settlement Agreement . . . to promote police integrity and prevent conduct that deprives persons of the rights, privileges and immunities secured or protected by the Constitution or laws of the United States. The overall objective of this document is to provide for the expeditious implementation . . . of the best available practices and procedures for police management in the areas of supervision, training and accountability mechanisms, and to enhance the ability of the Oakland Police Department . . . to protect the lives, rights, dignity and property of the community it serves.

NSA at 1. Notably, the City is a named party in this case and a signatory to the NSA; thus, while the OPD is the primary focus of the NSA's reforms, the City as a whole bears ultimate responsibility.

As the Court explained when it ordered an investigation, there is no doubt that "there may be room for differences of opinion [in some discipline cases], and that not every disciplinary decision will be upheld at arbitration." Aug. 14, 2014 Order re: Internal Affairs Investigations & Subsequent Proceedings at 2. Nonetheless, given the City's track record, the Court "question[ed] whether Defendants are adequately preparing cases for arbitration such that consistency of discipline can be assured to the greatest extent possible." *Id.* As the Court also explained, "imposition of discipline is meaningless if it is not final. . . . Just like any failure to impose appropriate discipline by the Chief or City Administrator, any reversal of appropriate discipline at arbitration undermines the very objectives of the NSA." *Id.* at 1.

The Court Investigator's findings are both disappointing and shocking. After reviewing the report, it is difficult to reach any conclusion other than that the City has been indifferent, at best, to whether its disciplinary decisions are upheld at arbitration. Many of the Investigator's recommendations are obvious, or at least would be to anyone concerned with trying to improve the City's arbitration success rate. One might think that paying millions of dollars to settle civil lawsuits, and hundreds of thousands more in back pay and attorneys' fees to reinstated officers whose actions gave rise to those lawsuits, would give

pause to the City's leaders, or that the failure to preserve the City's disciplinary decisions would spur the Chief of Police, City Administrator, Mayor, City Attorney, and/or City Council to action. Yet this issue appears to have gotten little attention until this Court's August 14, 2014 order.

Some of the most problematic incidents in the Investigator's report occurred after the Court expressed concerns about the Jimenez case in 2011, at which time the City promised to give more attention to the issue and work to correct deficiencies. Those promises, if not empty, have certainly fallen short. Indeed, it does not appear that the City made any significant changes to the way it handled arbitration cases until after this Court ordered an investigation – or, if it did, the changes were utterly ineffective. Moreover, although the Investigator notes "significant and commendable improvements" since the Court's August 2014 order, he also presents many recommendations, some seemingly the most basic and all of which were made by City and Department employees, that the City has failed to implement. Report at 39. As the Investigator concludes, "The City understands what it needs to do to make police discipline work, but it has not previously demonstrated the will to do it." *Id.* at 40. It is problematic that the City required a court order to make any meaningful changes at all, and equally so that it failed to implement all of the necessary ones even after doing its own internal investigation.

Perhaps the City's attitude is one of "we did the best we can." But if the best the City can do is to select outside counsel for reasons other than subject-matter expertise and provide them with inadequate time to prepare a case for arbitration, to have a broken relationship between the Department and the City Attorney's Office, and to have no feedback loop for improvement after arbitration wins and losses, that is clearly insufficient. A poor arbitration success rate has repercussions for the Department's leadership, who might wonder why its decisions, which are approved by the City Administrator in most cases, are not upheld, as well as for the rank and file, who might perceive the discipline system to be a farce because officers have a high likelihood of overturning or significantly reducing discipline at arbitration. The City's shortcomings also have a significant impact

on the public, which can have no confidence that the discipline system works if discipline is regularly overturned at arbitration. More fundamentally, reinstating officers whom the City has determined should be terminated for unjustified uses of force – including, as in the Jimenez case, a fatal shooting – creates very serious public safety risks.

While the City has made much progress in the years following their agreement to the NSA reforms, the Court Investigator's report demonstrates that much more progress remains to be achieved – perhaps, most notably, the need for leaders at every level of the Department and the City, including the City Attorney's Office, to care about, and not just give lip service to, the importance of good policing and accountability. Failure to address these issues undermines the core objectives of the NSA and will prevent Defendants from coming into substantial compliance.

The City's responses to the Court Investigator's report make clear that this Court's August 14, 2014 order and the Investigator's report have gotten the attention of the Chief of Police, City Attorney, and Mayor. What is less clear is how long that attention will last, or whether the City has plans to institutionalize the reforms that they have already implemented and those that they promise to implement. The Court hopes that the City now recognizes the need for meaningful and sustainable change, but it cannot rely on promises alone. Indeed, the Court has heard many such promises before – including on this very issue more than three years ago – and it is troubling that the joint report from the City Attorney, Chief of Police, and City Administrator, attached as an exhibit to the Investigator's report, identified multiple reforms that were within the signatories' powers to implement but that remained mere recommendations rather than actions taken.

Accordingly, with good cause appearing, IT IS HEREBY ORDERED that Defendants shall work to eliminate the problems identified by the Court Investigator. They shall consult with the Compliance Director, who may, if necessary, invoke his power to take corrective action, including development of a corrective action plan that includes internal compliance testing. *See* Dec. 12, 2012 Order re: Compliance Director at 6. On or before **September 1, 2015**, Defendants shall file a progress report discussing specific

actions they have taken in response to this order and a timeline for any planned actions that have not been fully implemented.

The Court reiterates that its expectation is not that the City will prevail at every arbitration. However, as the Investigator's report makes abundantly clear, the City's approach to discipline is not based on the "best available practices and procedures for police management" the City agreed to implement more than twelve years ago. NSA at 1. To the contrary, there are many steps the Department and the City can take to improve the manner in which discipline cases are prepared both internally and for arbitration. It is difficult to imagine how, absent these steps, the goals of accountability and fair and consistent discipline – two of the foundations of the NSA – will ever be achieved.

**IT IS SO ORDERED.**

Dated: 04/20/15  _____
THELTON E. HENDERSON
United States District Judge