UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELPHINE ALLEN, et al.,<br>  Plaintiffs,<br>v.<br>CITY OF OAKLAND, et al.,<br>  Defendants. | Case No. 00-cv-04599-TEH<br><br>**ORDER MODIFYING MONITORING PLAN** |

This case began fifteen years ago, with the filing of several lawsuits alleging racial bias, excessive force, and other serious constitutional violations by Defendants City of Oakland, the Chief of Police of the Oakland Police Department ("OPD"), and several individual OPD officers. In January 2003, the parties agreed to the Negotiated Settlement Agreement ("NSA"), which included fifty-one tasks that were scheduled to be completed by September 1, 2005. Defendants failed to meet that agreed-upon deadline, and the NSA was extended three times, first under its own terms and subsequently by the parties' Memorandum of Understanding ("MOU") and Amended Memorandum of Understanding ("AMOU"), which were entered as orders of this Court on November 24, 2009, and June 27, 2011, respectively.

While Defendants made significant progress under these agreements, their inability to achieve compliance with several of the NSA's most critical provisions prompted Plaintiffs to file a motion to appoint a receiver in 2012. The Court ordered the parties to engage in settlement discussions after Defendants opposed the motion but acknowledged the need for further intervention by this Court. Those discussions resulted in the jointly proposed appointment of a Compliance Director, an unprecedented position giving directive authority over the City's police force. The parties agreed that the Compliance Director would have authority not just over the specific tasks set forth in the NSA, but also

over "policies, procedures, and practices that are related to the objectives of the NSA and AMOU, even if such policies, procedures, or practices do not fall squarely within any specific NSA task." Dec. 12, 2012 Order re: Compliance Director at 6.

The appointment of a Compliance Director did not change the Monitor's duty to evaluate and report on the status of the City's compliance with the NSA. The Monitor's most recent report – the twenty-first report by the second monitoring team – found the City in compliance with all but three of the fifty-one NSA tasks. Despite such progress, however, fundamental issues remain. The Court Investigator's report concerning the discipline process provides the most recent and stark example. As the Court has already noted, the shortcomings identified by the Investigator severely undermine consistency of discipline and accountability, both of which are fundamental principles behind the NSA. Similarly, Defendants' efforts to curb bias-based policing, which gave rise to many of the original complaints in this case, continue to be a work in progress.

It also remains unclear whether the City can sustain the reforms it has achieved thus far. Indeed, some of the NSA tasks have only been in compliance for a short time, and some have gone in and out of compliance over the past several years. As this Court has repeatedly stated, compliance must be sustainable before this case can end. This requires a one-year period of demonstrated substantial compliance, as agreed to by the parties in their MOU and AMOU, as well as evidence that reforms have become so institutionalized that the absence of oversight will not result in a return to practices that fail to protect constitutional rights.

The Court has consulted with the Monitor and Compliance Director about how to more effectively help Defendants attain sustainable compliance. With good cause appearing, IT IS HEREBY ORDERED that:

1. The Monitor will provide more contemporaneous reporting of actively monitored tasks by filing monthly reports on or before the 10th of each month. The first such report will be filed on or before **July 10, 2015**, and will be based on compliance data from May 2015.

2.     Pursuant to the parties' agreement regarding a one-year substantial compliance period, tasks that have been in compliance for at least one consecutive year shall no longer be subject to active monitoring.

(a)     The tasks that have not achieved this milestone, and that therefore remain actively monitored at this time, are: Task 5 (Complaint Procedures for the Internal Affairs Division; in partial compliance); Task 20 (Span of Control for Supervisors; in compliance for three quarters); Task 26 (Force Review Board; in compliance for three quarters); Task 30 (Executive Force Review Board; in compliance for three quarters); Task 34 (Vehicle Stops, Field Investigation, and Detentions; in partial compliance); Task 41 (Use of PAS; in compliance for two quarters); and Task 45 (Consistency of Discipline Policy; in partial compliance).

(b)     Because the change from quarterly to monthly reporting will result in no monitoring for January through April 2015, some adjustment to the substantial compliance period is required for those tasks that have been found in compliance but not for the requisite one year. Tasks 20, 26, and 30 have been in compliance for three quarters – i.e., nine months – and need only three additional months of compliance to have been in compliance for a one-year period. These three tasks will therefore be removed from active monitoring if they are found in compliance for May, June, and July 2015. Similarly, Task 41, which has been in compliance for two quarters, or six months, will be removed from active monitoring if it is found in compliance for the next six months, namely, May through October 2015.

3.     To ensure continued compliance with all aspects of the NSA, the Monitor may choose to examine tasks that are no longer being actively monitored. The Monitor will consider the input of the parties and the Compliance Director when determining which, if any, tasks to monitor under this provision each month, but the final determination shall rest with the Monitor. Any task found to be in partial or non-compliance shall be returned to active monitoring the following month.

4. The Monitor will provide increased technical assistance to help Defendants achieve sustainable compliance with NSA tasks and address, in a sustainable manner, the strategies and benchmark areas included in the Court's December 12, 2012 Order re: Compliance Director and the shortcomings identified in the Court Investigator's April 16, 2015 report. The Monitor will also help Defendants institutionalize an internal system of monitoring by the Office of Inspector General or other City or Department entity, along with internal mechanisms for corrective action.

5. The duties and responsibilities of the Monitor and Compliance Director otherwise remain unchanged.

**IT IS SO ORDERED.**

Dated:  05/21/15  _____
THELTON E. HENDERSON
United States District Judge