# CITY OF OAKLAND

ONE FRANK H. OGAWA PLAZA 6ᵀᴴ FLOOR • OAKLAND, CALIFORNIA 94612

Office of the City Attorney  
Barbara J. Parker  
City Attorney

(510) 238-3601  
FAX: (510) 238-6500  
TTY: (510) 238-3254

August 14, 2019

## *DELPHINE ALLEN v. CITY OF OAKLAND*, et al.

## PROGRESS REPORT NO. 14

The Court ordered that the City provide quarterly Progress Reports, beginning on December 31, 2015.  This report addresses:  1) the City's police-related arbitration decisions; 2) the Department's progress in updating its policies generally (based on the Court Investigator's April 2015 recommendation); 3) the Department's progress in creating a comprehensive Internal Affairs manual.

### I.   Arbitration Decisions Since November 2018 Progress Report

There were no arbitrations of police-officer discipline from March 2019 to the present.

### II.   Implementation of April 2015 Recommendations

In April of 2015, the Court Investigator recommended that OPD work to ensure that its polices do not undermine the discipline process.  This is the only recommendation from that report that the Department is still working on.  Of course, updating polices to enhance accountability and community trust is not something the City can or ever would consider "complete" as has been the case with the other 18 recommendations from the Court Investigator's 2015 report.  Updating its polices is an ongoing priority, and the Department continues to utilize a multistep review process that involves Plaintiffs' counsel, the City Attorney's Office, the Independent Monitoring Team, and, when applicable, the civilian Police Commission and the City Council.[1]

---

[1] *See* The Charter of the City Oakland, Article VI, Section 604(b)(5), empowering the Commission to "Approve or reject the Department's proposed changes to all policies, procedures, customs, and General Orders of the Department which govern use of force, use of force review boards, profiling based on any of the protected characteristics identified by federal, state, or local law, or First Amendment assemblies, or which contain elements expressly listed in federal court orders or federal court settlements which pertain to the Department and are in effect at the time this Charter Section 604 takes effect for so long as such federal court orders and settlement remain in effect."

Since March 2019, for example, the Department and the Police Commission have worked closely together to improve several policies, including General Order R-02, which governs how officers interact with individuals who may be on parole and probation. After months of extensive work, the Department and the Police Commission agreed on a number of fundamental policy changes that will limit the frequency with which officers search individuals who are on parole and probation. In addition, the Police Commission felt strongly that the policy should address: 1) the dangers of asking someone at the outset of a contact whether the person is on probation or parole; and 2) the dangers of reliance on second-hand or outdated verification of someone's parole and probation status. On July 9, 2019, the City Council approved a new policy that addresses the Commissions' specific concerns as well as the joint concerns of the joint concerns of both the Police Commission and the Department.

As described in more detail in the City's case management statement, filed alongside this Progress Report, the Police Commission and the Department have also worked closely to enhance key policies on reporting uses of force. Specifically, they have endeavored to clarify that officer must report when they point their firearm.

To the extent the Department has and continues to updates its policies, and to the extent the Department will continue to discuss many of those updates in future case-management statements, the City will no longer include this recommendation in future progress reports.

### III.     Implementation of March 2016 Recommendations

The only recommendation remaining from the Court Investigator's March 2016 report involves capturing institutional memory within IAD through the development of a comprehensive IAD manual.[2] As previously reported, an initial draft of an IAD Manual was completed and underwent an in-depth review process by IAD, the Monitoring Team and the City Attorney's Office.

IAD, OPD's Research and Planning Unit and the City Attorney's office are still awaiting a California Supreme Court decision regarding the application of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Pitchess v. Superior Court*, 11 Cal.3d 531 (1974) which will likely alter how IAD handles police personnel files in civil and criminal proceedings. *See Association for Los Angeles Deputy Sheriffs v. Superior Court*, 13 Cal.App.5[th] 413 (2017).

///

---

[2] IAD has written policies and procedures governing its various responsibilities (complaints, investigations, findings, *Pitchess*, etc.), all of which have been adopted or improved during the pendency of the NSA, and which still are in effect. The Manual is meant to update and consolidate those policies into a single, comprehensive document.

*DELPHINE ALLEN v. CITY OF OAKLAND*, et al. – **PROGRESS REPORT NO. 14**
August 14, 2019
PAGE 3

///

///

<span style="margin-left:2em">Projected Time Frame for Completion and Submission to City's Police Commission</span>: The completion of the IAD manual awaits the California Supreme Court's decision in *Association for Los Angeles Deputy Sheriffs v. Superior Court,* and review by the Oakland Police Commission.

Ryan G. Richardson / for Barbara J. Parker
City Attorney

Anne Kirkpatrick
Chief of Police

2823193v1