BARBARA J. PARKER, City Attorney, SBN 069722
MARIA BEE, Chief Assistant City Attorney, SBN 167716
RYAN G. RICHARDSON, Special Counsel, SBN 223548
DAVID A. PEREDA, Special Counsel, SBN 237982
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-6520
Email:  DPereda@@oaklandcityattorney.org
(Doc. Id. No. 22829686)

Attorneys for CITY OF OAKLAND

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DELPHINE ALLEN, et al.,      ) | No. 00-cv-04599 WHO |
|          Plaintiffs,   ) | |
| vs.           ) | **CITY OF OAKLAND'S** |
|           ) | **SUPPLEMENTAL CASE** |
| CITY OF OAKLAND, et al.,    ) | **MANAGEMENT STATEMENT** |
|           ) | |
|         Defendants.   ) | Date: August 21, 2019 |
|           ) | Time: 3:30 p.m. |
|           ) | Place: Dept. 2 – 17th Floor |
|           ) |       450 Golden Gate Ave. |
|           ) |       San Francisco, CA 94102 |
|           ) | |
| _____ ) | The Hon. William H. Orrick |

The City respectfully submits this Supplemental Statement concerning the IMT's *63rd Report*, which was filed on Monday night.  Dkt. No. 1309 (Aug. 19, 2019).  The report covers three tasks—Tasks 24, 25, and 41—over two site visits in June 2019 and July 2019.

**TASKS 24 AND 25**

As to Tasks 24 and 25, the *63rd Report* discusses OIG's *Special Report,* Dkt. No. 1303-1, and the IMT's review of 53 force reports.  Dkt. No. 1309, *63rd Report* (Aug. 19, 2019).

First, the Department is committed to finding and fixing areas that have room for improvement.  Force reporting is an example.  In March 2018, OIG began raising concerns about force reporting, including with the IMT.  As a result, OIG assessed the decline in firearm-pointing incidents and published its findings in its *2018 3rd Quarterly Progress Report*.  The Department then performed a more global use of force audit and prepared the *Special Report*, as a follow-up to the firearm pointing review.  The Department has an effective checks-and-balances system in the OIG.

Second, the *63rd Report* notes that "in many instances, OPD personnel displayed notable restraint despite assaultive conduct, resistance, or verbal abuse from persons with whom they had contact."  *Id.* at 3.

Third, there was substantial compliance with the subtasks.  *Id.* at 6-10 (**Task 24.1**—"in all but two [of 53 cases] . . . notifications were made as required"; **Tasks 24.2 and 24.3**—officers reported pointing their firearms in all 44 incidents reviewed; **Task 24.4**—"supervisors responded to the scene as required in all instances"; **Task 24.5**—the IMT will address this task when the IMT reviews Tasks 26 and 30; **Tasks 24.6**—"in all 53 [cases] [the IMT] reviewed, the data was entered as required"; **Task 25.1**—the IMT found full compliance; **Task 25.2**—the IMT "confirmed with the OPD that it continues to require and deliver [the required] training"; **Task 25.3**—the report says, "we did not find any instance where we believe the force used was not pursuant to a

1   legitimate law enforcement objective, was inappropriate or excessive, or where the use

2   of force was not deescalated or stopped reasonably when resistance decreased," well as

3   focuses on the need for verbal explanations (discussed below); **Task 24.5**—"in all of the

4   cases [the IMT] reviewed, the reports were reviewed as required"; **Task 25.6**—the

5   IMT is assessing the task elsewhere).

6       As to Subtask 25.3, the IMT found that that in many cases, better

7   communication might "result in a reduction in the need to use force." *Id.* at 3.  The

8   Department has industry-leading Procedural Justice training that it provides to its

9   own officers and to other agencies' officers.  Also, in assessing this issue, the IMT did

10   not have an opportunity to speak with the officers themselves to better understand

11   their communication strategies under the specific circumstances they faced.  The

12   Department looks forward to further discussing this issue with the IMT.

13       Fourth, the IMT found that in "one of 53 cases [the IMT] reviewed, OPD failed

14   to activate their [body-cameras] during the use of force."  *Id.* at 4.  In four other cases,

15   footage was not provided to the IMT, but it is unclear whether the Department simply

16   missed this footage while gathering the voluminous materials it sent to the IMT.  *Id.*

17       Lastly, the City seeks clarity as to the report's concluding remarks.  *Id.* at 16-

18   17.  For instance, the report states that the "City and OPD leadership continue to

19   struggle with using the specific stipulations of the NSA to increase the Department's

20   capacity to identify problems—and, most importantly, to implement solutions."  *Id.* at

21   16.  Yet the report identifies no specific examples or otherwise explains this statement.

22       As another example, the report says that OIG's "analysis of analysis of force

23   reporting and PDRD policy violations includes the finding that squads with the

24   highest rates of problems also had the highest number of officers in monitoring and

25   intervention under the risk management process."  *Id.* at 17.  But OIG focused only on

26   monitoring and intervention for four squads (out of approximately 50 squads), so the

27   report's conclusion is unclear to the City.  Also, the City notes that the Department

28

holds robust risk management meetings and that no one process can identify every single issue.

And as a last example, the report says that the Department is not getting to core cultural concerns. *Id.* at 17. At the same time, the report itself notes officers' professionalism. *Id.* at 3. Further, as set forth in the City's statement, the City's continuing progress is evident, including in its stop-data work, its messaging and retraining concerning force reporting, its parole/probation-search policy, and in many other ways. *See* Dkt. Nos. 1266 and 1303; *see also United States v. Gaines*, CR 18-00621 YGR, Transcript of Proceedings, at 40 (N.D. Cal. July 18, 2019)(Court remarking about OPD officers that "I watched hours of that video because I have presided over civil rights cases in this courtroom where officers, frankly, didn't really do their job. But on that day in this case in general, other than the one comment that [redacted] found, I saw officers on the streets hearing and listening to abuse, to the cussing, to the verbal attacks without rising to the bait. They stood there and they just took it. And they did their job. Men and woman in uniform working with a family who wanted to have a public vigil for the tragic loss of a loved member of that community.").

## TASK 41

The City remains in compliance with Task 41. Dkt. No. 1309, at 15, *63rd Report* (Aug. 19, 2019).

Respectfully submitted,

Dated: August 21, 2019   BARBARA J. PARKER, City Attorney
            DAVID A. PEREDA, Special Counsel


       By:   /s/ David Pereda
            Attorneys for
            CITY OF OAKLAND

SUPPLEMENTAL STATEMENT (C 00-04599 WHO)

3