BARBARA J. PARKER, City Attorney, SBN 069722
RYAN G. RICHARDSON, Special Counsel, SBN 223548
DAVID A. PEREDA, Special Counsel, SBN 237982
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-6520
Email:  DPereda@oaklandcityattorney.org
(Doc. Id. No. 2880657)

Attorneys for CITY OF OAKLAND

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DELPHINE ALLEN, et al., )<br>)<br>           Plaintiffs, )<br>)<br>vs. )<br>)<br>)<br>CITY OF OAKLAND, et al., )<br>)<br>           Defendants. )<br>)<br>)<br>)<br>)<br>)<br>)<br>_____ ) | No. 00-cv-04599 WHO<br><br>**CITY OF OAKLAND'S RESPONSE TO INDEPENDENT MONITOR'S SIXTY-FIFTH REPORT** |

RESPONSE TO SIXTY-FIFTH REPORT (C 00-04599 WHO)

The City thanks the Independent Monitor for the *Sixty-Fifth Report* on Tasks 24, 25, 26, and 30.  Dkt. No. 1347, *65th Report* (Dec. 19, 2019).  After carefully reviewing the report, the City respectfully submits the following response.

## TASK 26—FORCE REVIEW BOARDS

The Department convenes Force Review Boards to critically review the use of Level 2 force, hold its officers accountable, and enhance its policies and practices.  *See OPD General Order K-4.1* (Dec. 15, 2016).  Since 2014, the Department has been in compliance with Task 26.  *See 57th Report*, Dkt. No. 1219, at 5 (Nov. 2, 2018)(discussing the City's compliance history).  Over the past five years, the IMT has observed over 60 FRBs, and over 95% percent of the time, the IMT agreed with the Boards' findings on whether force was used within policy.  At least once before, the Board and the IMT have reached different conclusions.  *Id.*  Overall, though, the IMT has "consistently found review boards to be detailed and thorough."  *Id.*

Most recently, the IMT reviewed six FRBs that were held this year.  Dkt. No. 1347, *65th Report*, at 12 (Dec. 19, 2019).  The IMT disagreed with one of the Board's findings in one case.  *Id.*  As for that case, the IMT wrote that it "agreed with all of the Board's concerns regarding scene supervision and the need to use force at the time it was used, and we were quite frankly surprised that they voted the force in compliance with little deliberation."  *Id.* at 13.

To begin with, the Department has made clear that it strongly prefers different tactics in the subject scenario.  To that end, the Board and Chief Kirkpatrick agreed that the scene supervisor should receive discipline for not exercising better control and not making better tactical plans.  Further, the Board ordered the supervisor's Captain and Lieutenant to assess the training he needs to improve in those areas.

In addition, the Board ordered the Department's Training Division to review its Crisis Intervention Team curriculum to make sure that the Department is following the best practices for interacting with people who are experiencing mental health

RESPONSE TO SIXTY-FIFTH REPORT (C 00-04599 WHO)

1

crises. The Board also ordered the Training Division to assess whether one of its subject matter experts in this field should continue to serve in that role.

The City believes that all this demonstrates that the Board followed a "detailed and thorough" FRB process. The Board carefully reviewed all the relevant records, video footage, and policies. Over two sessions, the Board scrutinized this evidence, heard from four subject matter experts, and had meaningful exchanges with each other and the IMT. The Board then wrote a detailed, 33-page report with recommendations on discipline, training, and policy.

The FRB report makes plain that there were pointed and probing deliberations. The Board immediately saw the need for accountability and for a better approach. At the same time, the Board recognized that the question of whether the use of force itself failed to comply with the law and the Department's policy and training was a separate issue.

On that question, the Board and Chief Kirkpatrick each deliberated extensively. Chief Kirkpatrick, for instance, asked two respected outside subject matter experts on force—one a retired chief and the other a leading expert in the state—to review the policy and body camera footage. Both experts found that the use of force complied with the law and Department policy.

This case prompted the Department to evaluate changes to both policy and training. As a result, the Department may now propose revisions. During the FRB, though, the Board considered and interpreted existing policy.

In sum, two things are true: the process was searching, and reasonable minds differ on one of the Board's findings. The Board's conclusions are supported by specific Ninth Circuit cases, policies, training, and evidence. And the Department did not shy away from handing down discipline it expects to uphold.

Given all this, combined with the Department's strong compliance history on this task, the City seeks guidance on the compliance metric that applies. Task 26

RESPONSE TO SIXTY-FIFTH REPORT (C 00-04599 WHO)

2

nowhere sets forth a mandate that the Board and the IMT agree on every finding in every case. Yet taking the City out of compliance based on a disagreement over one finding may suggest such a standard. Even though the City aims to hit that mark, reasonable minds will sometimes differ, and that test is not workable.

## TASKS 24 AND 25—FORCE REPORTING

The IMT reviewed 55 cases involving the use of Level 3 or Level 4 force. *Id.* at 2. The report notes that African Americans made up 52% of the population against whom those types of force were used. *Id.* at 3. Those disparities remain deeply troubling to the City's leaders, and reducing them is at the heart of the Department's investment in VISION, its data analysis, its revised recruitment practices, collaborative policy revisions, and the City's ongoing work with Stanford.

The report also notes that in no case was the use of force "inappropriate or excessive." *Id.*

As for force reporting—which is the focus of the IMT's review of Tasks 24 and 25—the report recognizes that "OPD has now taken numerous steps to address the proper reporting of use of force and the concerns that have been identified." *Id.* at 5. With new force-reporting training and directives, the Department is capturing far more Level 3 and Level 4 uses of force. *Id.* at 4. And those increases, the IMT notes, "do not appear to signal a rise in the actual use of force." *Id.* at 5.

The report shows that during the review period, the Department was in 100% compliance with subtasks 24.1, 24.4, 24.6, 25.1, and 25.2 (the IMT did not review subtask 25.6). Further, the IMT reviewed 74 instances in which an officer pointed a firearm, and 100% of the time, the pointing was appropriately reported.

Lastly, the report raises concerns about failed or late body-camera activations and about boilerplate language in force reports. *Id.* at 4. As noted in the IMT's report, the Department is working to correct both issues. *Id.*

RESPONSE TO SIXTY-FIFTH REPORT (C 00-04599 WHO)

**TASK 30—EXECUTIVE FORCE REVIEW BOARDS**

The IMT has found that 17 of the past 18 EFRBs complied with the NSA. *See JCMS*, Dkt. No. 1240, at 16-17 (March 22, 2019). The report notes that there has been no EFRB in 2019. Dkt. No. 1347, *65th Report*, at 15 (Dec. 19, 2019). The City remains committed to holding independent and rigorous review boards. To that end, the City has requested to have a non-voting outside observer participate in EFRBs. The City would like to work with the IMT to implement this procedure.

**CONCLUSION**

The City looks forward to continue working with the IMT and the parties.

Respectfully submitted,

Dated: December 24, 2019    BARBARA J. PARKER, City Attorney
DAVID A. PEREDA, Special Counsel

By:    /s/ David Pereda
Attorneys for
CITY OF OAKLAND

RESPONSE TO SIXTY-FIFTH REPORT (C 00-04599 WHO)

4