UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

## CIVIL MINUTES

| **Date:** May 27, 2020 | **Time:** 1 hr., 35 mins 3:30 p.m. to 5:05 p.m. | **Judge:** WILLIAM H. ORRICK |
|---|---|---|
| **Case No.:** 00-cv-04599-WHO | **Case Name:** Allen, et al v. City of Oakland, et al | |

**Attorneys for Plaintiff:** John Burris and James Chanin
**Attorneys for Defendant:** Brigid Martin and David Pereda
**Attorney for Intervenor:** Rockne Anthony Lucia Jr.

Additional participants who addressed the Court:
Mayor Libby Schaaf
Interim Chief Susan Manheimer
Assistant Chief Darren Allison
Deputy Chief Leronne Armstrong
Captain Wilson Lau
Deputy Director Virginia Gleason
Oakland Chief Information Officer Andrew Peterson

**Deputy Clerk:** Jean Davis         **Court Reporter:** Katherine Sullivan

## PROCEEDINGS

Case Management Conference conducted via videoconference.

The Court's continued focus is on the issue that represents the through-line and remains at the core of this case – racial disparities. Of particular current concerns are the disparities in stops, use of force, and in discipline as noted in the Hillard Heintze OPD Discipline Disparity Report.

Interim Chief Manheimer was asked to address the Hillard Heintze Report and describe the concrete steps that the Oakland Police Department is taking to deal with the deficiencies and disparities identified in the Report. The Court is pleased to hear that a team – led by Darlene Flynn of the City of Oakland's Department of Race and Equity, along with Dr. Eberhardt, Acting Deputy Chief Drennon Lindsey, and representatives of the Oakland Police Officers' Association and the Oakland Black Officers' Association – will be evaluating and hopefully implementing the recommendations of the Report. The Court expects to hear about the concrete steps the Department has taken to address and eliminate disparities in discipline at the next Status Conference.

Assistant Chief Darren Allison was asked to address newer officers' needs for mentorship as well as whether and why the Department's Risk Management process may be seen as more punitive than corrective by newer officers.  Assistant Chief Allison acknowledged that more needs to be done to formalize the officers' mentorship and to convey that Risk Management processes are meant to help correct and improve officer performance and adherence to policy (as well as to improve the policies and directive themselves) in addition to identify outliers and potential bad actors.  He also addressed the recent OIG findings regarding delays or failures to activate body worn cameras by officers and the delays or failures of Sergeants to review that video, noting that all involved personnel had been individually re-trained and that all officers have received guidance about the importance and purpose of activating the body worn cameras and the necessity for prompt review of  the video by supervisors.

Deputy Chief Leronne Armstrong was asked to address the still-significant racial disparities in stops.  He acknowledged that the Department has made improvements – including significant reductions in the overall numbers of stops without compromising public safety – and that the Department was working to further reduce racial disparities in stops through intelligence-led stops and beat-integrity measures.

Deputy Director Virginia Gleason and Andrew (Pete) Peterson were asked about the status of VISION, which has been repeatedly promised as "coming soon" but has not yet been fully activated.  Deputy Director Gleason explained that the project had been moving forward and the final push would be assisted with the imminent hiring of the Data Manager for the Department.  Mr. Peterson explained the project was on track for completion in mid-June.  The Court expressed its expectation that by the next Status Conference, VISION would not only be fully functional, but the Department would have had a few months of operational data and use on which to report.  The Court expects to hear from Mr. Peterson about this at the next Status Conference.

Captain Wilson Lau was asked about IAD's noncompliance with the NSA's deadlines for investigations and the clearance of the backlog.  He explained the progress being made as well as the utility the VISION system would provide in helping ensure that investigations were efficiently and timely completed.

The Court then heard from Mayor Libby Schaaf and Deputy City Attorney Brigid Martin about the efforts underway in the Department and in City government to more generally to address racial disparities and satisfy the remaining NSA tasks.

Finally, the Court heard briefly from plaintiffs' counsel James Chanin and John Burris, as well as OPOA counsel Rockne Anthony Lucia Jr.

In closing, the Court reiterated that there was no doubt that the leadership in the City and in the Department are people of good will who intend to move the City towards full compliance with the NSA, but that it is results that matter, and those results will only come with the strong leadership of every City and OPD official, from the top down.

**Further Status Conference set for September 22, 2020 at 3:30 p.m.**