UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELPHINE ALLEN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY OF OAKLAND, et al.,<br><br>    Defendants. | Case No. 00-cv-04599-WHO<br><br>**ORDER REGARDING REFERRAL IN CASE NO. 20-CV-05843-JSC** |

Plaintiff in *Kirkpatrick v. City of Oakland, California*, Case No. 20-CV-05843-JSC, filed a motion to compel compliance with subpoenas seeking production of documents from a third party in support of her wrongful termination case against the City of Oakland. The recipient of the subpoenas at issue is Chief Robert A. Warshaw, the Monitor and Compliance Director appointed by this Court in this case as its agent to oversee the City of Oakland's implementation of and compliance with Negotiated Settlement Agreement (NSA) and its subsequent modifications entered in this case.[1] The Hon. Jacqueline Scott Corley, who is handling *Kirkpatrick v. City of Oakland,* referred this matter to me because orders dating back to 2011 mandate that the Monitor/Compliance Director "not testify and/or respond to subpoenas or documents in other matters relating to the City and OPD, except as authorized by the Court." May 21, 2021 Order Re: Motion To Compel Non-Party Robert Warshaw To Respond To Subpoenas Document, Case No. 20-cv-05843, Dkt. No. 43 (citing Case No. 00-cv-04599 Dkt. No. 620 at ¶¶ 8, 17; *see also* Dkt. No. 37-1, Ex. E at ¶¶ 8, 17).

On June 9, 2021, plaintiff Kirkpatrick filed a motion in this case seeking an order

---

[1] The subpoenas directed to Chief Warshaw and his related entities (Warshaw & Associates and Police Performance Solutions, LLC) seek a broad array of documents on numerous topics. *See* Exhibits A-C, Dkt. No. 37-1 in Case. No. 20-cv-05843.

authorizing the Monitor/Compliance Director and his related entities to respond to plaintiff's subpoenas. Dkt. No. 1450. Having reviewed that motion, as well as the briefing submitted in the underlying case, I find this matter appropriate for resolution without oral argument and VACATE the July 14, 2021 hearing. Because of the important legal and policy considerations that I discuss below – the exact considerations that underlie the protections specifically provided in the NSA through the AMOU and its subsequent modifications to Chief Warshaw and members of the Monitoring Team – and for the following reasons, I DENY authorization and direct Chief Warshaw and his associated entities to not respond to the subpoenas and DENY plaintiff's motion.

There are a number of legal principles and policy considerations that underlie the Court's protection of the Monitor/Compliance Director from being compelled to testify in or respond to subpoenas issued in other matters. Court-appointed special masters like the Monitor/Compliance Director here "assume[] the duties and obligations of a judicial officer" when appointed, *In re Gilbert*, 276 U.S. 6, 9 (1928), and act as a "surrogate[]" of the court. *Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 995 (9th Cir. 2003) (quoting *Louisiana v. Mississippi*, 466 U.S. 921, 921 (1984)). Accordingly, just as quasi-judicial immunity applies to special masters appointed under Federal Rule of Civil Procedure 53, *Atkinson-Baker & Assocs., Inc. v. Kolts*, 7 F.3d 1452, 1454-55 (9th Cir. 1993), the Monitor/Compliance Director is also protected by quasi-judicial immunity. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436 (1993) (explaining that "[w]hen judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges – that is, because they, too, exercise a discretionary judgment as a part of their function." (Citation, internal quotations, and alterations omitted)).

The internal discussions amongst the Monitor/Compliance Director and his team and between the Monitor/Compliance Director and the Court are also protected by the deliberative process privilege.[2] Protecting the internal discussions amongst the Monitoring Team members, as

---

[2] That privilege "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Department of Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 8 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S.132, 150 (1975)). It "was developed to promote frank and independent discussion among those responsible for making governmental decisions, *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87 [] (1973), and also to protect

well as those between Monitor/Compliance Director, the Team, and this Court is critical to ensure that the Monitor/Compliance Director can carry out his court-appointed tasks. Given the broad array of tasks I have appointed Chief Warshaw to perform – by specific *agreement* of the parties to the NSA and its subsequent amendments, but also by order of this Court as necessary to move Oakland towards compliance with the agreed-to NSA tasks – Chief Warshaw's court-mandated duties extend beyond mere monitoring and reporting to the Court to advising the Oakland Police Department (as well as the Mayor and City Administrator) on compliance with the NSA and its amendments as well as approving specific contracts and personnel determinations by the Department. In order to effectively perform the court-mandated tasks, it is critical that the Monitor/Compliance Director is able to have full and frank internal deliberations with his Team and with the Court.

Finally, it bears emphasizing that in the ordinary course litigants must seek discovery from the parties to the action before burdening third parties with requests for the same information. *See, e.g., Genus Lifesciences Inc. v. Lannett Co., Inc*., 18-CV-07603-WHO, 2019 WL 7313047, at *4 (N.D. Cal. Dec. 30, 2019) (quashing subpoena issued to non-party for undue burden where requesting party had not shown it sought and could not secure documents from a party). Chief Warshaw is not a defendant in the underlying action and as a third party – in addition to the protections discussed above – is protected from the undue burden of unnecessarily responding to subpoenas where a party has another readily available source for the discovery sought.

I turn now to the subpoenas themselves, which, broadly speaking, seek production of every document created by the Monitor/Compliance Director in carrying out his court-directed duties.[3]

---

against premature disclosure of proposed agency policies or decisions." *F.T.C. v. Warner Communications Inc*., 742 F.2d 1156, 1161 (9th Cir. 1984) (internal citations omitted); *see also NLRB*, 421 U.S. at 150-51. Depending on the nature of the communications, the deliberative process privilege may also apply to communications between the Monitor/Compliance Director and third parties. *See Rojas v. Federal Aviation Administration*, 989 F.3d 666, 675 (9th Cir. 2021) (holding that the deliberative process privilege may apply to documents generated by a consultant where "the consultant acted in a capacity functionally equivalent to that of an agency employee in creating the document or documents the agency seeks to withhold").

[3] *See, e.g*., Request No. 3 (Exhibits A-C, Dkt. No. 37-1 in Case. No. 20-cv-05843) (seeking "ALL DOCUMENTS created between January 1, 2016 and January 1, 2021 RELATED TO OR REFERRING TO YOUR assessment of the CITY's compliance with the terms of the

Functionally, they seek four different categories of documents: (1) documents capturing the communications the Monitor/Compliance Director and his Team had with the City; (2) public records and other publicly available documents;[4] (3) documents capturing internal deliberations and discussions among the Monitor/Compliance Director and members of his Team;[5] and (4) documents capturing communications the Monitor/Compliance Director had with other third-parties.[6]

The documents covered by Category 1, communications the Monitor/Compliance Director had with anyone at the City, are being produced by the City. *See* Dkt. No. 39 in Case No. 20-cv-05843. The Monitor/Compliance Director has not objected to production by the City of documents in the City's possession capturing those communications. The documents covered by Category 2 are public documents available to plaintiff in the underlying action. There is no showing on this record to justify requiring a response from third-party Chief Warshaw to subpoenas seeking these categories of documents that are readily available through other sources.[7]

---

NEGOTIATED SETTLEMENT AGREEMENT. Please include in your response ALL drafts, memoranda, notes, or other materials related to the Oakland Police Department's performance with respect to compliance with the terms of the NEGOTIATED SETTLEMENT AGREEMENT."); Request No. 10 ("ALL DOCUMENTS AND COMMUNICATIONS RELATED TO the PAWLIK INVESTIGATIONS. . . . [I]nclude in YOUR response all drafts, memoranda, notes, . . . ."); Request No. 11 ("ALL DOCUMENTS AND COMMUNICATIONS RELATED TO the Oakland Black Officers' Association's concerns RELATED TO diversity in recruitment within the Oakland Police Department presented to PLAINTIFF in October 2018.").

[4] *See, e.g.*, Request No. 14 ("ALL reports and draft reports regarding THE CITY'S compliance with the NEGOTIATED SETTLEMENT AGREEMENT created on or after January 1, 2016."); Request No. 15 ("ALL transcripts of hearings CONCERNING the NEGOTIATED SETTLEMENT AGREEMENT held since January 1, 2016.").

[5] *Compare, e.g.,* Request No. 4. (seeking "ALL DOCUMENTS AND COMMUNICATIONS RELATED TO THE CITY'S decision to terminate PLAINTIFF'S employment."); *with* Request No. 5 ("ALL DOCUMENTS AND COMMUNICATIONS between YOU and CITY OFFICIALS regarding PLAINTIFF, PLAINTIFF'S employment performance, and THE CITY'S decision to terminate PLAINTIFF'S employment."). The former seeks evidence of communications the Monitor/Compliance Director had internally or with third parties and the latter seeks evidence of communications the Monitor/Compliance Director had with the defendant City of Oakland.

[6] *See, e.g.*, Request No. 12 ("ALL COMMUNICATIONS by or between YOU and any CITY OFFICIAL or any third party that REFER or RELATE TO PLAINTIFF.").

[7] This is particularly true given the policy considerations that generally result in court-appointed individuals in Chief Warshaw's and his Team's positions being protected from responding to subpoenas or providing testimony in other matters.

4

1     Documents covered by Categories 3 and 4 are different; these categories seek
2  documentation of internal deliberations and internal communications between the
3  Monitor/Compliance Director and his Team, as well as communications he and members of his
4  Team may have had with third parties in the course of carrying out their court-imposed duties.
5  Documents capturing internal deliberations and communications are protected from disclosure
6  given the Monitor/Compliance Director's quasi-judicial immunity and the deliberative process
7  privilege.  The Monitor/Compliance Director must be able to freely discuss and deliberate on all
8  matters relating the City and Oakland Police Department's performance and ongoing efforts and
9  initiatives to bring the City into compliance with the NSA and its amendments and related orders
10 from this Court without the specter of being compelled to be a third-party witness to others'
11 litigation absent exceptional circumstances.  Communications with third parties may be covered
12 by the same privilege, depending on the identity of the third party and the nature of the
13 communication.  Even if not protected, such communications would be relevant to the instant
14 litigation only if they or their content were subsequently provided to the City, in which case they
15 would presumably be included among documents the City is producing.
16    No extraordinary circumstances here justify a modification of the Court's previous orders
17 to require Chief Warshaw, as a third-party witness, to produce the documents sought by the
18 subpoenas.  Chief Warshaw is not a defendant in the underlying action.  There are no allegations
19 that Chief Warshaw was a decision-maker on any of the acts taken by the City or its officials that
20 underlie the claims in the underlying action.  The plaintiff in the underlying action will receive
21 from the City any documents and evidence of any communications between Chief Warshaw and
22 his Team that are relevant to the underlying action, and plaintiff may secure the publicly available
23 documents through normal channels.
24    Therefore, I DENY authorization and direct that Chief Warshaw and his entities shall not
25 respond to the subpoenas directed to them in the underlying case.  This denial, however, is without
26 prejudice to a further application by plaintiff in the underlying action.  After seeking discovery
27 through the other channels that are available, plaintiff may apply for a further referral from Judge
28 Corley to me.  That application must be based on identified, exceptional circumstances and a

showing of need to seek centrally-relevant documents directly from Chief Warshaw that are unavailable through other means, including party discovery, the need for which could outweigh the legal and policy considerations underlying the protections generally provided to those in Chief Warshaw's court-appointed positions. Judge Corley may determine whether that showing has been made to her, and if so, refer the matter to me for my final resolution.[8]

**IT IS SO ORDERED.**

Dated: June 10, 2021



William H. Orrick
United States District Judge

---

[8] To be clear, this Order concerns only the subpoenas seeking production of documents. This Order does not address any subpoena seeking testimony from Chief Warshaw or any member of his Team. Any such subpoena would also raise significant concerns. *See Coleman v. Schwarzenegger*, C 01-1351TEH, 2007 WL 4276554, at *1 (E.D. Cal. Nov. 29, 2007) (quashing deposition subpoena directed at court-appointed prison receiver, and noting that receiver's reports "speak for themselves, and any testimony about the reports, as well as testimony about or the production of underlying documents considered by the Receiver in his preparation of the reports, would impermissibly intrude on the Receiver's mental processes"); *see also Gary W. v. Louisiana*, 861 F.2d 1366 (5th Cir. 1988) (quashing a subpoena issued to a court-appointed special master who prepared a report on incidents of abuse and neglect as an "examination of [the special master's] mental processes in making that recommendation would have been inappropriate").