June 2, 2025

# Tenth NSA Sustainability Period Report
## *of the* Independent Monitor
## *for the* Oakland Police Department

## Introduction

This is the tenth report of the Monitoring Team issued during the Negotiated Settlement Agreement (NSA) sustainability period in the case of *Delphine Allen, et al., vs. City of Oakland, et al.,* in the United States District Court for the Northern District of California under the direction of Judge William H. Orrick.

The City and the Oakland Police Department (OPD) have been in the sustainability period since May 2022.  This period was initially slated to last for one year; however, the Court has extended the sustainability period.  Following the last Case Management Conference, in an Order entered on September 6, 2024, the Court noted, "The failure of leadership demonstrated by the defendants requires immediate correction."  Among other directives, the Court ordered the Department to "restructure the organizational chart" so that the Internal Affairs Bureau (IAB) is headed by a Deputy Chief who reports directly to the Chief of Police; and that Department and City leaders, along with a representative of the Monitoring Team, meet every two weeks to discuss significant developments related to IAB investigations and timeliness.

As with our site visits before the sustainability period, we report to the Court on a quarterly basis; we conduct quarterly site visits; our site visits include both compliance assessments and technical assistance.  We also meet with Department and City officials to receive updates on OPD's compliance with the NSA Tasks; observe the Department's Risk Management Meetings; review and discuss the status of several Departmental policies; and share our observations of misconduct investigations and, as circumstances may dictate, use of force reports.

This report covers NSA Tasks 2, 5, and 45.

Case 3:00-cv-04599-WHO   Document 1698   Filed 06/03/25   Page 2 of 12

Tenth NSA Sustainability Period Report of the Independent Monitor for the Oakland Police Department
June 2, 2025
Page 2 of 12

## *Task Assessments*

## Task 2: Timeliness Standards and Compliance with IAD Investigations

### Requirements:

*Fairness to complainants, members/employees and the public requires that internal investigations be completed in a timely fashion.*

1. *On or before December 1, 2003, OPD shall develop policies regarding timeliness standards for the completion of Internal Affairs investigations, administrative findings and recommended discipline.*

2. *Compliance with these timeliness standards shall be regularly monitored by IAD command and the Department's command staff. If IAD experiences an unusual proliferation of cases and/or workload, IAD staffing shall be increased to maintain timeliness standards.*

(Negotiated Settlement Agreement III. B.)

### Relevant Policy:

OPD most recently revised Departmental General Order M-03, *Complaints Against Department Personnel and Procedures*, on December 22, 2017.

### Commentary:

**Task 2.1** requires that internal investigations (IAD and Division Level) – including review, approval, findings, and discipline – be completed in accordance with the timeliness standards developed by OPD. To assess this subtask, we requested a list of all internal investigations resulting in formal findings (unfounded, sustained, exonerated, or not sustained) that were approved in October, November, and December 2024. Using the list, we segregated the cases into Class I or Class II categories. If a case involved at least one alleged Class I violation, we classified it as Class I.

At least 85% of Class I misconduct investigations and at least 85% of Class II misconduct investigations must be completed within 180 days to be considered timely. Per DGO M-03, Class I offenses "are the most serious allegations of misconduct and, if sustained, shall result in disciplinary action up to and including dismissal and may serve as the basis for criminal prosecution." Class II offenses include "all minor misconduct offenses."

Case 3:00-cv-04599-WHO   Document 1698   Filed 06/03/25   Page 3 of 12

Tenth NSA Sustainability Period Report of the Independent Monitor for the Oakland Police Department
June 2, 2025
Page 3 of 12

For the purposes of this assessment, we calculated the number of days between the complaint receipt date and the approval date. The complaint date is the date on which the Department first becomes aware of a complaint – whether it is lodged by a community member or internally generated. We removed from the denominator cases that were delayed due to tolling (held in abeyance in accordance with one of the provisions of Government Code Section 3304) or cases in which the Department asserted that its failure to meet the 180-day timeliness requirement resulted from delays in the Community Police Review Agency (CPRA) completing its concurrent investigations.

Of the 43 applicable Class I cases we reviewed for this assessment, 36, or 84%, were in compliance with established timelines. One of the noncompliant Class I cases was completed within 182 days, only two days after the 180-day deadline passed. If we were to count that case as also compliant, 86% of Class I cases for this time period would be in compliance.

During our last review of Task 2, we found 87% of Class I cases in compliance with established timelines. Of the 96 applicable Class II cases we reviewed for this assessment, 87, or 91%, were in compliance with established timelines. During our last review of Task 2, we found 98% of Class II cases in compliance with established timelines.

During the last reporting period, the Department also failed to meet Government Code Section 3304 in one case. The case, which was also investigated by the CPRA, an officer was sustained for Conduct Toward Others-Demeanor for making an inappropriate comment to a community member. While the Chief approved a written reprimand for the misconduct, there was a failure to complete the process prior to the 3304 expiration date. Accordingly, the officer was not disciplined for the sustained finding.

For the second consecutive reporting period, during this reporting period, the Department failed to meet Government Code Section 3304 in one case. While the case was technically a CPRA case, CPRA eventually considered it "unable to fully investigate." According to the documentation provided by OPD, a communication breakdown within IAB led to a delay of more than 15 months to close the case. While ultimately, there were no sustained findings in this case, a delay of this magnitude is inexcusable; and IAB command should have followed up on the case long before the delay was discovered.

In another case, also investigated concurrently by CPRA, an officer was sustained for Use of Force (a Class I violation) for making threatening remarks during the mental health hold of an uncooperative man who had assaulted his father. While this case was approved at the weekly Chief's meeting before the 3304 expiration date, a significant, unexplainable administrative delay of over three months by IAB in processing the discipline paperwork for the case resulted in no discipline for the subject officer.

Both of these cases represented major oversights by IAB command, and we find this to be a serious issue.

Case 3:00-cv-04599-WHO    Document 1698    Filed 06/03/25    Page 4 of 12

Tenth NSA Sustainability Period Report of the Independent Monitor for the Oakland Police Department
June 2, 2025
Page 4 of 12

Per DGO M-03, "In cases with a sustained finding, the discipline recommendation process shall be completed within 30 calendar days of the sustained finding." We reviewed all 11 cases including a total of 21 sustained findings that were approved in October, November, and December 2024; five cases involved multiple sustained findings. We found all (100%) of the 11 cases in compliance with established discipline timelines.

OPD is not in compliance with Task 2.1. The Department has requested a meeting to discuss its concerns related to this Task; we look forward to meeting with Department officials and the Plaintiffs' attorneys on this matter.

**Task 2.2** requires that IAD and OPD command staff regularly monitor compliance with these timeliness standards. The primary responsibility for monitoring compliance with timeliness standards rests with IAD, whether investigations are conducted by IAD personnel or via Division-level investigation. As part of this monitoring, the IAD Commander discusses pending deadlines for key open investigations during IAD's weekly meetings with the Chief; the deadlines are also reflected in written agendas for these meetings. A Monitoring Team representative regularly attends these meetings. IAD also occasionally, as needed, emails individual reminders on cases approaching due dates to investigators and their supervisors. The Department is in compliance with Task 2.2.

**Task 2.3** requires that if IAD experiences an unusual proliferation of cases and/or workload, IAD staffing be increased to maintain timeliness standards. We routinely request and receive updates on IAD staffing levels during and between our site visits.

| **Task 2 compliance status** | Not in compliance |
|---|---|

Case 3:00-cv-04599-WHO   Document 1698   Filed 06/03/25   Page 5 of 12

Tenth NSA Sustainability Period Report of the Independent Monitor for the Oakland Police Department
June 2, 2025
Page 5 of 12

## Task 5:  Complaint Procedures for IAD

**Requirements:**

1. *On or before December 1, 2003, OPD shall develop a policy so that, OPD personnel who become aware that a citizen wishes to file a complaint shall bring such citizen immediately, or as soon as circumstances permit, to a supervisor or IAD or summon a supervisor to the scene.  If there is a delay of greater than three (3) hours, the reason for such delay shall be documented by the person receiving the complaint.  In the event that such a complainant refuses to travel to a supervisor or to wait for one, the member/employee involved shall make all reasonable attempts to obtain identification, including address and phone number, as well as a description of the allegedly wrongful conduct and offending personnel, from the complainant and any witnesses.  This information, as well as a description of the complaint, shall immediately, or as soon as circumstances permit, be documented on a Complaint Form and submitted to the immediate supervisor or, in his/her absence, the appropriate Area Commander, and shall be treated as a complaint.  The supervisor or appropriate Area Commander notified of the complaint shall ensure the Communications Division is notified and forward any pertinent documents to the IAD.*

2. *An on-duty supervisor shall respond to take a complaint received from a jail inmate taken into custody by OPD, who wishes to make a complaint of Class I misconduct contemporaneous with the arrest.  The supervisor shall ensure the Communications Division is notified and forward any pertinent documents to the IAD.  All other misconduct complaints by a jail inmate shall be handled in the same manner as other civilian complaints.*

3. *In each complaint investigation, OPD shall consider all relevant evidence, including circumstantial, direct and physical evidence, and make credibility determinations, if feasible.  OPD shall make efforts to resolve, by reference to physical evidence, and/or use of follow-up interviews and other objective indicators, inconsistent statements among witnesses.*

4. *OPD shall develop provisions for the permanent retention of all notes, generated and/or received by OPD personnel in the case file.*

5. *OPD shall resolve each allegation in a complaint investigation using the "preponderance of the evidence" standard.  Each allegation shall be resolved by making one of the following dispositions:  Unfounded, Sustained, Exonerated, Not Sustained, or Administrative Closure.  The Department shall use the following criteria for determining the appropriate disposition:*

    a. *Unfounded:  The investigation disclosed sufficient evidence to determine that the alleged conduct did not occur.  This finding shall also apply when individuals named in the complaint were not involved in the alleged act.*

    b.    *Sustained: The investigation disclosed sufficient evidence to determine that the alleged conduct did occur and was in violation of law and/or Oakland Police Department rules, regulations, or policies.*

    c.    *Exonerated: The investigation disclosed sufficient evidence to determine that the alleged conduct did occur, but was in accord with law and with all Oakland Police Department rules, regulations, or policies.*

    d.    *Not Sustained: The investigation did not disclose sufficient evidence to determine whether or not the alleged conduct occurred.*

    e.    *Administrative Closure: The investigation indicates a service complaint, not involving an MOR violation, was resolved without conducting an internal investigation; OR*

    f.    *To conclude an internal investigation when it has been determined that the investigation cannot proceed to a normal investigative conclusion due to circumstances to include but not limited to the following:*

        1)    *Complainant wishes to withdraw the complaint and the IAD Commander has determined there is no further reason to continue the investigation and to ensure Departmental policy and procedure has been followed;*

        2)    *Complaint lacks specificity and complainant refuses or is unable to provide further clarification necessary to investigate the complaint;*

        3)    *Subject not employed by OPD at the time of the incident; or*

        4)    *If the subject is no longer employed by OPD, the IAD Commander shall determine whether an internal investigation shall be conducted.*

        5)    *Complainant fails to articulate an act or failure to act, that, if true, would be an MOR violation; or*

        6)    *Complaints limited to California Vehicle Code citations and resulting tows, where there is no allegation of misconduct, shall be referred to the appropriate competent authorities (i.e., Traffic Court and Tow Hearing Officer).*

    g.    *Administrative Closures shall be approved by the IAD Commander and entered in the IAD Complaint Database.*

6.    *The disposition category of "Filed" is hereby redefined and shall be included under Administrative Dispositions as follows:*

    a.    *An investigation that cannot be presently completed. A filed investigation is not a final disposition, but an indication that a case is pending further developments that will allow completion of the investigation.*

Case 3:00-cv-04599-WHO    Document 1698    Filed 06/03/25    Page 7 of 12

Tenth NSA Sustainability Period Report of the Independent Monitor for the Oakland Police Department
June 2, 2025
Page 7 of 12

> b. *The IAD Commander shall review all filed cases quarterly to determine whether the conditions that prevented investigation and final disposition have changed and may direct the closure or continuation of the investigation.*
>
> 7. *Any member or employee who is a subject of an internal investigation, as well as any other member or employee on the scene of an incident at which misconduct has been alleged by a complainant, shall be interviewed and a recorded statement taken.  However, investigators, with the approval of an IAD Commander, are not required to interview and/or take a recorded statement from a member or employee who is the subject of a complaint or was on the scene of the incident when additional information, beyond that already provided by the existing set of facts and/or documentation, is not necessary to reach appropriate findings and conclusions.*

(Negotiated Settlement Agreement III. E.)

### Relevant Policy:

There are six Departmental policies that incorporate the requirements of Task 5:  Department General Order M-03, *Complaints Against Department Personnel and Procedures* (revised most recently on December 22, 2017); Communications Division Policy & Procedures C-02, *Receiving and Logging Complaints Against Personnel and Use of Force Incidents* (revised most recently on December 7, 2009); Training Bulletin V-T.1, *Internal Investigation Procedure Manual* (revised most recently on November 30, 2023); Special Order 8270, *Booking of Prisoners at the Glenn E. Dyer Detention Facility* (published June 24, 2005); Special Order 8565, *Complaints Against Department Personnel* (published May 11, 2007); and IAD Policy & Procedures Manual 21-01, *IAD General Operating Procedures* (published August 17, 2021).  In addition, NSA stipulations issued on December 12, 2005 and March 13, 2007 incorporate the requirements of this Task.

### Commentary:

Task 5 consists of several subtasks, briefly described below.  Based on OPD's compliance history with many of the subtasks, not all are being actively monitored at this time.

**Task 5.1** requires that when a citizen wishes to file a complaint, the citizen is brought to a supervisor or IAD, or a supervisor is summoned to the scene.  **Task 5.2** requires that if there is a delay of greater than three hours in supervisory response, the reason for the delay must be documented.  **Task 5.3** requires that where a complainant refuses to travel to a supervisor, or wait for one, personnel make all reasonable attempts to obtain specific information to assist in investigating the complaint.  **Task 5.4** requires that specific information be documented on a complaint form and submitted to the immediate supervisor or, in his/her absence, the appropriate Area Commander.  **Task 5.5** requires that the supervisor or Area Commander notify Communications and forward any pertinent documents to IAD.

Tenth NSA Sustainability Period Report of the Independent Monitor for the Oakland Police Department
June 2, 2025
Page 8 of 12

To assess compliance with Tasks 5.1 through 5.5, we reviewed the Daily Incident Logs (DILs) prepared by the Communications Division and forwarded to IAD each business day.  The DIL form has been modified several times during our tenure to elicit "forced responses" that gather all of the information required to evaluate compliance with these Tasks.  These modifications have significantly enhanced OPD's ability to document compliance by properly filling out and distributing the logs, and compliance rates with these subtasks have been near 100% for several years.  Consequently, we no longer actively assess OPD's compliance with these subtasks, but we continue to receive both the DILs and Daily Complaint Referral Logs (used to document when Information Business Cards [IBCs] are provided to citizens in lieu of a complaint forms).  We spot-check these forms regularly to verify that the quality of their completion has not diminished.  OPD remains in compliance with Tasks 5.1 through and including Task 5.5.

**Task 5.6** requires that an on-duty supervisor respond to take a complaint received from a jail inmate taken into custody by OPD, who wishes to make a complaint of Class I misconduct contemporaneous with the arrest of the inmate.  We have not actively monitored this subtask since December 2014, though we have reviewed cases applicable to this requirement in several reports since that time.

**Task 5.12** requires that the Watch Commander ensure that any complaints that are applicable to Task 5.6 are delivered to and logged with IAD.  Under current policy, the Communications Division must record on the DILs complaints that are received and/or handled by on-duty supervisors, and the DILs are forwarded daily to IAD.

OPD remains in compliance with Tasks 5.6 and 5.12.

**Task 5.15** through **Task 5.19**, and **Task 5.21,** collectively address the quality of completed IAD investigations, and therefore remain the subject of our focused Task assessments.  To assess compliance with these Tasks, we reviewed a sample of 12 IAD cases that were closed between October 1 and December 31, 2024.

Our sample of cases consisted of investigations completed by investigators assigned to IAD, and Division-level investigations (DLIs).  It also included cases that were resolved via summary finding.  (Summary findings are investigations in which the Department believes a proper conclusion can be determined based on a review of existing documentation with limited or no additional interviews and follow-up.)

Together, **Tasks 5.15** and **Task 5.16** require that OPD: gathers all relevant evidence; conducts follow-up interviews where warranted; adequately considers the evidence gathered; makes credibility assessments where feasible; and resolves inconsistent statements.

In all of the cases we reviewed, we believe that OPD gathered all relevant evidence available.  As we have often found, in many of the cases video and/or audio recordings proved to be a significant factor in allowing OPD to reach an appropriate conclusion.

Investigators conducted follow-up interviews in one of the cases we reviewed, and attempted to do so without success in a second.  We concur that follow-up interviews were not necessary in the remaining 10 cases.

Case 3:00-cv-04599-WHO   Document 1698   Filed 06/03/25   Page 9 of 12

Tenth NSA Sustainability Period Report of the Independent Monitor for the Oakland Police Department
June 2, 2025
Page 9 of 12

OPD made credibility assessments for all involved parties in seven of the 12 cases. In five of the cases approved for summary finding, credibility assessments were not conducted. Per policy, investigators are not required to assess the credibility of the involved officers and civilian employees in these instances. In two cases, the complainants were deemed not credible; and documentation and review of body-worn camera (BWC) footage supported the not credible finding. In one case, a subject officer was deemed not credible based on the evidence identified during the investigation.

In nine of the 12 cases we reviewed, OPD resolved inconsistent statements. In all nine cases, BWC recordings or other recordings were available and assisted in the determination. Three cases resulted in findings of not sustained. Not sustained is an acceptable finding; and by definition, it implies that inconsistencies were not resolved despite investigative efforts.

**Task 5.17** requires that OPD permanently retain all notes generated and/or received by OPD personnel in the case file. OPD personnel document the presence of investigative notes within a particular file by completing an Investigative Notes Declaration Form. OPD has a sustained history of 100% compliance with this subtask.

**Task 5.18** requires that OPD resolve each allegation in a complaint investigation using the preponderance of the evidence standard. **Task 5.19** requires that each allegation of a complaint is identified and resolved with one of the following dispositions: unfounded; sustained; exonerated; not sustained; or administrative closure. Our sample of 12 cases contained 26 allegations that received dispositions as follows: 11 exonerated; six not sustained; two unfounded; and seven sustained. We did not disagree with any of the findings in the cases we reviewed.

**Task 5.20** requires that the IAD Commander review all "filed" cases quarterly to determine whether the conditions that prevented investigation and final disposition have changed. A filed case is defined as an investigation that cannot be presently completed and is pending further developments that will allow completion of the investigation; filed is not a final disposition. Traditionally, as part of our review of this Task, we also reviewed cases that are tolling. OPD defines a tolled case as an administrative investigation that has been held in abeyance in accordance with one of the provisions of Government Code Section 3304. While we are no longer actively assessing this subtask, we note that filed and tolling cases are reviewed with the Chief or his designee during the weekly IAD meetings and are listed by case number on the printed meeting agendas. We receive and review these agendas regularly, and a Monitoring Team member regularly attends these meetings.

**Task 5.21** requires that any member or employee who is a subject of an internal investigation, as well as any other member or employee on the scene of an incident at which misconduct has been alleged by a complainant, shall be interviewed and a recorded statement taken. However, with the approval of the IAD Commander or his designee, investigators are not required to interview and/or take a recorded statement in all cases. For example, interviews are not needed from a member or employee who is the subject of a complaint, or who was on the scene of the incident when additional information – beyond that already provided by the existing set of facts and/or documentation – is not necessary to reach appropriate findings and conclusions. Five of the 12 cases we reviewed were resolved via summary finding, and each case was appropriately approved for such closure.

Case 3:00-cv-04599-WHO   Document 1698   Filed 06/03/25   Page 10 of 12

Tenth NSA Sustainability Period Report of the Independent Monitor for the Oakland Police Department
June 2, 2025
Page 10 of 12

As we have reviewed closed cases for the third and fourth quarter of 2024, we have identified some concerns with IAB's use of unfounded and exonerated findings. We have found cases with these findings to be compliant because the findings are consistent with the most recent approved direction from the Department determining these findings. We raised our concerns with OPD during our last site visit, and OPD shares our concerns and has begun working on a reassessment. We will discuss this further with the Department during our upcoming site visit.

The Internal Affairs Bureau continues to be in a transition stage, following the Court's Order of September 6, 2024. We hope that the Department remedies matters that we believe hinder the Department's efforts to be compliant with this Task.

| **Task 5 compliance status** | Not in compliance |
|---|---|

## Task 45: Consistency of Discipline Policy

**Requirements:**

*On or before October 6, 2003, OPD shall revise and update its disciplinary policy to ensure that discipline is imposed in a fair and consistent manner.*

1. *The policy shall describe the circumstances in which disciplinary action is appropriate and those in which Division-level corrective action is appropriate.*

2. *The policy shall establish a centralized system for documenting and tracking all forms of discipline and corrective action, whether imposed centrally or at the Division level.*

3. *All internal investigations which result in a sustained finding shall be submitted to the Discipline Officer for a disciplinary recommendation. The Discipline Officer shall convene a meeting with the Deputy Chief or designee in the affected chain-of-command for a confidential discussion of the misconduct, including the mitigating and aggravating factors and the member/employee's overall performance.*

4. *The COP may direct the Discipline Officer to prepare a Discipline Recommendation without convening a Discipline Conference.*

(Negotiated Settlement Agreement X. B.)

**Relevant Policy:**

Five Departmental policies incorporate the requirements of Task 45: Departmental General Order M-03, *Complaints Against Department Personnel and Procedures* (revised most recently on December 22, 2017); Training Bulletin V-T.1 and V-T.2, *Internal Investigation Procedure Manual* (revised most recently on November 30, 2023); IAD Policy & Procedures Manual 21-01, *IAD General Operating Procedures* (published August 17, 2021); and Training Bulletin V-T, *Departmental Discipline Policy* (revised most recently on December 11, 2017).

**Commentary:**

OPD has taken several steps to achieve compliance with this Task and ensure that "discipline is imposed in a fair and consistent manner." As noted previously, Department policy now calls for the annual collection and analysis of discipline disparity data, and the Department has undertaken multiple reviews of disciplinary data over the last few years to address this requirement. While earlier reviews found that Black officers were more likely than white officers to be sustained for misconduct in Division-level investigations, or that Black officers were sustained at higher rates for Failure to Accept or Refer Complaints (Unintentional), the most recently completed analysis (using 2023 data) did not identify statistically significant disparities in outcomes or discipline of non-white sworn members. The analysis of 2024 data is currently underway, and we look forward to learning more about the findings of this review during our upcoming site visit.

In addition, for the second time, OPD will soon administer an anonymous survey to all sworn and non-sworn members of the Department "to assess changes in employee perceptions regarding fairness, transparency, consistency and understanding of the internal investigation and disciplinary process." The survey elicits such information on how employees feel they are treated during the investigative process; whether they believe that the processes are fair; whether various factors (including gender, race, rank, and favoritism) can influence findings and discipline; and more. We and the Plaintiffs' attorneys reviewed the survey instrument and believe that the survey, once complete, will provide important information to Department leadership about how employees view the investigative and discipline processes.

Following our upcoming site visit, we will convene a meeting of the Department and the Plaintiffs' attorneys to have a singularly focused discussion regarding OPD's initiatives related to this Task. While OPD has made progress with Task 45, recent metrics that the Department displayed during our most recent site visit give pause for concern.

| **Task 45 compliance status** | Partial compliance |
|---|---|

Case 3:00-cv-04599-WHO     Document 1698     Filed 06/03/25     Page 12 of 12

Tenth NSA Sustainability Period Report of the Independent Monitor for the Oakland Police Department
June 2, 2025
Page 12 of 12

## Conclusion

The Court's September 6, 2024 Order noted, "[T]he Court can no longer tolerate the lack of integrity, consistency, and transparency with which Internal Affairs has operated.  The resolve and attention of the new Chief is required to put the Department back on the path to sustainability of the NSA."  The Order required the Department to establish a new Deputy Chief of Internal Affairs Bureau position to oversee IAB; this Deputy Chief reports directly to the Chief of Police.  The Order also required the Department to hold twice-monthly briefings with all of the required attendees from City leadership (and a representative of the Monitoring Team).  During these meetings, IAB personnel provide updates on pending cases, including those in which there are parallel criminal investigations.

IAB and the Department have begun to take initiative to address the issues that remain concerning at this late stage.  The Department has authorized additional staffing for IAB.  IAB command now holds meetings every other week with Community Police Review Agency (CPRA) personnel to discuss progress on investigations that are being conducted concurrently.  IAB command has taken steps to more effectively track and reduce the backlog of cases in which individuals are awaiting *Skelly* hearings.  There also appears to be some recent improvements in communication between IAB and the Criminal Investigation Division on cases where there are indications of possible criminal conduct.  Also, as we noted in Task 5, IAB is addressing our concerns with IAB's use of unfounded and exonerated findings.  In addition, following a high-profile investigation in which an officer was found to have committed perjury and bribed a witness, the Department identified several breakdowns in policy, training, and practice that contributed to the serious misconduct by the officer and several others, at several levels, within the Department.  OPD – in collaboration with us, the Plaintiffs' attorneys, and other stakeholders – has begun drafting new policies and training curricula to respond to the failures it identified.

We look forward to hearing more about these initiatives during our upcoming site visit.

*Robert S. Warshaw*

Chief (Ret.) Robert S. Warshaw
*Monitor*