# Coalition for Police Accountability



July 3, 2025

Dear Judge Orrick,

The court has asked the parties for forward-looking solutions to enable the Oakland Police Department to come into sustainable compliance with the Negotiated Settlement Agreement. The Coalition for Police Accountability requested permission to offer comments because of our concern that the Police Commission attempted to respond without addressing, or even acknowledging, the reality of the current obstacles.

The first step to overcoming the challenges and retrenchment is to honestly assess the situation and then discuss how to address them. We will attempt to do so here, based on our observations and the reports we hear from community members.

<u>Culture Shift Within OPD Undermines Reform and Oversight</u>
We are witnessing a concerning shift in the messaging from the police department leadership, often closely paralleling the messaging from the police unions. Although we only hear the public statements, we hear from community members that OPD officers are quoting the chief in discussions with residents. The police chief has stated publicly that officers are so afraid of being disciplined that they are unwilling to perform their jobs; it is a position that is most unusual for the boss who is responsible for ensuring that his subordinates perform successfully. There is a repeated message that reform and the police commission are hindering police operations. This is coupled with the Police Chief routinely reacting to discussions about making sure that discipline is effective and equitable by only expressing concern that "mistakes" that can ruin an officer's career, while using low-level examples like discourtesy or drifting into a bus lane during a high-speed chase. The chief has also stated that discipline is being weaponized, with the clear implication that the policies created by the commission and CPRA discipline process are hindering policing.

Dismissive of the need for reform, the Chief has argued that the entire force has changed since the Riders case and any problems left with them. This analysis ignores that recent scandals are very much from the generation that is currently policing our city and that each scandal was worsened by the failure of IAB to address the misconduct. The Chief has complained repeatedly about the amount of time that is required to oversee the Internal Affairs investigations and discipline cases, stating at public meetings that sergeants are spending up to 80% of their time on investigations and discipline, restricting their time in the field. He has complained about the

amount of his time taken with oversight requirements and suggested that his time is wasted on investigations that are unfounded and on discipline for trivial or inconsequential matters.

<u>Undermining of Discipline</u>
Previously, OPD and CPRA were fairly consistently reaching agreement on investigations and discipline. Now, there are exponentially greater numbers of discipline committee meetings. What we see in public messaging and ongoing attempts to undermine discipline seems to confirm what community members hear from officers - that OPD leadership "is backing officers" and will not agree with discipline within the discipline matrix, even with compelling and irrefutable evidence. CPA hears confidentially from some officers who are concerned that the wrong officers are emboldened by the new approach and the blanket defense of violations.

Another example of the very concerning culture at OPD is the Chief's proposed changes to the pursuit policy. Despite hearing about specific concerns with the pursuit policy from the Police Chief and months of parallel messaging from officers and OPOA, the chief's proposal did not address any of those concerns. All that the chief's proposal does is remove accountability and create loopholes for police supervision and officers while leaving the underlying policy untouched.

<u>City Leadership's Disinterest in OPD Oversight</u>
At all levels of city administrative and elected leadership, there are constant discussions about wanting to "get out of the NSA." Every election campaign includes candidates promising to move forward on it. Nonetheless, there is no demonstrated interest in taking steps so that Oakland is well-positioned to succeed with robust, independent oversight and with city leadership and a police department committed to building upon the successful progress towards constitutional policing we have achieved under federal oversight.

Unfortunately, the city leadership has shown an aggressive disregard to funding oversight and strengthening the mechanisms that are needed to take over the responsibility of oversight. The budgets for the Office of the Inspector General and the Police Commission were cut more deeply than proportional cuts for other departments. The city council even gave $200,000 beyond the full budget to CPRA to address a backlog in Skelly hearings, but held firm in not funding staff for the police commission and the OIG auditing function. Indeed, not a single auditor position is funded. (The budget provides $122,500/year for a woefully insufficient amount of contracted auditing.) City leadership is well aware that the work is charter-mandated and foundational to having a functional city structure to oversee OPD. The amounts of money needed are small; not funding police oversight is a policy decision, not merely the results of a very tight budget.

The budget does support the move towards CPRA serving as the primary body charged with investigating OPD officer misconduct. This is a bright spot and demonstrates how the city leadership acts when they are committed to steering police oversight. CPRA is an essential element in our city's success and must be sustained.

The Police Commission is the most labor intensive volunteer position in the city. Commissioners are supported by one full-time staffer and independent legal counsel. The budget cuts a second staff position ($193,945) and reduces the amount of time for independent legal counsel from $320,000 to $125,000 for the year. The commission is currently limping along with the reduced resources but has delayed addressing policies (such as handcuffing and restraint, youth and vulnerable people, and tasers) and has delayed for months creating a template to ensure that OPD reports to the commission contain appropriate and relevant information. Due to the oppositional attitude of the current OPD leadership, commissioners are also spending exponentially more time in discipline committee meetings that are convened when CPRA and OPD are unable to agree on the appropriate outcome of a discipline case.

The unfunded OIG policy position is also a staffing position which should enable the volunteer commissioners to engage in their mandated roles of policy formation and community engagement.The position is not funded even as the city attorney informed the commission that for the first time they would have a role in a highly controversial policy on when police can engage in high-speed chases. This is but one of the policy issues that is currently before the commission. The commission utilized the research and analysis from the policy analyst when addressing the pursuit policy and convened a community town hall with a policy presentation. (The analyst left his position with the city when it was apparent that it was no longer funded.) There is no policy research and analysis currently supported by the city's budget.

We continue to see disinterest from city leadership in mandated reforms, even those without budget impact. For example, Ballot Measure S1 required a mediation program to enable Oakland residents and OPD officers to have a discussion about resident concerns that will not result in officer discipline, facilitated by a trained mediator. CPRA found grant funding and a local non-profit to run the mediation program. The Community Boards organization has trained 25 volunteers, but the program remains stalled. After 8 months, the city is at imminent risk of losing the $240,000 in grant funding.

<u>What Must Happen Now</u>
We urge the court to communicate clearly to the city administration, elected leaders, and OPD leadership that their current lackadaisical posture undermines constitutional policing and the court must see that:

- The city administration and elected officials must demonstrate a real willingness to support police oversight by funding the fundamental elements. The police commission requires adequate staffing and the Inspector General must have the needed resources to conduct the mandated audits. Forward movement on civilian oversight will not occur without this.
- There must be concrete action to demonstrate the commitment of the city to create sustainable structures to oversee policing by fully funding the commission and OIG immediately. There can be no discussion about sharing or taking on additional work currently performed by the monitor/compliance director until this happens.

- The city must take immediate corrective action to address the harm to constitutional policing done by OPD leadership undermining discipline and oversight and the failure of city leadership to show any interest or concern, let alone intervene. With support from the city administration and leadership, the police commission needs to reverse course and address OPD's emboldened resistance to reform.
- Performative proposals for training, reporting, and data collection do not replace sustainable structures and aggressive reversals of efforts to undermine constitutional policing, reform, and oversight.

CPA is submitting this letter because the Police Commission's statement does not address the clear and growing resistance to oversight by both the department and the city. We do not believe that the court can make an assessment of the current state of oversight and how best to move forward without it. We believe that the commission is negligent in suggesting that they can expand their work without adequate resources and that the commission's proposed plan, without addressing the very real obstacles we face, is a proposal for failure.

Judge Henderson once observed that Oakland doesn't have the will to reform. Instead of moving forward, we fear that we see indications that we appear to be slipping backward.

If you would like additional information about anything referenced, please let us know. Thank you for your ongoing work and support of constitutional policing for our city.


Sincerely,

Millie Cleveland, Steering Committee Chair, Coalition for Police Accountability