BAYAREA COUNCIL

September 9, 2026

The Honorable William H. Orrick III
United States District Court
Northern District of California
450 Golden Gate Avenue
Courtroom 2 – 17th Floor
San Francisco, CA 94102

Office of the Clerk
United States District Court
Northern District of California
450 Golden Gate Ave, 16th Floor
San Francisco, CA 9410

**Re: Public Comment Submission**
**Case Name: Delphine Allen, et al. v. City of Oakland, et al.**
**Case Number: Master Case No. C00-4599 WHO**
**Judge: Hon. William H. Orrick**

To the Office of the Clerk,

On behalf of the Bay Area Council (Council), I write to express support for the City of Oakland and the Oakland Police Department's (OPD) efforts to achieve compliance with the requirements of the Negotiated Settlement Agreement (NSA) and transition out of federal oversight. In light of the findings contained in the most recent NSA Sustainability Period Report of the Independent Monitor, we respectfully urge the Court to establish a process to formally and expeditiously conclude federal oversight. While critically important reforms have been achieved as a result of the NSA, after over two decades, it is increasingly appropriate to question whether the costs of continued Court oversight – including the actual fiscal impact on the city, the administrative burdens on OPD, and their resulting impact on the city's overall public safety – now outweigh the benefits, particularly given the Independent Monitor's conclusion that OPD has reached compliance with all 51 tasks.

For 80 years, the Council, representing 380 of the region's largest employers, has engaged business and civic-minded leaders to solve the most challenging regional issues to ensure the Bay Area is the most innovative, sustainable, inclusive, and globally competitive region. Nowhere is that collaboration needed more right now than in Oakland, where economic growth continues to be hampered by concerns about public safety. In 2024, at the request of 125 employers based in or otherwise doing business in Oakland, the Council formed an East Bay safety and economic development advocacy coalition.

This coalition directed the Bay Area Council Economic Institute, the organization's independent research arm, to examine the close relationship between public safety and economic stability in Oakland. "*Making Oakland Safe and Its Economy Strong: A Vision for Lasting Change*" (June 2025) draws on voter polling, economic analysis, policing best-practices research, and more than 40 interviews with city leadership, law enforcement, public safety experts, industry representatives, and community stakeholders.

The report found that persistent crime and negative perceptions of safety have significantly impacted economic activity, consumer behavior, investment, and confidence in the city. And while the report acknowledges the historic reforms that have been made due to the NSA, it also identifies ongoing federal oversight as one of three key structural barriers to improved public safety and ongoing economic recovery. The report argues this is due to the significant financial and administrative burdens the NSA places on a resource-constrained city and police department, and their resulting impacts on public safety operations and crime.

At 1.55 sworn officers per 1,000 residents, Oakland ranks 21st of 26 comparable cities analyzed in the report. The current operational staffing level is the lowest it has been in decades. On a per crime basis, OPD faces more than double the per officer caseload of the average large city in California. And an independent staffing study released in June 2025 found that OPD needs a baseline of 877 sworn officers to meet workload and service demands, which is hundreds of officers more than currently available.

Against this backdrop, NSA requirements impose significant administrative burdens. Oakland's citizen complaint process yields three times more internal affairs complaints per officer than any

other law enforcement agency in California. In 2024, OPD closed more than 1,500 internal affairs cases, and approximately 85% of those cases resulted in unfounded allegations or officer exoneration. Each investigation nonetheless requires between 10 and 40 hours, which is time that could be spent in the field keeping communities safe.

As the report notes, Oakland's violent crime rates in 2024 remained higher than in 2003 when OPD was first placed under federal oversight. Of 14 mid-sized cities analyzed in the report, Oakland has the sixth highest rate of violent crime, joining cities such as Baltimore, Memphis, Milwaukee, Detroit, and Kansas City with violent crime rates in 2024 over 1,000 reported crimes per 100,000 residents.

The Council believes the only appropriate question before the Court is: Is Oakland today positioned to sustain constitutional policing and meaningful accountability without federal oversight? Oakland already maintains an extensive accountability framework independent of the NSA. The city Charter establishes a civilian-led Police Commission, an Internal Affairs Division, a Community Police Review Agency, and an Office of the Inspector General, alongside oversight by the Mayor and City Council. The Council's Economic Institute found that it is among the most comprehensive police accountability structures in the nation. Beyond these formal mechanisms, Oakland's residents, employers, and civic institutions continue to demand lawful, professional, and accountable policing. These structures are firmly embedded within the city's governance framework and civic culture and will persist beyond the life of federal oversight.

Rebuilding public trust in safety institutions requires both effective policing and sustained accountability structures. The Council and the employers we represent strongly support continued investment in constitutional policing, civilian oversight, Internal Affairs capacity, auditing functions, officer training, and beyond. And our organization recognizes that important work remains. At the same time, we must acknowledge the substantial progress that has occurred over the course of more than two decades of federal oversight. Significant reforms have been implemented, oversight structures have matured, transparency has increased, and accountability systems are far more robust now than they ever have been - progress I witnessed

firsthand during my eight-year tenure as Mayor of Oakland, which included the onset of the NSA Sustainability Period in May 2022.

The Council has worked extensively with employers, community stakeholders, local government leaders, and public safety officials throughout the region. There has been broad consensus in these conversations: Oakland deserves safe neighborhoods and a thriving economy, constitutional policing and accountability are non-negotiables, and the city is positioned to transition out of federal oversight - and it would benefit all to do so.

We respectfully encourage the Court to recognize both the substantial progress that has been achieved by OPD and the extent to which Oakland has developed durable accountability structures by formally and expeditiously concluding federal oversight.

Thank you for your continued leadership and attention to this important matter. Should you have any questions or comments regarding this letter, please contact Laura Hill, Vice President of Public Policy, at Lhill@bayareacouncil.org.

Sincerely,



**Libby Schaaf**
President and CEO
Bay Area Council