September 15, 2026

# Fourteenth NSA Sustainability Period Report *of the* Independent Monitor *for the* Oakland Police Department

## Introduction

This is the fourteenth report of the Monitoring Team issued during the Negotiated Settlement Agreement (NSA) sustainability period in the case of *Delphine Allen, et al., vs. City of Oakland, et al.,* in the United States District Court for the Northern District of California under the direction of Judge William H. Orrick.

The City and the Oakland Police Department (OPD) have been in the sustainability period since May 2022. While the sustainability period was initially slated to last for one year, the Court has extended it following a few hearings in which the City and Plaintiffs discussed the status of and challenges to sustained compliance. In a September 2024 Order, the Court noted, "The failure of leadership demonstrated by the defendants requires immediate correction." Among other directives, the Court ordered the Department to "restructure the organizational chart" so that the Internal Affairs Bureau (IAB) is headed by a Deputy Chief who reports directly to the Chief of Police; and that Department and City leaders, along with a representative of the Monitoring Team, meet every two weeks to discuss significant developments related to IAB investigations and timeliness.

As with our site visits before the sustainability period, we report to the Court on a quarterly basis; we conduct quarterly site visits; our site visits include both compliance assessments and technical assistance. We also meet with Department and City officials to receive updates on OPD's compliance with the NSA Tasks; observe the Department's Risk Management Meetings; review and discuss the status of several Departmental policies; and share our observations of misconduct investigations and, as circumstances may dictate, use of force reports.

This report covers NSA Tasks 2, 5, and 45. These Tasks relate to the core functions of IAB.

# *Task Assessments*

## Task 2: Timeliness Standards and Compliance with IAB Investigations

**Requirements:**

*Fairness to complainants, members/employees and the public requires that internal investigations be completed in a timely fashion.*

1. *On or before December 1, 2003, OPD shall develop policies regarding timeliness standards for the completion of Internal Affairs investigations, administrative findings and recommended discipline.*
2. *Compliance with these timeliness standards shall be regularly monitored by IAB command and the Department's command staff. If IAB experiences an unusual proliferation of cases and/or workload, IAB staffing shall be increased to maintain timeliness standards.*

(Negotiated Settlement Agreement III. B.)

**Relevant Policy:**

OPD most recently revised Departmental General Order M-03, *Complaints Against Department Personnel and Procedures*, on December 22, 2017.

**Commentary:**

**Task 2.1** requires that internal investigations (IAB and Division Level) – including review, approval, findings, and discipline – be completed in accordance with the timeliness standards developed by OPD. To assess this subtask, we requested a list of all internal investigations resulting in formal findings (unfounded, sustained, exonerated, or not sustained) that were approved in the first quarter (January-March) of 2026. Using the list, we segregated the cases into Class I or Class II categories. If a case involved at least one alleged Class I violation, we classified it as Class I.

At least 85% of Class I misconduct investigations and at least 85% of Class II misconduct investigations must be completed within 180 days to be considered timely. Per Department General Order M-03, Class I offenses "are the most serious allegations of misconduct and, if sustained, shall result in disciplinary action up to and including dismissal and may serve as the basis for criminal prosecution." Class II offenses include "all minor misconduct offenses."

For the purposes of this assessment, we calculated the number of days between the complaint receipt date and the approval date. The complaint date is the date on which the Department first becomes aware of a complaint – whether it is lodged by a community member or internally generated. We removed from the denominator cases that were delayed due to tolling (held in

abeyance in accordance with one of the provisions of Government Code Section 3304) or cases in which the Department asserted that its failure to meet the 180-day timeliness requirement resulted from delays in the Community Police Review Agency (CPRA) completing its concurrent investigations. Per the City of Oakland Charter, the CPRA must make "every reasonable effort to complete" its investigations within 180 days but is required to complete its investigations within 250 days.

For this report, we reviewed IAB cases that were approved in the first quarter of 2026 (January-March). Of the 93 applicable Class I cases we reviewed for this assessment, 77, or 83%, were in compliance with established timelines. For our last quarterly status report, we found 86% of the applicable Class I cases in compliance with established timelines.

Of the 88 applicable Class II cases we reviewed for this assessment, 81, or 92%, were in compliance with established timelines. For our last quarterly status report, we found 96% of the applicable Class II cases in in compliance with established timelines.

Per DGO M-03, "In cases with a sustained finding, the discipline recommendation process shall be completed within 30 calendar days of the sustained finding." We reviewed all 23 cases including a total of 65 sustained findings that were approved in January-March 2026; 11 cases involved multiple sustained findings. We found 22 (96%) of the 23 cases in compliance with established discipline timelines.

OPD is not in compliance with Task 2.1.

**Task 2.2** requires that IAB and OPD command staff regularly monitor compliance with these timeliness standards. The primary responsibility for monitoring compliance with timeliness standards rests with IAB, whether investigations are conducted by IAB personnel or via Division-level investigation. As part of this monitoring, the IAB Commander discusses pending deadlines for key open investigations during IAB's weekly meetings with the Chief; the deadlines are also reflected in written agendas for these meetings. A Monitoring Team representative regularly attends these meetings. IAB also occasionally, as needed, emails individual reminders on cases approaching due dates to investigators and their supervisors. The Department is in compliance with Task 2.2.

**Task 2.3** requires that if IAB experiences an unusual proliferation of cases and/or workload, IAB staffing be increased to maintain timeliness standards. We routinely request and receive updates on IAB staffing levels during and between our site visits.

During the last reporting period, OPD had again achieved compliance with Task 2 after one year of noncompliance. We are disappointed that, for the first quarter of 2026, OPD is not in compliance with this Task due to our 83% compliance finding for Class I cases. However, we remain optimistic that IAB leadership is working diligently to continue to streamline the intake and investigative process, track cases closely as they make their way through the investigative process, and manage investigators' caseloads and respond swiftly when investigators go on leave. All of these efforts will help the Department regain compliance with this important Task.

| | |
|---|---|
| **Task 2 compliance status** | Not in compliance |

# Task 5: Complaint Procedures for IAB

**Requirements:**

1. *On or before December 1, 2003, OPD shall develop a policy so that, OPD personnel who become aware that a citizen wishes to file a complaint shall bring such citizen immediately, or as soon as circumstances permit, to a supervisor or IAB or summon a supervisor to the scene. If there is a delay of greater than three (3) hours, the reason for such delay shall be documented by the person receiving the complaint. In the event that such a complainant refuses to travel to a supervisor or to wait for one, the member/employee involved shall make all reasonable attempts to obtain identification, including address and phone number, as well as a description of the allegedly wrongful conduct and offending personnel, from the complainant and any witnesses. This information, as well as a description of the complaint, shall immediately, or as soon as circumstances permit, be documented on a Complaint Form and submitted to the immediate supervisor or, in his/her absence, the appropriate Area Commander, and shall be treated as a complaint. The supervisor or appropriate Area Commander notified of the complaint shall ensure the Communications Division is notified and forward any pertinent documents to the IAB.*

2. *An on-duty supervisor shall respond to take a complaint received from a jail inmate taken into custody by OPD, who wishes to make a complaint of Class I misconduct contemporaneous with the arrest. The supervisor shall ensure the Communications Division is notified and forward any pertinent documents to the IAB. All other misconduct complaints by a jail inmate shall be handled in the same manner as other civilian complaints.*

3. *In each complaint investigation, OPD shall consider all relevant evidence, including circumstantial, direct and physical evidence, and make credibility determinations, if feasible. OPD shall make efforts to resolve, by reference to physical evidence, and/or use of follow-up interviews and other objective indicators, inconsistent statements among witnesses.*

4. *OPD shall develop provisions for the permanent retention of all notes, generated and/or received by OPD personnel in the case file.*

5. *OPD shall resolve each allegation in a complaint investigation using the "preponderance of the evidence" standard. Each allegation shall be resolved by making one of the following dispositions: Unfounded, Sustained, Exonerated, Not Sustained, or Administrative Closure. The Department shall use the following criteria for determining the appropriate disposition:*

   a. *Unfounded: The investigation disclosed sufficient evidence to determine that the alleged conduct did not occur. This finding shall also apply when individuals named in the complaint were not involved in the alleged act.*

b. *Sustained: The investigation disclosed sufficient evidence to determine that the alleged conduct did occur and was in violation of law and/or Oakland Police Department rules, regulations, or policies.*

c. *Exonerated: The investigation disclosed sufficient evidence to determine that the alleged conduct did occur, but was in accord with law and with all Oakland Police Department rules, regulations, or policies.*

d. *Not Sustained: The investigation did not disclose sufficient evidence to determine whether or not the alleged conduct occurred.*

e. *Administrative Closure: The investigation indicates a service complaint, not involving an MOR violation, was resolved without conducting an internal investigation; OR*

f. *To conclude an internal investigation when it has been determined that the investigation cannot proceed to a normal investigative conclusion due to circumstances to include but not limited to the following:*

1) *Complainant wishes to withdraw the complaint and the IAB Commander has determined there is no further reason to continue the investigation and to ensure Departmental policy and procedure has been followed;*

2) *Complaint lacks specificity and complainant refuses or is unable to provide further clarification necessary to investigate the complaint;*

3) *Subject not employed by OPD at the time of the incident; or*

4) *If the subject is no longer employed by OPD, the IAB Commander shall determine whether an internal investigation shall be conducted.*

5) *Complainant fails to articulate an act or failure to act, that, if true, would be an MOR violation; or*

6) *Complaints limited to California Vehicle Code citations and resulting tows, where there is no allegation of misconduct, shall be referred to the appropriate competent authorities (i.e., Traffic Court and Tow Hearing Officer).*

g. *Administrative Closures shall be approved by the IAB Commander and entered in the IAB Complaint Database.*

6. *The disposition category of "Filed" is hereby redefined and shall be included under Administrative Dispositions as follows:*

a. *An investigation that cannot be presently completed. A filed investigation is not a final disposition, but an indication that a case is pending further developments that will allow completion of the investigation.*

b. *The IAB Commander shall review all filed cases quarterly to determine whether the conditions that prevented investigation and final disposition have changed and may direct the closure or continuation of the investigation.*

7. *Any member or employee who is a subject of an internal investigation, as well as any other member or employee on the scene of an incident at which misconduct has been alleged by a complainant, shall be interviewed and a recorded statement taken. However, investigators, with the approval of an IAB Commander, are not required to interview and/or take a recorded statement from a member or employee who is the subject of a complaint or was on the scene of the incident when additional information, beyond that already provided by the existing set of facts and/or documentation, is not necessary to reach appropriate findings and conclusions.*

(Negotiated Settlement Agreement III. E.)

**Relevant Policy:**

There are six Departmental policies that incorporate the requirements of Task 5: Department General Order M-03, *Complaints Against Department Personnel and Procedures* (revised most recently on December 22, 2017); Communications Division Policy & Procedures C-02, *Receiving and Logging Complaints Against Personnel and Use of Force Incidents* (revised most recently on December 7, 2009); Training Bulletin V-T.1, *Internal Investigation Procedure Manual* (revised most recently on November 30, 2023); Special Order 8270, *Booking of Prisoners at the Glenn E. Dyer Detention Facility* (published June 24, 2005); Special Order 8565, *Complaints Against Department Personnel* (published May 11, 2007); and IAB Policy & Procedures Manual 21-01, *IAB General Operating Procedures* (published August 17, 2021). In addition, NSA stipulations issued on December 12, 2005 and March 13, 2007 incorporate the requirements of this Task.

**Commentary:**

Task 5 consists of several subtasks, briefly described below. Based on OPD's compliance history with many of the subtasks, not all are being actively monitored at this time.

**Task 5.1** requires that when a citizen wishes to file a complaint, the citizen is brought to a supervisor or IAB, or a supervisor is summoned to the scene. **Task 5.2** requires that if there is a delay of greater than three hours in supervisory response, the reason for the delay must be documented. **Task 5.3** requires that where a complainant refuses to travel to a supervisor, or wait for one, personnel make all reasonable attempts to obtain specific information to assist in investigating the complaint. **Task 5.4** requires that specific information be documented on a complaint form and submitted to the immediate supervisor or, in his/her absence, the appropriate Area Commander. **Task 5.5** requires that the supervisor or Area Commander notify Communications and forward any pertinent documents to IAB.

To assess compliance with Tasks 5.1 through 5.5, we reviewed the Daily Incident Logs (DILs) prepared by the Communications Division and forwarded to IAB each business day. The DIL form has been modified several times during our tenure to elicit "forced responses" that gather all of the information required to evaluate compliance with these Tasks. These modifications have significantly enhanced OPD's ability to document compliance by properly filling out and distributing the logs, and compliance rates with these subtasks have been near 100% for several years. Consequently, we no longer actively assess OPD's compliance with these subtasks, but we continue to receive both the DILs and Daily Complaint Referral Logs (used to document when Information Business Cards [IBCs] are provided to citizens in lieu of a complaint forms). We spot-check these forms regularly to verify that the quality of their completion has not diminished. OPD remains in compliance with Tasks 5.1 through and including Task 5.5.

**Task 5.6** requires that an on-duty supervisor respond to take a complaint received from a jail inmate taken into custody by OPD, who wishes to make a complaint of Class I misconduct contemporaneous with the arrest of the inmate. We have not actively monitored this subtask since December 2014, though we have reviewed cases applicable to this requirement in several reports since that time.

**Task 5.12** requires that the Watch Commander ensure that any complaints that are applicable to Task 5.6 are delivered to and logged with IAB. Under current policy, the Communications Division must record on the DILs complaints that are received and/or handled by on-duty supervisors, and the DILs are forwarded daily to IAB.

OPD remains in compliance with Tasks 5.6 and 5.12.

**Task 5.15** through **Task 5.19**, and **Task 5.21,** collectively address the quality of completed IAB investigations, and therefore remain the subject of our focused Task assessments. To assess compliance with these Tasks, we reviewed a sample of 12 IAB cases that were closed between January 1-March 31, 2026.

Our sample of cases consisted of investigations completed by investigators assigned to IAB, and Division-level investigations (DLIs). It also included cases that were resolved via summary finding. (Summary findings are investigations in which the Department believes a proper conclusion can be determined based on a review of existing documentation with limited or no additional interviews and follow-up.)

Together, **Tasks 5.15** and **Task 5.16** require that OPD: gathers all relevant evidence; conducts follow-up interviews where warranted; adequately considers the evidence gathered; makes credibility assessments where feasible; and resolves inconsistent statements.

In all of the cases we reviewed, we believe that OPD gathered all relevant evidence available. As we have often found, in many of the cases video and/or audio recordings proved to be a significant factor in allowing OPD to reach an appropriate conclusion.

Investigators conducted follow-up interviews in one of the cases we reviewed. We concur that follow-up interviews were not necessary in the remaining 11 cases.

OPD made credibility assessments for all involved parties in 10 of the 12 cases. In two of these 12, the complainant was deemed not credible; and documentation and review of body-worn camera (BWC) footage supported the not credible finding. In all of the cases we reviewed where a credibility assessment was done, the subject officers were deemed to be credible.

In three of the 12 cases we reviewed, OPD was unable to resolve inconsistent statements which resulted in not sustained findings, In six of the 12, all BWC recordings or other recordings were available and assisted in the determination of findings.

**Task 5.17** requires that OPD permanently retain all notes generated and/or received by OPD personnel in the case file. OPD personnel document the presence of investigative notes within a particular file by completing an Investigative Notes Declaration Form. OPD has a sustained history of 100% compliance with this subtask.

**Task 5.18** requires that OPD resolve each allegation in a complaint investigation using the preponderance of the evidence standard. **Task 5.19** requires that each allegation of a complaint is identified and resolved with one of the following dispositions: unfounded; sustained; exonerated; not sustained; or administrative closure. Our sample of 12 cases contained 39 allegations that received dispositions as follows: 14 exonerated; 14 unfounded; five sustained; and six not sustained. We did not disagree with any of the findings in the cases we reviewed.

The Department remains in compliance with Task 5.

| | |
|---|---|
| **Task 5 compliance status** | In compliance |

## Task 45: Consistency of Discipline Policy

**Requirements:**

*On or before October 6, 2003, OPD shall revise and update its disciplinary policy to ensure that discipline is imposed in a fair and consistent manner.*

1. *The policy shall describe the circumstances in which disciplinary action is appropriate and those in which Division-level corrective action is appropriate.*
2. *The policy shall establish a centralized system for documenting and tracking all forms of discipline and corrective action, whether imposed centrally or at the Division level.*
3. *All internal investigations which result in a sustained finding shall be submitted to the Discipline Officer for a disciplinary recommendation. The Discipline Officer shall convene a meeting with the Deputy Chief or designee in the affected chain-of-command for a confidential discussion of the misconduct, including the mitigating and aggravating factors and the member/employee's overall performance.*

> 4. *The COP may direct the Discipline Officer to prepare a Discipline Recommendation without convening a Discipline Conference.*

(Negotiated Settlement Agreement X. B.)

**Relevant Policy:**

Five Departmental policies incorporate the requirements of Task 45: Departmental General Order M-03, *Complaints Against Department Personnel and Procedures* (revised most recently on December 22, 2017); Training Bulletin V-T.1 and V-T.2, *Internal Investigation Procedure Manual* (revised most recently on November 30, 2023); IAB Policy & Procedures Manual 21-01, *IAB General Operating Procedures* (published August 17, 2021); and Training Bulletin V-T, *Departmental Discipline Policy* (revised most recently on December 11, 2017).

**Commentary:**

The Department continues to make the requirements of Task 45 – and, more importantly, the values underlying Task 45 – a priority. Since the publication of our last report, the Department's Office of Internal Accountability (OIA) issued its "2025 Preliminary Internal Investigation Outcome and Discipline Report," detailing the IAB outcomes for the calendar year of 2025. This report offers comparisons between 2024 and 2025 data, and overall, shows promising improvement. For example, as noted in the report, "[OIA] did not observe in the 2025 data the same extent of disparity in sustained rates observed in 2024 between white and Black sworn personnel, nor between white and Hispanic sworn personnel. For Black members, the statistically significant 5-point difference with whites (7%, 23 of 351 versus 2%, 4 of 223) observed in 2024 shrank to a 2-point difference (7%, 21 of 303 versus 5%, 11 of 222) that did not meet the threshold for statistical significance; for Hispanics, the significant 4-point difference with whites (6%, 25 of 425 versus 2%, 4 of 223) reduced to a 3-point difference (8%, 33 of 406 versus 5%, 11 of 222) that also did not meet the bar for statistical significance."

After OIA issued its report, Department leadership issued an official response to OIA's findings and recommendations. In its official response, the Department made commitments to addressing several issues identified in the report. For example, OPD will be initiating training to improve accuracy and consistency in data entry at IAB.

In July, the Department issued its "Results of the 2025 Survey of OPD Personnel Perceptions of Internal Investigation and Discipline" after conducting an online survey of 252 OPD employees (including 179 sworn and 73 professional staff). This survey followed up on, and mostly matched the inquiries of, OPD's 2022 survey. Overall, respondents perceived a decline in discipline fairness (compared to 2022); and identified concerns including favoritism and the ways in which rank and also race and ethnicity affect the outcomes of IAB investigations.

Department leadership also issued an official response to the survey's findings. The survey had noted that there is widespread confusion among personnel as to the role of the Community Police Review Agency (CPRA) in some internal misconduct investigations. In the Department's official response, OPD leadership committed to working collaboratively with CPRA's director to develop and deliver Department-wide training on CPRA's role, authority, and process. This project is already underway.

The Department is embarking on a qualitative study in which employees of different ranks and positions within OPD will be interviewed on their perceptions and expectations of the IAB investigation process. We look forward to hearing more about this study in the coming months.

The Department remains in compliance with Task 45.

| | |
|---|---|
| **Task 45 compliance status** | In compliance |

# Conclusion

Since 2022, the Monitoring Team has been assessing the Department's compliance with the remaining Negotiated Settlement Agreement (NSA) Tasks: Tasks 2, 5, and 45. During this reporting period, we determined that Task 2 is not in compliance, though it had been in compliance during the previous reporting period. Task 2, the timeliness of IAB investigations, is an important issue in the NSA. Members of the public, as well as sworn and non-sworn employees of the Department, are entitled to learn of the results of investigations that are overseen by the Internal Affairs Bureau. Since the Department has, in fact, been previously compliant, we are confident that the capacity to meet the mandates of this Task is there. Further, other City departments and outside enterprises can, in fact, impact the best efforts of IAB leadership to complete investigations within 180 days. Accordingly, all City departments or organizations retained by the City for investigative purposes must work together to ensure that the Department fulfills the obligations found in Task 2.

Mayor Lee and her administration, as well as Chief Beere, who is now the permanent Chief of Police, and OPD's executive team, have worked diligently to foster a culture of accountability. City leadership remains an imperative part of the sustainability process, and we are encouraged by the commitment of the Mayor and her team.

Chief (Ret.) Robert S. Warshaw
*Monitor*