# EXHIBIT 2

CITY OF OAKLAND

***INTER OFFICE MEMORANDUM***

**TO:** Oakland Police Department
Office of Internal Accountability

**PREPARED BY:** James P. Beere
Interim Chief of Police
Oakland Police Department

**SUBJECT:** Response to OIA's 2025 Internal Investigation Outcomes and Discipline Report

**DATE:** June 18, 2026

**PURPOSE**

The Department's Office of Internal Accountability recently published the 2025 Internal Investigation Outcome and Discipline Study (2025 Study). This memorandum addresses the study's data and recommendations for the Internal Affairs Bureau (IAB). It summarizes the findings, details new measures to ensure fair and consistent investigation outcomes and discipline and demonstrates the Department's ongoing commitment to compliance with Task 45 (Consistency of Discipline) of the Negotiated Settlement Agreement (NSA).

**2025 STUDY FINDINGS**

The 2025 Study outlines findings and discipline that result from internal investigations. The methodology consisted of analyzing data associated with internal investigations involving a sworn member that came to a finding during the year 2025. The 2025 Study found measurable improvement over 2024. The differences in sustained allegation rates that were most pronounced in 2024 narrowed in 2025, most notably in internally generated cases, where the widest disparity had appeared the prior year. Discipline for the most serious misconduct (Class I) was imposed consistently across Race. The Department regards these results as meaningful progress and does not present them as a conclusion that disparity has been resolved.

The 2025 Study showed the overall sustained rate increased by 1.6% between 2024 and 2025. In 2025 there were 64 sustained allegations out of 1,417 allegations resulting in a 4.5% sustained rate. In 2025, there were 82 sustained allegations out of 1,336 allegations resulting in a 6.1% sustained rate. Additionally, the sustained rates increased for all races except Black members, whose sustained rate stayed the same at 7% for 2024 and 2025.[1] The sustained rate for white sworn members more than doubled from 2% to 5% from 2024 to 2025. As a result, we did not observe in the 2025 data the same extent of disparity in sustained rates observed in 2024 between white and Black sworn personnel, nor between white and Hispanic sworn personnel.

**INTERNALLY GENERATED CASES**

While the 2025 data shows progress, OPD continues to closely monitor the sustained rates for internally generated cases, cases that involve complaints against officers that originate from within the Department rather than from community members.

[1] There were 23 sustained allegations of 351 total allegations in 2024 and 21 sustained allegations of 303 total allegations in 2025

Because internally generated complaints rely to an extent on the discretion of supervisors and internal systems to flag behavior, this discretion creates room for implicit bias to influence who gets reported, how strictly rules are enforced, and which infractions are escalated to formal investigations. Therefore, even when variances do not meet the threshold for statistical significance, OPD remains concerned about any observed disparities, particularly those involving race, ethnicity, and gender.

Key findings from the 2025 Study show:

- **Race and Ethnicity:** The gap in sustained rates between white members and Black and Hispanic members narrowed in 2025, and the difference was not statistically significant. However, white members were still sustained at roughly half the rate of Black, Hispanic, and Asian members.
- **Gender Equity:** In a positive shift from 2024, the 2025 data revealed no disciplinary disparities between male and female members in either internally or externally generated cases.

## RESPONSE TO STUDY RECOMMENDATIONS

The 2025 Study made three recommendations. The Department accepts each of them and has begun implementing all three.

**I.** ***The Department closely monitors data entry and 'sustained' rates in internally generated cases more closely and documents the origin of those cases more consistently;*** In some cases, it was difficult to determine how a case originated because information recorded in the complaint form was inconsistent across data fields. To improve data reliability, the Department should ensure consistent and accurate entry of complainant information and provide additional training to IAB personnel on properly classifying and documenting case origination. Additionally, the Department should continue to closely monitor sustained rates for internally generated cases to identify trends and potential areas of concern.

***Response:*** Reviewers of internally generated cases in IAB will be trained in reviewing cases to ensure accuracy in data entry. In addition to the annual review of internal investigation outcomes and discipline data, the Department conducts quarterly monitoring of sustained rates by race and has initiated a full review of all the 2025 internally generated cases to determine the cause of their increase. In the past, the greatest disparities in discipline existed in internally generated investigations. In reviewing these cases, we will look for the following:

- Statistical differences between white and Black officers and across all races
- Race, rank and tenure of the investigator versus the subject officer
- Deviation from standard investigative procedures
- Appropriate MOR and policy application
- Skelly outcomes (If applicable)
- CPRA concurrent case outcomes (If applicable)
- Deviation from the Discipline Matrix (If applicable)

In the first quarter of 2026, we reviewed the sustained rates across all races. The preliminary results show that White and Black officers had nearly the same overall sustained rates, which were double the sustained rates for all other races. For internally generated cases, Black officers had the lowest sustained rate among all races. White and Hispanic officers had nearly the same sustained rates, and Asian officers had the highest sustained rates.

**II.** ***Provide training on how to enter Internally Discovered Violations into the complaint form;*** While "internally generated cases" are classified based on the origin of the case, "internally discovered violations" are classified at the allegation level. For example, an investigator may identify potential misconduct during a review of video evidence and add a new allegation to an existing case. In such instances, the allegation should be categorized as an "internally discovered violation," even if the case itself originated from an external complaint. The Department recently updated the complaint form to expand data collection related to "internally discovered violations."

To ensure that internally discovered violations are consistently and accurately recorded, the Department should provide training to IAB staff on the definition of an "internally discovered violation," explain updates to the complaint form in Vision, and emphasize the importance of complete and accurate data entry.

***Response:*** Improved training and data collection for allegations that are discovered within the Department during an investigation. In May 2026, the Department implemented a new module in its case-management system (VISION) that records, at the point an internal allegation is added, how it was identified, who approved it, and the basis for it, subject to command-level approval. Training of Investigative personnel in this new process is underway. IAB will review the data in 6 months (Quarter 1, 2027) to assess the effectiveness of the training, data will be displayed on the BRM regular quarterly reports thereafter.

**III.** ***More closely monitor data entry for investigation type:*** During the review of 2025 data, we identified cases that were reassigned between DLI and IA investigators, but the complaint form was not updated to reflect the change in investigation type. We also identified cases that were conducted by outside investigators; however, these cases were identified only through manual review because the complaint form does not include a field to indicate whether an investigation was outsourced. To improve the accuracy and reliability of data analysis, the Department should ensure that investigation type is updated whenever case assignments change and should add a data field to track whether an investigation was conducted by an outside investigator.

***Response:*** The Department will track the type of each investigation more reliably, including matters handled by outside investigators. The Department is implementing the corresponding record-keeping changes so that this Study and future reviews rest on complete and accurate data.

In addition to these measures, the Department has strengthened its Supervisory Note File policy and is analyzing those records for consistency across race and gender; and it has undertaken a confidential study of how Department members experience the internal investigation and discipline process, developed with the Department's affinity groups, labor unions, the Police Commission, and the City's Department of Race and Equity. The Department has established these functions as permanent, funded, and staffed responsibilities rather than temporary initiatives.

**CONCLUSION**

The consistency of internal discipline is our goal and the standard the Department owes to both its employees and the public. The Department is firmly committed to sustaining this goal. The 2025 Study presented some data that raised concerns. While these results are concerning, we will continue to leverage data-driven insights through analytics and engage in meaningful qualitative and quantitative work. This will inform and refine our approach and responses to areas of improvement moving forward. The Department is committed to consistently examining its conduct, as outlined in the Department's policies, as a permanent instrument of accountability, independent of the status of federal oversight.

Respectfully,

James P. Beere
Interim Chief of Police
Oakland Police Department