# EXHIBIT 4

CITY OF OAKLAND

***INTER-OFFICE MEMORANDUM***

| | | | |
|---|---|---|---|
| **TO:** | Office of Internal Accountability | **PREPARED BY:** | Casey Johnson<br>Assistant Chief of Police |
| **SUBJECT:** | Department Response to the 2025 IAB Perception Survey | **DATE:** | July 31, 2026 |

## I. PURPOSE

The Oakland Police Department (the "Department") has reviewed the Results of the 2025 Survey of OPD Members' Perceptions of Internal Investigation and Discipline. The purpose of this memorandum is to acknowledge and assess the survey findings, identify areas where employee perceptions have improved or declined since the 2022 survey, and describe the actions the Department will take to strengthen fairness, transparency, consistency, and understanding of the internal investigation and discipline process.

While this review provides additional discussion regarding sworn personnel, because they represented 71% or 179 of the 252 valid survey responses, and reported the greatest concerns in several categories, the Department also recognizes the importance of the perceptions of professional staff. Corrective actions described in this memorandum are to improve fairness, transparency, communication, and consistency for all Department members. Because durable accountability is a shared responsibility, this memorandum also identifies the city offices and external partners who will help carry out these commitments.

## II. ACKNOWLEDGMENT OF FINDINGS AND LESSONS LEARNED

The Department appreciates hearing from employees about their perceptions and concerns and takes the feedback seriously. The 2025 survey reflects an organization in which many members, particularly sworn personnel and rank-and-file officers, do not yet have confidence that the internal investigation and discipline process is fair, consistent, or sufficiently transparent in practice. Employee perceptions are critical to maintaining trust, accountability, and confidence in the Department's internal investigation and discipline process. Although survey responses do not by themselves establish that any individual investigative or disciplinary decision was improper, they identify areas where the Department must improve communication, transparency, consistency, and understanding. When members believe rank, favoritism, external politics, media attention, or unclear CPRA involvement may influence outcomes, those perceptions can undermine morale, cooperation, and organizational trust.

The Department also recognizes that confusion during the survey rollout regarding whether participation was mandatory or voluntary may have affected employee confidence in the survey

process. To strengthen confidence in future surveys, the Department will ensure consistent messaging, reinforce anonymity protections, coordinate communications across all levels of the organization, and engage employee associations early in the process to encourage participation and build trust.

## III. SUMMARY OF KEY FINDINGS

Fairness and consistency remain the central concerns. A majority of all respondents disagreed that OPD internal investigation processes are fair (52%), that disciplinary processes are fair (61%), and that the discipline matrix is applied consistently (51%). The concern is more pronounced among sworn personnel: 69% of sworn respondents disagreed that the discipline process is fair, and 58% disagreed that the discipline matrix is applied consistently.

The comparison to 2022 shows mixed movement. Perceptions of the disciplinary process worsened, while perceptions that race and rank influence some outcomes decreased. The Department does not treat the reduced perception of race and rank influence as a complete resolution because sizable groups still report concerns, especially regarding rank and favoritism.

In 2025, the survey included a question about the influence of favoritism (not included in the 2022 survey), and the results showed that employees tended to agree that favoritism influenced the initiation of a complaint, the findings, and the discipline. In this context, favoritism refers to the perception that personal relationships or preferential treatment—rather than the consistent application of policy—influence outcomes, in forms such as preferential shift or assignment decisions, fast-tracked promotions, and lighter disciplinary recommendations.

Sworn personnel reported substantially more confusion about CPRA's role than professional staff. Nearly 90% of sworn personnel reported confusion about CPRA's role across the investigation and discipline process, and the confusion worsened compared to 2022.

Rank-and-file sworn personnel expressed less confidence than supervisors. Supervisors generally viewed the process as fairer and reported a better understanding of policies and procedures. Yet, supervisors and rank-and-file personnel expressed similar levels of concern about whether rank and favoritism influence findings and discipline.

Black sworn personnel reported particular concerns regarding the fairness, consistency, and transparency of the Department's internal investigation and discipline process. Compared to white sworn respondents, Black sworn respondents were more likely to question whether the Department consistently complies with internal investigation policies, to perceive that race may influence investigative findings and disciplinary outcomes, and to express concerns regarding favoritism. The Department recognizes that these perceptions, regardless of whether they reflect actual disparities in individual cases, are significant because they directly affect employee trust, organizational legitimacy, and confidence in the accountability process. Accordingly, the Department is committed to continuing analyses of disciplinary outcomes by race and ethnicity, conducting periodic focus groups and qualitative assessments with sworn personnel and employee associations, and partnering

with the City's Department of Race and Equity (Director Darlene Flynn) and drawing on technical assistance from our Stanford partners, as appropriate, to help identify opportunities to improve communication, transparency, consistency, and accountability. Where trends or process concerns are identified, the Department will evaluate and implement appropriate policy, training, supervisory, or procedural improvements to strengthen confidence in the fairness of the process.

A substantial number of sworn respondents declined to report race or gender. Among sworn respondents, 21% did not report race, and 18% did not report gender. Personnel who declined to identify their race or gender reported higher levels of skepticism regarding the disciplinary process. Although no conclusions can be drawn about why respondents chose not to provide demographic information, the association suggests that non-response may warrant consideration as a potential indicator of organizational trust. Consistent with the survey analysis, future assessments will continue to analyze this respondent group as a separate category and monitor trends over time to help identify changes in employee confidence and engagement. To better understand this reluctance, the Department will consider incorporating into future surveys an anonymous mechanism through which members can indicate why they may be hesitant to provide demographic information, so that any underlying concerns about confidentiality and trust can be identified and addressed.

## IV. CPRA-SPECIFIC CONCERNS AND RECOMMENDATIONS

The survey identifies CPRA transparency as one of the Department's most urgent communication issues. More than 75% of all respondents expressed confusion or concern regarding CPRA's role, and nearly 90% of sworn respondents reported confusion across the four CPRA-related items. Among sworn personnel who had been investigated in the past two years, 47% reported a concurrent CPRA investigation. Those officers viewed CPRA's role as less transparent in both the investigative and disciplinary processes. Notably, members who had actually experienced a concurrent CPRA investigation reported the least clarity about it, which the Department reads as a call to explain CPRA's role and reasoning more effectively—not as a reason to minimize these concerns.

The Department will respond by clarifying, not minimizing, CPRA's role. In partnership with the CPRA Director (Antonio Lawson), the Department will jointly develop and co-deliver training that explains CPRA's role, authority, and process, including the procedural-justice reasons behind how CPRA conducts its work, rather than leaving members to infer it. This training will be delivered department-wide, beginning with the academy and transitional academy and extending through the Command Retreats, Continuing Professional Training (CPT), and supervisor courses, so that it reaches current members and not only newer officers. The Department will provide a CPRA process map that defines what CPRA can investigate, recommend, review, or influence; identifies when OPD and CPRA processes run concurrently; explains how disagreements are documented, handled, and by whom (including the Discipline Committee); and equips supervisors to answer common member questions accurately. The Department will also track whether cases with CPRA involvement differ in timeliness, findings, discipline recommendations, matrix application, and final outcomes. In addition, the Department will consider providing members, at the time a concurrent OPD and CPRA investigation is initiated, with a plain-language overview of the two processes and

how they interact, so that members understand their situation from the outset rather than waiting for later training or briefings.

## V. WHERE THE DEPARTMENT WILL IMPROVE

1. **Clarify decision-making and discipline consistency.** The Department will make the steps from allegation intake, classification, investigation, findings, Skelly review, Chief review, and final discipline easier for members to understand, and will meet with members at the conclusion of a sustained case to explain how the findings and level of discipline were reached; a practice the Department has already put into effect. The discipline matrix will be reinforced through case-based training using anonymized actual cases, with documented explanations for any departures or disagreements among investigators, the chain of command, CPRA, or other review bodies.

2. **Address favoritism and rank concerns directly.** Because rank and favoritism remain among the most persistent perception issues, the Department will review whether rank or assignment appears to correlate with case classification, findings, discipline range, timeliness, or deviations from the matrix. The Department recognizes that some of this analysis—particularly identifying patterns within the chain of command and reviewing Supervisory Notes File (SNF) entries, where disparities can also reside, including matters that should have been opened as cases—requires manual review and will be undertaken in phases as capacity allows. Recent improvements to the SNF form are expected to make this analysis more efficient over time. Where feasible, the review will distinguish command-level review, investigator recommendation, CPRA input, and final decision authority.

3. **Improve CPRA transparency.** In collaboration with the CPRA, the Department will provide a plain-language explanation of CPRA's role, authority, workflow, timelines, and interaction with OPD investigations and discipline, incorporate it into training for line personnel, supervisors, and command staff, and distribute it as a concise reference document.

4. **Strengthen supervisor and command accountability.** Supervisors report greater understanding of the process, but members still perceive rank and favoritism as possible influences. Supervisory training will include objective classification, Implicit Bias Training (delivered through the City's Department of Race and Equity, under Director Darlene Flynn), documentation standards, POBR, Skelly, due process, discipline matrix application, and avoidance of even the appearance of preferential treatment.

5. **Use employee perception data as an early warning measure.** The Department will continue to conduct periodic member surveys, with technical assistance from our Stanford partners for the next survey cycle, and will pair perception data with outcome data, audits, and the forthcoming qualitative interviews so the Department can distinguish between communication gaps, process design issues, and actual outcome disparities.

6. **Increase trust with underrepresented and non-identifying respondent groups.** Future outreach will include sworn associations and employee groups early in the process, explain anonymity protections, and clarify how results will be used. The Department will also hold periodic focus group sessions or open-house discussions with affinity groups to review findings relevant to their members. The high "prefer not to answer" rate will be monitored as a confidence indicator.

## VI. AREAS OF CONCERN AND CORRECTIVE ACTIONS

| Issue / Finding | Corrective Actions | Owner | Target |
|---|---|---|---|
| **Discipline fairness has declined since 2022** | Conduct quarterly reviews of discipline outcomes and matrix application; include written rationale for discipline decisions and any deviations; report trends to command staff. | IAB Deputy Chief | Q3 2026 |
| **Rank and favoritism remain persistent concerns** | Evaluate options for reviewing disciplinary outcomes by rank, assignment, and supervisory chain to identify trends, assess consistency in findings and discipline, and determine whether additional command-level review processes would be beneficial. | BRM / IAB | Q4 2026 |
| **Black sworn personnel report lower confidence in compliance and greater concern about race and favoritism** | Continue quarterly analysis of IAB outcomes by sworn race and ethnicity. Conduct periodic focus groups and qualitative assessments with sworn personnel, employee associations, and other stakeholders, utilizing the Race and Equity Team, as appropriate, to identify potential process gaps, better understand employee perceptions, and develop targeted improvements to policies, training, communication, and accountability practices. | BRM / Dept. of Race & Equity (D. Flynn) / Stanford partners (TA) | On Going |
| **High "prefer not to answer" rates for race/gender** | Add anonymity language to future survey instruments, brief employee associations before survey distribution, and continue reporting "Prefer Not | BRM / OIA | Next survey cycle |

| | | | |
|---|---|---|---|
| | to Answer" responses as a separate analytic category to monitor trends in employee trust and confidence. | | |
| **CPRA role poorly understood, especially by sworn personnel** | Jointly develop and co-deliver CPRA/OPD training with the CPRA Director department-wide (academy, transitional academy, CPT, and supervisor courses); publish a CPRA/OPD process guide; and identify where CPRA recommendations enter the OPD decision-making process. | IAB / CPRA Director | Q4 2026 |
| **Members do not understand how sustained discipline decisions are reached** | Meet with members at the conclusion of each sustained case to explain the findings and how the level of discipline was determined (already in effect); reinforce through case-based training using anonymized actual cases. | IAB | In effect / Ongoing |
| **External politics and media are perceived as influencing outcomes.** | Standardized documentation of investigative findings and disciplinary recommendations to clearly identify the evidence, policy violations, aggravating and mitigating factors, and Discipline Matrix considerations supporting each decision. Incorporate periodic audits to verify consistency and identify opportunities to improve transparency and member understanding of the process. | Chief's Office / BRM / IAB | Q1 2027 |
| **Training gaps in the discipline process** | Deliver scenario-based training on discipline matrix, due process, POBR, Skelly, report writing, and policy interpretation, with a sworn supervisor emphasis. | Training / IAB | Q2 2027 |

## VII. SHARED CITY ACCOUNTABILITY (ONE ACCOUNTABLE SYSTEM)

The Department recognizes that fair, consistent, and transparent accountability cannot be achieved by the Police Department alone; it depends on the City of Oakland functioning as a single accountable system in which each responsible office does its part. The Department will therefore

pursue the commitments in this memorandum in partnership with, and will seek the shared responsibility of, its city partners. The Department will work with the Office of the Mayor and the Interim City Administrator to secure the prioritization, resourcing, and cross-departmental coordination these commitments require, and with the City Council for the policy and budget support that sustains them.

The Community Police Review Agency will partner with the Department on concurrent civilian oversight and on the joint CPRA/OPD training and process transparency described above. The Department will brief the Police Commission, under Chair Ricardo Garcia-Acosta, on these findings and on its implementation progress, consistent with the Commission's policy-oversight and disciplinary role. The City Attorney's Office will continue to help ensure that investigations and discipline are consistent with law, the Public Safety Officers Procedural Bill of Rights, due process, and applicable disclosure obligations. The Department will partner with the City's Department of Race and Equity, under Director Darlene Flynn, on its disparity analysis and implicit-bias training, and will continue to work with our Stanford partners, led by Dr. Jennifer Eberhardt, who provide technical assistance on the design and analysis of the perception survey and the forthcoming qualitative study.

Consistent with the sustainability phase of the Negotiated Settlement Agreement, the Department will share this response and its implementation progress with the Monitor and with plaintiffs' counsel and welcomes their review and input. The Department's objective is to demonstrate not a single agency's compliance, but a city operating as one accountable system capable of sustaining fair and constitutional policing over time.

## VIII. COMMUNITY AND STAKEHOLDER ENGAGEMENT

The Department recognizes that the confidence of its members and the confidence of the Oakland community are connected, and that both are strengthened when stakeholders are engaged early and honestly. The Department will involve recognized employee associations and labor partners at the outset of future surveys and major process changes and will continue to engage affinity groups through the early involvement, focus groups, and periodic open-house discussions described above. The Department also values the participation of faith and community leaders, whose perspective helps connect internal accountability to community trust.

The Department will make the results of this and future surveys available to the public through the Police Commission and the Community Police Review Agency, and will use those forums, together with the forthcoming qualitative study, to ensure that a broad and representative range of voices—across rank, race, gender, and assignment, and including Oakland residents—informs how the Department strengthens its accountability system.

## IX. CONCLUSION

The Department views the results of the 2025 IA Perception Survey as an important opportunity to strengthen both its internal accountability systems and the confidence employees place in those

systems. While the survey reflects encouraging improvement in some areas since 2022, it also demonstrates that many members—particularly sworn personnel—continue to have concerns regarding the fairness, consistency, transparency, and understanding of the internal investigation and discipline process.

The Department recognizes that employee confidence in the accountability process is essential to organizational effectiveness, officer wellness, and public trust. Whether concerns relate to discipline consistency, perceptions of favoritism, CPRA involvement, communication, or the experiences reported by Black sworn personnel and other employee groups, those perceptions warrant continued attention, meaningful engagement, and thoughtful evaluation.

Accordingly, the Department is committed to using these findings as a roadmap for continuous improvement. Through enhanced training, increased transparency, periodic audits, ongoing data analysis, qualitative assessments, focus groups, and regular engagement with employee associations and stakeholders, the Department will continue evaluating its policies, practices, and decision-making processes to identify opportunities for improvement and reinforce confidence in the integrity of the internal investigation and discipline system. Above all, the Department recognizes that lasting confidence will be earned through the quality, consistency, and fairness of the investigations and disciplinary decisions themselves—sustained over time—which communication and training are intended to reinforce, not replace. The Department undertakes these commitments not as the police department alone, but as one part of a broader City effort, working with its oversight bodies, research and equity partners, employee associations, and the Oakland community, to sustain a fair, transparent, and accountable system over time.

The Department's objective is not only to ensure that investigations and disciplinary decisions are fair, impartial, and consistent with policy, law, and due process, but also to ensure that employees understand how those decisions are made and have confidence that the process is transparent, equitable, and accountable. The Department remains committed to regularly assessing its progress and, where appropriate, adjusting to foster a culture of fairness, professionalism, and organizational trust.

Respectfully,

James P. Beere
Chief of Police